UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JOHN W. SIGLER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JORGE GONZALEZ; USAA CASUALTY INSURANCE COMPANY; INTERINSURANCE EXCHANGE OF AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA; IMPERIAL BODY SHOP, INC.; and DOES 1 to 99, inclusive,<br><br>　　　　Defendants. | Case No.: SACV 22-02325-CJC (JDEx)<br><br>**ORDER TO SHOW CAUSE WHY PLAINITFF'S FEDERAL CLAIMS SHOULD NOT BE DISMISSED** |

　　On February 28, 2020, Defendant Jorge Gonzalez rear-ended *pro se* Plaintiff John W. Sigler's car while Sigler's son Alexander was driving it. (Dkt. 1, Ex. A [Complaint] ¶¶ 1, 6.) Gonzalez was at fault. (*Id.*) In this case, Plaintiff asserts claims against Gonzalez, Interinsurance Exchange of Automobile Club of Southern California ("the Exchange," Gonzalez's automobile insurer), USAA Casualty Insurance Company

("USAA," Plaintiff's insurer), Imperial Body Shop, Inc. ("IBS"), and unnamed Does stemming from the collision, repair, and insurance coverage. (*Id.* ¶¶ 1–10.) In general, Plaintiff alleges that "[b]oth insurance companies, their employees," and IBS "have engaged in criminal acts of insurance fraud, wire fraud, mail fraud, extortion, and witness tampering with the common goal to avoid[] payment of legitimate damages resulting from said auto accident." (*Id.* ¶ 4.)

Plaintiff's fraud allegations mostly rely on his assertion that certain Vehicle Valuation Reports ("VVR") "were the act of intentional fraud." (*Id.* ¶ 48.) Specifically, on March 10, 2020, USAA determined that Plaintiff's car was totaled and obtained a VVR from IBS. (*Id.* ¶ 35.) USAA's VVR did not include equipment Plaintiff's car had such as a sunroof. (*Id.* ¶ 36.) On March 23, 2020, the Exchange had IBS create another VVR. (*Id.* ¶ 44.) The Exchange's VVR also did not include features of Plaintiff's car such as a sunroof and metallic paint. (*Id.*)

Plaintiff also complains about two rental car quotes he says were "act[s] of insurance fraud." (*Id.* ¶¶ 52–55, 139–40.) On April 3, 2020, the Exchange sent Plaintiff a settlement offer including an offer for "loss of use." (*Id.* ¶ 51.) The Exchange stated that the cost to rent an equivalent rental based on Enterprise's price list was $38.99. (*Id.*) However, because the price list used "did not include auxiliary costs such as taxes, and other mandatory fees," Plaintiff alleges that the Exchange "intentionally concealed the true rental cost . . . in a deliberate attempt to mislead the Plaintiff into believing her low rental price of an equivalent vehicle was factual." (*Id.* ¶¶ 52–53.) And in an April 15, 2020 revised loss of use offer of $54.23 per day, the Exchange "depressed the base rate for an equivalent rental car by using a special 'COVID-19' discount rate from AVIS." (*Id.* ¶¶ 55, 139–40.)

Plaintiff asserts eighteen claims against Defendants. His federal claims include violations of the civil Racketeer Influenced and Corrupt Organization ("RICO") Act, wire fraud, mail fraud, extortion, and witness or evidence tampering, and his state law claims include negligence, insurance fraud under the California Penal Code, fraud, and actionable deceit. Now before the Court is the Exchange's motion to dismiss Plaintiff's Complaint against it, which includes some of the federal claims, but not all of them. (Dkt. 45.)

After reviewing the Exchange's arguments that Plaintiff's claims against it should be dismissed, the Court has concerns that Plaintiff fails to state a claim on all of his federal claims. Indeed, IBS's answer asserts as a defense that Plaintiff fails to state any claim against it as well. (Dkt. 12 at 102.)

First, it appears that Plaintiff fails to sufficiently allege a pattern of racketeering activity in both his seventh and thirteenth claims. The civil RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To state a civil RICO claim, a plaintiff must allege facts showing "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005). A "pattern of racketeering activity" requires at least two predicate acts, though two is not always sufficient because "in common parlance two of anything do not generally form a 'pattern.'" *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985)). The predicate criminal acts must be both "related" and "continuous." *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995). Acts are continuous "if the predicate acts posed a

threat of continuing activity." *Sun Sav. & Loan*, 825 F.2d at 193. These requirements ensure that the RICO statute is not applied "to the perpetrators of isolated or sporadic criminal acts," since "Congress was concerned in RICO with long-term criminal conduct." *Id.* at 192; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989). For this reason, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct" are not enough to state a civil RICO claim. *H.J. Inc.*, 492 U.S. at 229. The Court has doubts that Plaintiff has alleged sufficient facts reflecting a pattern of racketeering activity in either his seventh or thirteenth claims.

Second, it appears that Plaintiff does not have standing to assert his wire fraud, Hobbs Act extortion, and evidence tampering claims (his eighth through twelfth, fourteenth, fifteenth, seventeenth, and eighteenth claims) under the United States Code. Though these criminal offenses "may serve as predicate offenses for a civil RICO cause of action," their prosecution "has been entrusted solely to the federal government." *Lin v. City of Perris*, 2020 WL 5289931, at *5 (C.D. Cal. Apr. 17, 2020), *aff'd,* 2022 WL 2355507 (9th Cir. June 30, 2022) (dismissing with prejudice a plaintiff's asserted standalone claims for mail and wire fraud "for lack of a private right of action"); *see also Cobb v. Brede*, 2012 WL 33242, at *2 (N.D. Cal. Jan. 6, 2012), *aff'd,* 517 F. App'x 556 (9th Cir. 2013) ("[M]ail and wire fraud do not, standing alone, result in the right to file a federal lawsuit."); *Hacker v. Hacker*, 2015 WL 8780561, at *3 (E.D. Cal. Dec. 15, 2015), *report and recommendation adopted,* 2016 WL 4254108 (E.D. Cal. Aug. 12, 2016) ("[C]ourts have consistently found that mail and wire fraud statutes do not confer a private right of action. . . . Since Plaintiff cannot state a claim directly under the wire fraud statute, his first claim for relief must be dismissed.") (collecting cases).

Accordingly, Plaintiff is **ORDERED TO SHOW CAUSE** in writing by **August 28, 2023** why all of his federal claims should not be dismissed for failure to state a claim. The Exchange and IBS shall file a response by **September 5, 2023**. Any other defendant

may also file a response by that date.  Plaintiff may file a reply by **September 12, 2023.** The Court will hold a hearing on these issues on **September 25, 2023, at 1:30 p.m.** The Court also **CONTINUES** the hearing on the Exchange's motion to dismiss [45] to the same date and time.

DATED: August 14, 2023

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE