UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JOHN W. SIGLER,<br><br>            Plaintiff,<br><br>      v.<br><br>JORGE GONZALEZ; USAA CASUALTY INSURANCE COMPANY; INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA; IMPERIAL BODY SHOP, INC.; and DOES 1–99,<br><br>            Defendants. | Case No.: SACV 22-02325-CJC (JDEx)<br><br>**ORDER GRANTING DEFENDANT INTERINSURANCE EXCHANGE'S MOTION TO DISMISS WITH LEAVE TO AMEND [Dkt. 45]** |

## I.     INTRODUCTION

This case arises from the alleged mishandling of *pro se* Plaintiff John S. Sigler's insurance claim after his car (the "Vehicle") was damaged in a two-car accident. (*See* Dkt. 1, Ex. A [Compl.] ¶¶ 1–5.)  Specifically, Plaintiff asserts claims against Defendants Jorge Gonzalez ("Gonzalez," the driver who rear-ended Plaintiff's Vehicle),

Interinsurance Exchange of the Automobile Club of Southern California ("the Exchange," Gonzalez's automobile insurer), USAA Casualty Insurance Company ("USAA," Plaintiff's insurer), Imperial Body Shop, Inc. ("IBS"), and unnamed Does stemming from the collision, repair, and insurance coverage of the Vehicle. (*See id.* ¶¶ 6–18.) Now before the Court is the Exchange's motion to dismiss Plaintiff's Complaint against it (causes of action 4–18). (Dkt. 45 [hereinafter "Mot."]). Specifically, Plaintiff asserts claims against the Exchange for intentional misrepresentation, Hobbs Act Extortion, violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), wire fraud, mail fraud, and tampering with evidence. Also before the Court for consideration are Plaintiff's, IBS's, and the Exchange's responses to the Court's Order to Show Cause Why Plaintiff's Federal Claims Should Not Be Dismissed. (Dkts. 65, 67–68 [Responses to the Court's Order to Show Cause]; *see* Dkt. 64 [Order to Show Cause, hereinafter "OSC"].) For the following reasons, the motion to dismiss is **GRANTED WITH LEAVE TO AMEND** and the order to show cause is **DISCHARGED**.[1]

## II. BACKGROUND

On February 28, 2020, Gonzalez rear-ended Plaintiff's Vehicle while Plaintiff's son Alexander was driving it in Costa Mesa, California. (*See* Compl. ¶ 1.) Gonzalez was declared at fault, but he had only limited auto insurance through the Exchange. (*See id.* ¶ 29.) The Vehicle was insured more robustly through USAA. (*See id.* ¶ 30.) Plaintiff's son Alexander settled personal injury claims with the Exchange and with USAA. (*See id.* ¶¶ 31–32.) However, to date, Defendants have not provided reasonable compensation, or have refused to compensate Plaintiff at all, for the value of the Vehicle, for the loss of use

---

[1] Having read and considered the papers the parties presented, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for September 25, 2023, at 1:30 p.m. is hereby vacated and off calendar.

of the Vehicle, for storage of the Vehicle, and for lost wages due to time taken off work to deal with the consequences of his son's automobile accident. (*See id.* ¶ 33.)

During the claim-evaluation process, Defendants allegedly engaged in numerous acts of fraud, such as falsifying appraisals of the Vehicle and misrepresenting material facts to fraudulently depress the amount Defendants owe as insurers. Defendants have also allegedly committed acts of extortion, attempting to induce Plaintiff to accept low compensation for his damages, and have engaged in witness tampering to cover up their fraudulent acts. (*See id.* ¶ 34.)

For example, on March 10, 2020, USAA determined the Vehicle was totaled and obtained an appraisal of its value from IBS through its appraiser Pablo Galvez (hereinafter the "Galvez Appraisal"). (*See id.* ¶ 35.) According to Plaintiff, the Galvez Appraisal "was found to be fraudulent, claiming the vehicle did not include equipment such as a sunroof or CA emission equipment." (*See id.* ¶ 36.) Plaintiff disputed the accuracy of the Galvez Appraisal, and on March 31, 2020, a USAA employee told Plaintiff that the errors arose from similar errors on the Vehicle's official VIN report, which Galvez relied upon in making his appraisal. (*See id.* ¶ 37.) Within ninety minutes of talking to that USAA employee, however, Plaintiff downloaded a copy of the Vehicle's VIN report and found it contained no such errors. (*See id.* ¶ 38.) Plaintiff alleges that USAA's false statement regarding the Vehicle's VIN report "was a deliberate act of fraud committed to cover up the initial acts of fraud in the Galvez [Appraisal]." (*Id.* ¶ 38.) He also alleges that USAA has a history of teaming with appraisal companies to falsify appraisals, as evidenced by prior civil cases identified in the Complaint. (*See id.* ¶¶ 39–42.)

On March 19, 2020, Plaintiff's son contacted the Exchange via a recorded phone call and informed it that USAA used a fraudulent appraisal from IBS. (*See id.* ¶ 43.)

Plaintiff then requested that the Exchange compensate him for the damage to the Vehicle, instead of USAA. (*See id.* ¶ 43.) Like USAA, the Exchange had IBS, this time through employee Greg Taylor, create an appraisal (hereinafter the "Taylor Appraisal") of the Vehicle. (*See id.* ¶ 44.) The Taylor Appraisal included the same alleged false claim as the Galvez Appraisal, that the Vehicle has no sunroof; the Taylor Appraisal also falsely reported that the Vehicle did not have metallic paint. (*See id.* ¶ 44.) Notably, Taylor's repair estimate for the Vehicle included the cost of painting and paint tinting—costs which would be impossible to estimate without knowing the type of paint on a vehicle. (*See id.* ¶ 45.)

For Plaintiff, the common error in both the Taylor Appraisal and the Galvez Appraisal raised doubt that these errors could be accidental or due to negligence, given that it would be unlikely that two licensed appraisers, with years of experience, both missed observing a major vehicle feature, such as a sunroof. (*See id.*) Nor were the common errors due to simple verbatim copying of the Galvez Appraisal since each of those appraisals contained a second distinct significant error, with the Galvez Appraisal failing to include emission equipment and the Taylor Appraisal missing metallic paint. (*See id.* ¶ 47.) Plaintiff alleges that these observations indicate the errors were the result of intentional fraud. (*See id.* ¶ 48.) Both the Exchange and USAA have acknowledged the errors in their appraisals, but neither insurance company has agreed to obtain a new appraisal. (*See id.* ¶ 50.) Rather, the insurance companies have offered to update the current appraisals to correct the errors Plaintiff has identified. (*See id.*) But Plaintiff fears that, given the recognized significant errors in the appraisals, there are additional errors he has not identified that will not be corrected if the insurance companies request corrections only of the specific errors Plaintiff has pointed out. (*See id.*)

Besides these alleged instances of fraud regarding the valuation of Plaintiff's vehicle, Plaintiff alleges that Defendants have acted fraudulently regarding offers of

settlement for the loss of use of his vehicle. On April 3, 2020, the Exchange sent Plaintiff a settlement offer, in which it misrepresented the cost to rent an equivalent vehicle because it intentionally did not include taxes and other mandatory fees, which are components of the cost for any rental car. (*See id.* ¶¶ 51–53.) When Plaintiff pointed out the error, the Exchange admitted that these costs should have been included and recalculated Plaintiff's compensation for loss of use to include tax and fees. (*See id.* ¶ 54.) However, even in this second April 15, 2020 offer, the Exchange intentionally depressed the base rate for an equivalent rental car by using a discount rate that did not come into effect until months after Plaintiff's vehicle was totaled. (*See id.* ¶ 55.) Plaintiff did not accept the offers. (*See id.* ¶ 59.)

On top of these fraudulent acts and misrepresentations, Defendants also attempted to extort Plaintiff into accepting a fraudulently depressed settlement offer. (*See id.* ¶ 56.) On March 19, 2020, Plaintiff contacted his insurer USAA and requested that his policy on the Vehicle be cancelled since it was totaled. (*See id.* ¶ 57.) But USAA refused to cancel the policy until Plaintiff settled his claim based on the Galvez Appraisal. (*See id.* ¶ 58.) USAA then informed Plaintiff that if he stopped paying the Vehicle's premiums, he would jeopardize insurance coverage of his other vehicles. (*See id.* ¶ 59.) Despite promising Plaintiff that it would reimburse him for all unnecessary premiums paid on the Vehicle after the accident, USAA has never done so. (*See id.* ¶ 60.)

In another alleged act of extortion, one of the insurance companies[2] informed Plaintiff in March 2020 "that since he would not accept a settlement offer based upon the fraudulent [valuation] created by IBS, he would have to start paying storage costs of $80 per day to [IBS]…." (*Id.* ¶ 61.) Plaintiff refused to pay these storage costs and has since

---

[2] It is not clear which defendant covered the storage costs for the Vehicle following the accident. The Complaint states that "Plaintiff was informed" of this expense, but it does not clearly identify which defendant insurance company made this statement.

provided storage for the totaled vehicle at his residence.  (*See id.* ¶ 62.)  Dealing with the various matters related to the accident, the insurance claim, and now this lawsuit has required Plaintiff to take time off work.  (*See id.* ¶ 64.)

**III.    LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012).  To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Under Rule 9(b), a party alleging a claim sounding in fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1145 (9th Cir. 2009).  The party "must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).  In other words, a party must plead the "who, what, when, where, and how" of the alleged misconduct.  *See Vess v. Ciba-*

*Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). Rule 9(b) is meant to ensure that fraud allegations are "specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

## IV. ANALYSIS

Plaintiff alleges state law claims for negligence, insurance fraud under the California Penal Code, intentional misrepresentation/fraud, and actionable deceit. He alleges federal claims for civil RICO, wire fraud, mail fraud, extortion, and witness or evidence tampering. In response to the OSC, Plaintiff agreed that he does not have standing to bring independent claims for wire fraud, mail fraud, Hobbs Act extortion, or evidence tampering and included these allegations only as the necessary predicate acts for RICO liability. (*See* Dkt. 65 ["Sigler Resp."] at 25.) Based on Plaintiff's concession, the Court dismisses causes of action 8–12 and 14–18 of the Complaint without further analysis. This leaves Plaintiff's state law claims (causes of action 1–6) and Plaintiff's federal RICO claims (causes of action 7 and 13).

### A. Intentional Misrepresentation

The Exchange first moves to dismiss Plaintiff's fourth, fifth, and sixth claims against it, which allege intentional misrepresentation. (*See* Mot. at 8–11.) To allege intentional misrepresentation (fraud), the claimant must allege the following: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) scienter or knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage. *See GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1039 (C.D. Cal. 2017), *aff'd sub nom. GemCap Lending I, LLC v. Quarles &*

*Brady, LLP*, 787 F. App'x 369 (9th Cir. 2019); *see also McColgan v. Mut. of Omaha Ins. Co.*, 4 F. Supp. 3d 1228, 1233 (E.D. Cal. 2014).  As claims sounding in fraud, Plaintiff's claims for intentional misrepresentation are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1296 (S.D. Cal. 2011).

The Exchange identifies several deficiencies in Plaintiff's fourth cause of action for intentional misrepresentation, which arises from the Exchange's persistent use of the allegedly fraudulent Taylor Appraisal to value Plaintiff's Vehicle.  The Exchange argues that Plaintiff has not alleged that the Exchange (as opposed to IBS's appraiser) made any false representations and that Plaintiff has not pled justifiable reliance on Defendants' statements or resulting damages.  (*See* Mot. at 8–9.)  Plaintiff's allegations might plausibly give rise to a breach of contract or a bad faith claim, but the Court agrees with the Exchange that Plaintiff's fourth cause of action does not allege all the necessary elements of intentional misrepresentation.  As the Exchange points out, the misrepresentation that Plaintiff attributes to it is not clear from the Complaint, nor is Plaintiff's justified reliance on this misrepresentation.  Indeed, Plaintiff has disputed the accuracy of Defendants' appraisals all along and never accepted Defendants' offers of settlement based on the fraudulent appraisals.  (*See* Compl. ¶¶ 34–50.)[3]  Fraud that is apparent to a plaintiff is not actionable.  *See, e.g.*, *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 975 (9th Cir. 2002).  Accordingly, Plaintiff's fourth cause of action is dismissed.

Although Plaintiff's fifth and sixth causes of action for intentional misrepresentation clearly allege the Exchange and its employees' misrepresentations

---

[3] Plaintiff argues that his awareness of the fraudulent nature of the offer demonstrates reliance.  (*See* Dkt. 59 [Pl.'s Opp'n to Def.'s Mot. to Dismiss, hereinafter "Opp."] at 14.)  But the knowledge element of fraud refers to the state of mind of the party making the alleged misrepresentation, which in this case is defendants. *See, e.g., Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 225 F. Supp. 3d 1034, 1040 (N.D. Cal. 2016).

regarding the cost of an equivalent rental car, they fail for the same lack of justified reliance and damages. The Court dismisses these claims as well.

**B.   RICO**

The civil RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To state a civil RICO claim, a plaintiff must allege facts showing "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005). IBS and the Exchange argue that Plaintiff fails to sufficiently allege elements (3) and (5). (*See* Mot. at 13–14; Dkt. 67 [IBS's Resp. to the Court's Order to Show Cause, hereinafter "IBS Resp."] at 2–4; Dkt. 68 [The Exchange's Resp. to the Court's Order to Show Cause, hereinafter "Exchange Resp."] at 3–6.)

Having carefully reviewed Plaintiffs' Complaint and all parties' briefing, the Court concludes that Plaintiff fails to sufficiently allege a pattern of racketeering activity. A "pattern of racketeering activity" requires at least two predicate acts, though two is not always sufficient because "in common parlance two of anything do not generally form a 'pattern.'" *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985)). The predicate criminal acts must be both "related" and "continuous." *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995). Acts are continuous "if the predicate acts posed a threat of continuing activity." *Sun Sav. & Loan*, 825 F.2d at 193. These requirements ensure that the RICO statute is not applied "to the perpetrators of isolated or sporadic criminal acts,"

since "Congress was concerned in RICO with long-term criminal conduct." *Id.* at 192; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989). For this reason, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct" are not enough to state a civil RICO claim. *H.J. Inc.*, 492 U.S. at 229.

A plaintiff can establish that predicate acts were continuous by pleading either open-ended or closed-ended continuity. *See Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1526 (9th Cir. 1995). Open-ended continuity refers to "past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989). Closed-ended continuity refers to "a series of related predicates extending over a substantial period of time." *Id.* at 242. The Supreme Court has cautioned that "whether predicate acts establish a threat of continued racketeering activity depends on the specific facts of each case." *H.J. Inc.*, 492 U.S. at 242. But it has given some examples that show why Plaintiff's allegations are deficient:

> A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit. Suppose a hoodlum were to sell "insurance" to a neighborhood's storekeepers to cover them against breakage of their windows, telling his victims he would be reappearing each month to collect the "premium" that would continue their "coverage." Though the number of related predicates involved may be small and they may occur close together in time, the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity. In other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business. Thus, the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes. Such associations include, but extend well beyond, those traditionally grouped under the phrase "organized crime." The continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a

business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO "enterprise."

*Id.* at 242–43.

This case, as currently pled, does not look like these examples. Plaintiff alleges that the Exchange and IBS "established an 'association in fact' enterprise where [the Exchange] directs repair business to IBS and in exchange, when accident vehicles were determined to be 'totaled,' IBS falsifies [valuations] allowing [the Exchange] to offer below market settlement offers." (Compl. ¶ 282; *see id.* ¶¶ 275, 286, 293–94.) He alleges that Gonzalez "is the 'at fault' driver and occupies a position in the chain of command' as to how the Plaintiff would be compensated for damage to the Plaintiff's property," and "is the key individual who started the entire sequence of fraud by ordering [the Exchange] to handle compensation for damages he caused to the Plaintiff, and continued the use of [the Exchange] to handle compensation even after being informed of [the Exchange's] racketeering activities." (*Id.* ¶¶ 289, 297.) He alleges that the enterprise performs criminal acts of fraud and witness tampering (by destroying evidence). (*See id.* ¶ 297.)

Even though Plaintiff alleges multiple predicate acts, "[t]his case involve[s] but a single alleged fraud [on the part of each Defendant] with a single victim. All of [Defendants'] assertions about [the allegedly fraudulent appraisals] … were parts of [a] single effort [by each Defendant] to induce" Plaintiff to accept an offer that did not fully compensate Plaintiff for his losses. *Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1363–64 (9th Cir. 1987). The few alleged predicate acts—committed over the course of two weeks—constitute the entire scheme and do not form a continuous pattern.[4]

---

[4] Plaintiff cited many cases in his complaint and in his briefing using only party names or with other incorrect identifying information. (*See, e.g.*, Compl. ¶¶ 40–42; Sigler Resp. at 6; Opp. at 10 (Plaintiff

With respect to Plaintiff's thirteenth cause of action, it is also implausible that Gonzalez, who is involved in this case only as the at-fault driver, "occupies a position in the change of command" in a long-term scheme of racketeering activity with the Exchange and IBS. Plaintiff alleges that "[a]ll of these criminal acts of racketeering could not have occurred unless Defendant Jorge Gonzalez insisted that his insurer [the Exchange] handle compensation to the Plaintiff," (Compl. ¶ 280), and that Gonzalez benefitted from this scheme through the savings that the Exchange passes on to policyholders in lower premiums, (*see id.* ¶ 290). Plaintiff does not allege, however, that Gonzalez is involved in car accidents with sufficient regularity to participate in an ongoing racketeering scheme with the Exchange. Nor does Plaintiff allege that Gonzalez has demonstrated a pattern of inducing individuals involved in accidents to accept fraudulent insurance appraisals. There are no allegations that even come close to demonstrating Gonzalez's involvement in a pattern of racketeering.

Nevertheless, the Court will grant Plaintiff's request for leave to amend these allegations. Plaintiff has not yet amended his complaint, and the Federal Rules of Civil

---

cited "Nayak-v-Capital-One-Bank,N.A.,935,F.3d,1029(9th-Cir.2019)[,]" which the Court presumed should be *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480 (9th Cir. 2019)). The Court has significant difficulty identifying cases without a case number or a citation to a legal reporter (particularly if the party names are not spelled accurately), or at least case title, year, and the court that decided the case. The Court either could not find those cases solely based on party names or did not see the similarity in the cases regarding similar schemes involving these Defendants. Of course, "[a] document filed *pro se* is "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Should Plaintiff file an amended complaint, Plaintiff should be sure to include full case citations, not just party names, for any cases the Court should review. Plaintiff should also in the future include page numbers for any citations in his briefing, so the Court may be certain it correctly identifies the portion of any opinions he references.

Furthermore, Plaintiff references materials outside the Complaint in opposing the Motion. (*See, e.g.,* Opp. at 4–6.) The Court has not considered those materials. *See, e.g., Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001).

Procedure provide that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit requires that this policy favoring amendment be applied with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Defendant IBS contends that amendment would be futile, (*see* IBS Resp. at 4–5), but the Court cannot be sure that is the case based on Plaintiff's arguments and the Court's inability to review some of the materials Plaintiff wished the Court to consider. Any amended complaint should incorporate all materials Plaintiff wishes the Court to consider in reviewing future motions on the pleadings, add any new claims Plaintiff wishes to make having now had the benefit of discovery, and carefully address the deficiencies identified in the Court's OSC and Defendants' briefing.

## V. CONCLUSION

For the foregoing reasons, the Exchange's motion to dismiss the fourth through eighteenth causes of action of Plaintiff's Complaint is **GRANTED**. Any amended complaint must be filed by **October 9, 2023**. **Because the Court dismisses all of Plaintiff's federal claims, failure to timely file an amended complaint will result in remand to Orange County Superior Court for lack of subject matter jurisdiction.**

DATED:   September 18, 2023

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE