Jeet Sen, Esq., SBN. 224248
jsen@fwhb.com
Eran S. Forster, Esq., SBN. 269711
eforster@fwhb.com
FORD, WALKER, HAGGERTY & BEHAR
One World Trade Center, 27th Floor
Long Beach, California 90831-2700
(562) 983-2500 | (562) 983-2555 Fax

Attorneys for Defendants,
*Interinsurance Exchange of the Automobile Club and*
*Jorge Gonzalez*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| JOHN W. SIGLER, | Case No. 8:22-cv-2325-CJC-JDE |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES |
| vs. | (filed concurrently with Notice of Motion for Judgment on the Pleadings; and [Proposed] Order.) |
| JORGE GONZALEZ, USAA CASUALTY INSURANCE COMPANY,  INTERINSURANCE EXCHANGE OF AUTOMOBILE CLUB, IMPERIAL BODY SHOP, INC., PABLO GALVEZ, GREG TAYLOR, MELISSA ORDELL, DANELLE BUSHNELL, AMBER PETERSON (AKA AMBER PETERSON FORREST, AKA AMBER J. SCHNEIDER), KEVIN KARAPOGOSIAN, JAMES SYRING, RANDY TERMEER, JOHN BOYLE AND DOES 1 TO 99, INCLUSIVE; | **HEARING DATE**: January 22, 2024 **HEARING TIME:** 1:30pm Honorable Cormac J. Carney |
| Defendants. | |

The Interinsurance Exchange of the Automobile Club:
Memorandum of Points & Authorities in Support of Motion for Judgment on the Pleadings
Case No. 8:22-cv-2325

# **TABLE OF CONTENTS**

I.      INTRODUCTION……………………………………………………………………1

II.     LEGAL STANDARD ……………………………………………………………...2

III.    RELEVANT FACTS FROM PLAINTIFF'S COMPLAINT……………………3

IV.     ARGUMENT ……………………………………………………………...……5

A.  THE FIRST AMENDED COMPLAINT FAILS TO ADEQUATELY PLEAD
    INTENTIONAL MISREPRESENTATION (FRAUD) AGAINST THE
    EXCHANGE……………………………………………………………………...5

    i.   Third Cause of Action………………………………………………..……...6
         a.  Any Misrepresentation Was Not Material…………………….…...7
         b.  There Was No Actual Reliance………………………………..……7
         c.  Plaintiff Did Not Sudder Any Damages From The Alleged
             Misrepresentation…………………………………………………8
    ii.  Fourth Cause of Action……………………………………………………..……9

B.  PLAINTIFF DOES NOT HAVE STANDING TO BRING HIS FIFTH CAUSE OF ACTION
    AGAINST THE EXCHANGE BECAUSE HE WAS NOT INJURED………………………10

C.  PLAINTIFF'S RICO CLAIMS FAIL TO SUFFICIENTLY ALLEGE A PATTERN OF
    RACKETEERING ACTIVITY BECAUSE THE ALLEGED PREDICATE ACTS WERE
    NOT PART OF A SCHEME THAT POSED A THREAT OF CONTINUED CRIMINAL
    ACTIVITY…………………………………………………………………..……14

    i.    There was no Continuity of the alleged acts……………………………………14
    ii.   The First Amended Complaint is Devoid of Open-ended Continuity…………….15
    iii.  The First Amended Complaint is Devoid of Closed-ended Continuity………....16
    iv.   Plaintiff's allegations of continued activity by the Exchange must fail..…………16

D.  PLAINTIFF'S TWELFTH CAUSE OF ACTION DOES NOT
    SUFFICIENTLY PLEAD A CONSPIRACY TO COMMIT A CIVIL RICO
    VIOLATION……………………………………………………………………17

V.      CONCLUSION……………………………………………………………...19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Allwaste, Inc. v. Hecht</u>,
  65 F.3d 1523 (9th Cir. 1995) ................................................................ 14

<u>Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.</u>,
  190 F.3d 1051 (9th Cir.1999) ......................................................... 11, 12

<u>Amarel v. Connell</u>,
  102 F.3d 1494 (9th Cir.1996) .............................................................. 12

<u>Associated General Contractors of California, Inc. v. California State Council of Carpenters</u>,
  459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) .......................... 12

<u>Atherton v. Bd. Of Supervisors</u>,
  176 Cal. App.3d 433 ............................................................................ 13

<u>Baumer v. Pachl</u>,
  8 F.3d 1341 (9th Cir. 1993) ................................................................. 17

<u>Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv. Inc.</u>,
  911 F.2d 242 (9th Cir. 1990) ................................................................. 9

<u>Emery v. Amer. Gen. Finance, Inc.</u>,
  71 F.3d 1343 (7th Cir.1996) ................................................................ 17

<u>First v. Allstate Ins. Co.</u>,
  222 F. Supp.2d 1165 (C.D. 2002) .......................................................... 8

<u>GemCap Lending, LLC v. Quarles & Brady, LLP</u>,
  269 F. Supp. 3d 1007 (C.D. Cal. 2017) ................................................... 5

<u>Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church</u>,
  887 F.2d 228 (9th Cir. 1989) ................................................................. 3

<u>H.J. Inc. v. Nw. Bell Tel. Co.</u>,
  492 U.S. 229 (1989) ...................................................................... 14, 15

<u>Hannon v. Security Nat'l Bank</u>,
  537 F.2d 327 (9th Cir. 1976) ............................................................... 13

<u>Haskell v. Time, Inc.</u>,
  857 F. Supp. (E.D., 1994) ...................................................................... 9

<u>Higgins v. Farr Fin. Inc.</u>,
  No. C 07-02200 JSW, 2009 WL 3517597 (N.D. Cal. Oct. 26, 2009) ...... 17

<u>Illinois Brick v. Illinois</u>,
  431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) .......................... 11

<u>In re ATM Fee Antitrust Litig.</u>,
  686 F.3d 741 (9th Cir.2012) ................................................................ 11

<u>In re WellPoint, Inc. Out-of-Network UCR Rates Litig.</u>,
  903 F. Supp. 2d 880 (C.D. Cal. 2012) ............................................. 10, 11

<u>Jarvis v. Regan</u>,
  833 F.2d 149 (9th Cir.1987) ................................................................ 16

<u>Jepson, Inc. v. Makita Corp.</u>,
  34 F.3d 1321 (7th Cir.1994) ................................................................ 17

iii

Lopez v. Ctpartners Exec. Search Inc.,
    173 F. Supp. 3d 12 (S.D.N.Y. 2016).................................................................. 9

McColgan v. Mut. of Omaha Ins.Co.,
    4 F. Supp. 3d 1228 (E.D. Cal. 2014).................................................................. 6

Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.,
    833 F.2d 1360 (9th Cir.1987) ............................................................... 15, 16

Odell v. Humble Oil & Refining Co.,
    201 F.2d 123 (10th Cir.) .................................................................................. 18

Rodriguez v. JP Morgan Chase & Co.,
    809 F. Supp. 2d 1291 (S.D. Cal. 2011)............................................................... 6

S.F. Taxi Coal. v. City & County of San Francisco,
    979 F.3d 1220 (9th Cir. 2020) .......................................................................... 3

Salinas v. United States,
    522 U.S. 52 (1997)........................................................................................... 17

Schreiber Distributing Co. v. Serv–Well Furniture Co., Inc.,
    806 F.2d 1393 (9th Cir.1986) ...................................................................... 16, 17

Sedima, S.P.R.L. v. Imrex Co.,
    473 U.S. 479 (1985) ......................................................................................... 14

Sever v. Alaska Pulp Corp.,
    978 F.2d 1529 (9th Cir. 1992) .......................................................................... 16

Stewart v. Electrolux Home Prod.,
    No. 117CV01213LJOSKO, 2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) .......... 9

Sun Sav. & Loan Ass'n v. Dierdorff,
    825 F.2d 187 (9th Cir. 1987) ............................................................................ 14

United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,
    637 F.3d 1047 (9th Cir. 2011) .......................................................................... 3

United States v. Fernandez,
    388 F.3d 1199 (9th Cir. 2004) ..................................................................... 17, 18

Valley Surgical Supply Inc. v. Johnson & Johnson,
    523 F.3d 1116 (9th Cir.2008) ........................................................................... 11

Webb v. Trader Joe's Co.,
    999 F.3d 1196 (9th Cir. 2021) .......................................................................... 3

Wolov v. Duel,
    2023 WL 2780369 (C.D. Cal. Feb. 28, 2023)................................................... 18

**Statutes**

15 U.S.C. § 1 ....................................................................................................... 10, 11
15 U.S.C. § 15(a) ...................................................................................................... 11
18 U.S.C. § 1503 ................................................................................................. 18, 19
18 U.S.C. § 1962(a),(b), or (c) ................................................................................ 18
18 U.S.C. § 1962(d) .................................................................................... 17, 18, 19
California Vehicle Code section 544(a) ...................................................................... 6

**Rules**

Fed. R. Civ. P. 12(c) ................................................................................................ 3

iv

Federal Rule of Civil Procedure 9(b) .................................................................................................. 6, 17

Rule 12(b)(6) ........................................................................................................................................ 3, 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a dispute over the value of a motor vehicle damaged in an accident. Rather than a negligence action against the driver, Plaintiff is pursuing two insurance companies and their individual representatives as well as the body shop who appraised the vehicle under various causes of action relating to alleged fraudulent conduct in the hopes of turning a dispute over a few thousand dollars into a six-figure case.

This Motion for Judgment on the Pleadings is brought by the Exchange, the automobile insurer for co-defendant Jorge Gonzalez, and by Defendant Gonzalez. This matter involves a simple rear-end accident between Mr. Gonzalez and plaintiff's son, Alex Sigler, while Alex was driving his father's vehicle. Alex Sigler retained counsel and resolved his claims with the Exchange. The only claims unresolved are for the property damage to plaintiff's vehicle and any amount plaintiff may be owed for the loss of use of his vehicle. Plaintiff's material allegations boil down to his unhappiness with the offers that he received to resolve the claims of property damage to his vehicle.  Despite this, plaintiff's First Amended Complaint For Damages ("FAC") alleges that the Exchange defrauded plaintiff, violated his rights under the Clayton Act, and was engaged in racketeering. The FAC also alleges that Gonzalez conspired with the Exchange to further their racketeering activities and that at least eleven (11) other defendants also participated in acts of fraud, racketeering, or conspiracy. However, the facts alleged in the FAC do not support these claims.

First, the FAC does not support a cause of action against the Exchange for making an intentional misrepresentation because the statements allegedly made by the Exchange were not material to any agreement, were not relied upon, and because plaintiff did not suffer any damages. Indeed, the FAC admits that Plaintiff never relied on any of the Exchange's alleged misrepresentations and did not accept any of the Exchange's offers to compromise his "loss of use" claims. Plaintiff's refusal of these offers and decision to

1

pursue the value of his vehicle in litigation instead is proof that he was not deceived. Consequently, Plaintiff was never damaged by any of these alleged misrepresentations made by the Exchange because he did not accept the Exchange's offers.

Second, plaintiff lacks antitrust standing to bring a cause of action under the Sherman Act (Section 4 of the Clayton Act) against the Exchange. Plaintiff's purported injuries of not receiving a fair settlement offer and loss of productivity in preparing this lawsuit are not the type of harm that federal antitrust laws protect.

Third, Plaintiff's RICO claims against the Exchange fail because he cannot allege a pattern of racketeering activity posing a threat of continued criminal conduct. At most, he alleges the Exchange engaged in a single limited scheme to undervalue his car.  Moreover, the two offers made by the Exchange were never relied upon or accepted by plaintiff and therefore could not cause him injury.  Again, taking time off work to prepare a complaint or find a replacement vehicle is not the type of injury that are actionable under RICO.

Fourth, the FAC does not support a cause of action against Gonzalez for conspiring with the Exchange to further racketeering activity. The FAC's 12th cause of action alleges Gonzalez was engaged in a conspiracy to commit racketeering activity by allowing a forged waiver of service to be filed with the Court's system for Case Management and Electronic Case Files ("CM/ECF").  It is not plausible that the document is forged because it is under counsel's name and signature. Additionally, the FAC does not sufficiently allege a racketeering activity that plaintiff has standing to bring let alone that Gonzalez knew about and agreed to facilitate in an alleged scheme by an Enterprise. Nor does Plaintiff explain how Gonzalez's alleged agreement with his attorney to waive service of the complaint furthers or facilitates the purported racketeering scheme. As such, Plaintiff fails to plead a cognizable RICO conspiracy claim against Gonzalez.

Moving parties pray for judgment in their favor.  Plaintiff should not have any further leave to amend given that he has had enough opportunities to plead, and the nature of the dispute is simply not actionable under the causes of action attempted by Plaintiff.

## II.   **LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  A Rule 12(c) motion asserting that a plaintiff has failed to state a claim, or that a defendant has failed to state a defense, is governed by the same standard as a Rule 12(b)(6) Motion for Judgment on the Pleadings. *See United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011); *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021)  (explaining that motions for judgment on the pleadings are "functionally identical" to Rule 12(b)(6) motions).  "Judgment is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law."  *S.F. Taxi Coal. v. City & County of San Francisco*, 979 F.3d 1220, 1223 (9th Cir. 2020) (cleaned up).  In deciding a motion for judgment on the pleadings, courts accept as true all of the nonmovant's factual allegations and construe them in the light most favorable to that party. *See Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

## III.   **RELEVANT FACTS FROM PLAINTIFF'S COMPLAINT**[1]

This matter arises out of a rear-end accident that occurred on February 28, 2020. (FAC ¶ 1)[2] Plaintiff John W. Sigler's vehicle was struck from behind by defendant Jorge Gonzalez. (*Id.*) Plaintiff's son was operating plaintiff's vehicle and settled his claims against Jorge Gonzalez through Mr. Gonzalez's insurance carrier, the Interinsurance Exchange of the Automobile Club (hereinafter, the "Exchange."). (¶ 2) The FAC alleges that both the Exchange and Sigler's own insurer, USAA Casualty Insurance Company (hereinafter, "USAA"), admitted Gonzalez was 100% at fault. (¶ 2)

On March 6, 2020, Plaintiff's vehicle was towed to Imperial Body Shop (hereinafter, "IBS") in La Habra, CA. (¶ 33)  On March 9, 2020 Plaintiff visited IBS to inspect his vehicle and signed papers agreeing to have his vehicle repaired. (*Id*)

---

[1] Defendants do not admit to any of the facts in this section. These facts are alleged in plaintiff's FAC.
[2] All subsequent paragraph "¶" citations refer to the FAC.

The Interinsurance Exchange of the Automobile Club:                                    Case No. 8:22-cv-2325
Memorandum of Points & Authorities in Support of Motion for Judgment on the Pleadings

On March 9, 2020, IBS employee Pablo Galvez created a Vehicle Valuation Report ("VVR") under the direction of USAA. (¶ 33.) Mr. Galvez's initial VVR valued Plaintiff's vehicle as $9,238.52 (base value $8,437, plus tax). (*Id.*) The VRR contained discrepancies regarding the condition of the Plaintiff's vehicle, including that it did not have a sunroof or CA emissions equipment. (*Id.*) Plaintiff alleges these were misrepresentations and were used to artificially depress the appraised value of the Plaintiff's vehicle. (*Id.*)

On March 11, 2020, USAA allegedly opened a total loss claim for plaintiff's vehicle without his consent, relying on a VVR prepared by IBS. (¶¶ 33, 36.)

On March 19, 2020, plaintiff decided to get a "competitive" offer from the Exchange. (¶¶ 45, 48, 161, 175.) Plaintiff had his son contact the Exchange to request a settlement quote. Plaintiff's son spoke to Amber Peterson, an adjuster at the Exchange, who stated that the Exchange would accept responsibility for the damages to plaintiff's vehicle and provide a fair and honest settlement. (*Id.*) During this phone call, Alexander Sigler told Ms. Peterson that USAA provided a VVR stating that plaintiff's vehicle did not have a sunroof or emission equipment. Amber Peterson stated that the Exchange would obtain their own appraisal of the vehicle and get back to the Plaintiff.  (*Id.*)

On March 23, 2020, Greg Taylor, another employee of IBS, prepared a repair estimate, stating that it would cost $9,654.78 to repair plaintiff's vehicle. (¶¶ 13, 143) Greg Taylor also prepared a separate valuation report at the direction of Amber Peterson, to a base rate of $8,437, or $9,238.52 with tax. (¶¶ 35, 77, 138-140.)

Amber Peterson emailed Plaintiff on March 25, 2020 informing him that his vehicle was a "total loss" based on Greg Taylor's valuation. (¶¶ 75, 136, 146-147.)  Plaintiff defines "Total loss of a vehicle" as the cost to repair the vehicle exceeding the fair market value of the vehicle. (¶ 137) Plaintiff pointed out to the Exchange that the valuation omitted that plaintiff's vehicle had a sunroof and metallic paint. (¶¶ 140-141.)

On April 3, 2020, after plaintiff pointed out the discrepancies, the Exchange revised the valuation of plaintiff's vehicle to $10,377.01. (¶¶ 79, 141, 147, 144.) Plaintiff also

4

The Interinsurance Exchange of the Automobile Club:                                    Case No. 8:22-cv-2325
Memorandum of Points & Authorities in Support of Motion for Judgment on the Pleadings

received an offer for "loss of use." (¶80.) The Exchange offered Plaintiff $38.99 per day for the reasonable rental value of a vehicle based upon an Enterprise Rental price for a Chevrolet Impala.  The pricelist stated that the $38.99 was a base price and did not include taxes or other mandatory fees. (*Id.*)

Plaintiff again informed the Exchange that the vehicle valuation report contained errors. (¶ 142) On April 15, 2020, the Exchange revised their valuation to $10,695.94. The Exchange made an additional "loss of use" offer on the fair market value of a rental from AVIS for $54.23 per day. This rate applied a special COVID-19 discount rate that was not available until months after the accident. It also did not include AVIS's underage fee. (*Id.*)

Plaintiff prepared a repair estimate in the FAC where he subtracts any "unnecessary charges" to show a lower cost. (¶ 148.) The FAC alleges that subtracting just one of the allegedly extraneous parts and labor charge for supplies on the estimate prepared by Greg Taylor reduces the estimated cost to repair to $7,929.1, a value below Taylor's initial vehicle appraisal of $8,437. (*Id.*)

Plaintiff now brings the instant First Amended Complaint for Damages alleging: Negligence, Intentional Misrepresentation, violations under the Clayton Act, violations under the RICO Act, Conspiracy to violate 1962(c), Actionable Deceit, Civil Rico, Wire Fraud, Mail Fraud, Extortion, Tampering with a witness, victim, or an informant, Punitive Damages, and violations under the Clayton Act, Section 4. (*See generally,* FAC.)

## IV.   <u>ARGUMENT</u>

### A.   THE FIRST AMENDED COMPLAINT FAILS TO ADEQUATELY PLEAD INTENTIONAL MISREPRESENTATION (FRAUD)

To allege intentional misrepresentation (fraud), the claimant must allege the following: (1) a material misrepresentation (false representation, concealment, or nondisclosure); (2) scienter or knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage.  *See GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1039 (C.D. Cal. 2017), *aff'd sub nom. GemCap*

5

The Interinsurance Exchange of the Automobile Club:                                    Case No. 8:22-cv-2325
Memorandum of Points & Authorities in Support of Motion for Judgment on the Pleadings

*Lending I, LLC v. Quarles Brady, LLP,* 787 F. App'x 369 (9th Cir. 2019)*; see also McColgan v. Mut. of Omaha Ins.Co.,* 4 F. Supp. 3d 1228, 1233 (E.D. Cal. 2014).

Plaintiff's claims of fraud / intentional misrepresentation are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Rodriguez v. JP Morgan Chase & Co.,* 809 F. Supp. 2d 1291, 1296 (S.D. Cal. 2011). These claims against the Exchange for intentional misrepresentation are made in the third and fourth causes of action of the FAC. The facts alleged, even if true, fail to support any cause of action for intentional misrepresentation against the Exchange.

i.     Third Cause of Action

Plaintiff alleges in its third cause of action that the Exchange, through its employee Amber Peterson, made an intentional misrepresentation to plaintiff in an email on March 25, 2020, stating that his vehicle was non-repairable[1] because it was a total loss. (FAC, ¶¶ 75, 136.) Specifically, the cost to repair the vehicle exceeded the fair market value of the vehicle. (¶ 137.) This was supported by a March 23, 2020 repair estimate prepared by Greg Taylor of IBS stating that the repair cost for the vehicle was $9,654.78 and a vehicle valuation report appraising the vehicle's value at $8,437, before taxes, or $9,238.52 after taxes. (¶¶ 75, 136-140.)

The FAC has not established that describing the vehicle as a "total loss" was in fact a misrepresentation. California Vehicle Code section 544(a) defines "total loss salvage vehicle" as either a vehicle damaged "to the extent that the owner, leasing company, financial institution, or the insurance company that insured or is responsible for repair of the vehicle, considers it **uneconomical** to repair." (Emphasis added)  One cannot conclude that saying it is uneconomical to repair plaintiff's vehicle, given the various numbers for cost of repairs versus vehicle value, amounts to a material misrepresentation.

---

[1] Plaintiff uses "non-repairable" and "total loss" interchangeably throughout the FAC, defining a total loss as the repair cost exceeding the value of the vehicle. For example, in paragraph 152, the FAC states, "The Plaintiff relied upon these Defendants' misrepresentation that his vehicle was a total loss (non repairable)."

### a.  Any Misrepresentation Was Not Material

Moreover, the alleged misrepresentation was not material. On March 19, 2020, plaintiff decided to get a "competitive offer for compensation" for the property damage from the Exchange. (¶ 45) Also, according to the FAC, the Exchange stated that they would obtain their own "appraisal of the vehicle" and get back to the plaintiff. (*Id.*) Thus, the only relevant representation agreed upon by the parties was that the Exchange would provide an appraisal of plaintiff's vehicle. While the Exchange also had a cost of repair prepared on March 23, 2020, that was not required of them.

### b.  There Was No Actual Reliance

Plaintiff did not rely on the alleged misrepresentation made by the Exchange on March 25, 2020, informing him that the cost of repair exceeded the value of the vehicle. **Plaintiff informed the Exchange that the vehicle valuation report contained errors** and, **nine days later**, the Exchange revised their valuation "upward to $10,377.01."  (¶¶ 79, 147, 144.) Plaintiff then pointed out further omissions in the Exchange's valuation, causing the Exchange to again revise its valuation on April 15, 2020, to $10,695.97. (*Id.*)[1]

Consequently, plaintiff did not rely on the March 25, 2020 statement, and instead persuaded the Exchange that his vehicle's value exceeded the cost of repair of $9,654.78 on April 3, 2020, and further confirmed this fact on April 15, 2020 by persuading the Exchange that his vehicle was worth $10,377.01. Moreover, plaintiff ultimately did not accept the Exchange's offers.  Therefore, there can be no justifiable reliance to plaintiff's detriment.  In other words, the Exchange did not fool plaintiff into anything.

Furthermore, any reliance would not be justifiable. Plaintiff had the information needed in the vehicle estimate prepared on March 23, 2020. While he alleges USAA withheld its estimate, this is irrelevant because Plaintiff admitted that he received the Exchange's estimate in paragraph 45 of the original Complaint.  Plaintiff states in paragraph 147 of the First Amended Complaint that it was "clear" the vehicle was not a

---

[1] Plaintiff inadvertently identifies the Exchange as USAA in paragraph 142 but clarifies that the revision was made by the Exchange in paragraph 144.

total loss when comparing the March 23, 2020 estimate and the the new valuation for his vehicle of $10,377.01 provided on April 3, 2020.

### c. Plaintiff Did Not Suffer Any Damages From The Alleged Misrepresentation

To be actionable, the alleged misrepresentation in the third cause of action – that the vehicle was a total loss, or non-repairable –must have caused plaintiff damages. *See First v. Allstate Ins. Co.,* 222 F. Supp.2d 1165, 1173 (C.D. 2002) ("Failure to produce evidence of injury is similarly fatal to Plaintiffs' argument that [insurer] committed fraud in misrepresenting extent of the damage to Plaintiffs'…Plaintiffs failed to establish…whether they were underpaid as a result.)

According to the FAC, the Exchange never offered to repair plaintiff's vehicle. In fact, it appears by the alleged conduct of both the Exchange and USAA, that neither insurer saw repairing plaintiff's vehicle as economical. Thus, he was not damaged by the statement since repairs were not even an option. Instead, the Exchange offered him compensation. It is important to note that offering compensation is what an insurance company does, and the issue here is the measure of calculating the compensation – i.e., cost of repairs *or* fair market value of the vehicle.

The FAC states that the "corrected" repair cost for the repair estimate prepared by Taylor would be $8,349.10. This would be the amount plaintiff would be entitled to if compensated for repairs. (¶ 77.) If using the allegedly fraudulent estimate prepared by Taylor, plaintiff would be owed $9,654.78. (¶ 75.) Instead, the Exchange was persuaded on April 15, 2020 to provide a final settlement offer to plaintiff based on a valuation of plaintiff's vehicle at $10,695.97. Thus, even under plaintiff's own allegations, it was to plaintiff's advantage to accept the valuation of his vehicle over the cost of repair.

Consequently, plaintiff was never damaged due to the alleged misrepresentation because repairing his vehicle was not an option offered to him. Instead, he was offered compensation which ultimately was in excess of the cost to repair his vehicle per plaintiff's

own calculation.  Plaintiff was free to use those funds to repair his vehicle and may even had money left over.  The Exchange agreed to provide plaintiff with compensation for his vehicle. Whether his vehicle was repairable or not was not material to plaintiff receiving compensation.

And, again, plaintiff never accepted the Exchange's offers, which also means he could not have been damaged by any alleged misrepresentation of the Exchange or justifiable reliance thereon.

ii.    Fourth Cause of Action

Plaintiff alleges that the Exchange, through Amber Peterson, falsely stated during a phone call on March 19, 2020 that the Exchange would provide a fair and honest settlement of the accident damages. (¶¶ 161, 175).  Simply put, plaintiff's fourth cause of action against the Exchange does not allege that the Exchange made any misrepresentations or that plaintiff was damaged by them.  Furthermore, any reliance on this representation is not reasonable because the Exchange does not owe plaintiff any duty to resolve his damages (unlike the duty the Exchange owes its own insured).

Firstly, this was not a misrepresentation of material fact. This is mere puffery because it is a generalized statement of opinion regarding the business's honesty and fairness.  It is not actionable. *Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 28 (S.D.N.Y. 2016) (statements about reputation, integrity, and compliance with ethical norms are quintessential puffery); *See Also Stewart v. Electrolux Home Prod*. No. 117CV01213LJOSKO, 2018 WL 1784273, at *11 (E.D. Cal. Apr. 13, 2018) ("**statement about** transparency, **honesty, and fairness is non-actionable**."); *See also Haskell v. Time, Inc.*, 857 F. Supp. at 1399 (E.D., 1994) (dismissing claims based on statements that the court concluded were "mere puffing" or could not be construed as alleged in the complaint); *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv. Inc*., 911 F.2d 242, 245 (9th Cir. 1990) ("District Courts often resolve whether a statement is puffery

9

The Interinsurance Exchange of the Automobile Club:                                        Case No. 8:22-cv-2325
Memorandum of Points & Authorities in Support of Motion for Judgment on the Pleadings

when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and we can think of no sound reason why they should not do so.").

Furthermore, plaintiff was not damaged by this statement. According to the FAC, plaintiff was entitled to an offer of $8,349.10 for the cost of repairs to his vehicle. Instead, the Exchange offered him $10,695.97 to compensate him for replacing his vehicle.

Additionally, reliance on this alleged misrepresentation is not justifiable or reasonable. The Exchange is not plaintiff's insurer. There is no insurance contract between them. Unlike the duty the Exchange has to its insured Gonzalez, it has no duty to plaintiff to resolve his claim or provide plaintiff with an offer – let alone an offer based on plaintiff's subjective opinion regarding fairness. A reasonable person does not expect opposing parties to be looking out for the others' best interest.

And, again, given that plaintiff never accepted any of the Exchange's offers, there was no actual reliance or any damages incurred by plaintiff as a result of the statement.

Consequently, the Exchange is entitled to judgment in its favor as to the fourth cause of action in the FAC, because the statement made by the Exchange is not a misrepresentation as a matter of law and plaintiff was not damaged by the statement nor was it reasonable for him to rely on such a statement.

**B.   PLAINTIFF DOES NOT HAVE STANDING TO BRING HIS FIFTH CAUSE OF ACTION AGAINST THE EXCHANGE BECAUSE HE WAS NOT INJURED.**

Plaintiff's fifth cause of action alleges violations of section 1 of the Sherman Act. Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade." 15 U.S.C. § 1; *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 900 (C.D. Cal. 2012)   Plaintiff specifically alleges that the Exchange and other defendants engaged in an intentional act of price fixing / bid rigging of vehicle valuation reports with the deliberate intent to cause damages to the plaintiff's business and property. (¶ 180)  However, plaintiff does not have

10

The Interinsurance Exchange of the Automobile Club:                                    Case No. 8:22-cv-2325
Memorandum of Points & Authorities in Support of Motion for Judgment on the Pleadings

standing under the Sherman act because he failed to plead that he suffered the type of injury that antitrust laws were enacted to forestall, let alone that he was injured at all by the Exchange's alleged conduct.

Antitrust standing is a jurisdictional prerequisite to a Section 1 claim under both the rule of reason and the per se rule. *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 900–01 (C.D. Cal. 2012); *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 744 (9th Cir.2012) ("Because Plaintiffs lack antitrust standing, we do not address Plaintiffs' appeal regarding the district court's [ ] determination that the rule of reason, and not the per se rule, applies here").

Under § 4 of the Clayton Act, "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue ... and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15(a). However, "[t]he Supreme Court has interpreted that section narrowly, thereby constraining the class of parties that have statutory standing to recover damages through antitrust suits." *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120 (9th Cir.2008) (citing Illinois Brick v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977)); *accord Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir.1999) (noting that § 4 is not to be read to "afford relief to all persons whose injuries are causally related to an antitrust violation," rather, "courts have constructed the concept of antitrust standing, under which they 'evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them,' [in order] to determine whether a plaintiff is a proper party to bring an antitrust claim."). As a result, "[a]ntitrust standing is distinct from Article III standing," and a "plaintiff who satisfies the constitutional requirement of injury in fact is not necessarily a proper party to bring a private antitrust action." *Id.* at 1054 n. 3.

The Supreme Court has identified certain factors for determining whether a plaintiff who has borne an injury for Article III standing has suffered injury for antitrust purposes.

The Interinsurance Exchange of the Automobile Club:
Memorandum of Points & Authorities in Support of Motion for Judgment on the Pleadings

Case No. 8:22-cv-2325

*Am. Ad Mgmt.*, 190 F.3d at 1054. These factors include: (1) the nature of the plaintiff's alleged injury; that is, whether it is the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages. *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir.1996); *accord Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 538–45, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

Here, plaintiff alleges that he was injured because he had a "loss of a fair and competitive offer for the valuation of his 'totaled' vehicle, and/or loss of the option to have his 'totaled' vehicle repaired." (FAC, ¶ 191.) Plaintiff also alleges that he was injured because he had loss of use of his vehicle and a loss of productivity due to dealing with the instant lawsuit.

Plaintiff was not injured by receiving an allegedly low quote nor was this alleged injury the type of injury covered under the Sherman Act. Plaintiff was free to get an independent quote from an automotive mechanic of his choice and was free to research the value of his own vehicle from a multitude of sources including used car dealerships and online resources like Kelly's Bluebook. Additionally, according to the FAC, plaintiff persuaded the Exchange to increase its valuation of his vehicle and the Exchange made its offer based on his vehicle being worth $10.695.97 instead of the $9,654.78 initially quoted to him, which is in excess of the true cost of repairs of $8,349.10 according to plaintiff.

Furthermore, the injuries claimed are not the type of injuries caused by the restraint of trade. Plaintiff alleges that the conspiracy between the defendants was "an intentional and targeted attack against a single party, the plaintiff." (FAC, ¶ 188.) Plaintiff is not alleging that the Exchange was price fixing to the detriment of other insurers, insureds, or other industries. Instead, he is arguing that he was singled out by the Exchange to his own detriment. Likewise, his claimed injuries do not affect anyone else but him.

Moreover, the Exchange and USAA are not in competition for payment of the claim: USAA owes plaintiff a first-party duty to under the insurance policy between them, while the Exchange owes a duty to indemnify its insured, Mr. Gonzalez, against plaintiff's third-party claims against Mr. Gonzalez. They are entirely separate duties.  This matter did <u>not</u> involve any actual "competitive" offers and "bids" as if this was a sales transaction where the Exchange and USAA were on similar footing.  Further, regardless of offers made by the Exchange, plaintiff was never "restrained" from his legal recourse of seeking full damages against Mr. Gonzalez in court – which plaintiff is in fact doing in this lawsuit.

Finally, plaintiff's injuries, if any, are too speculative to measure for recovery. Plaintiff alleges injury from not receiving a quote from the Exchange for the correct value of his vehicle or the cost to repair his vehicle. But these are services he can obtain from other sources, and are provided for free by all repair shops and dealerships. There are also guides like Kelly's Bluebook that will provide the fair market value of a vehicle.  Plaintiff styles himself as qualified to evaluate these. Consequently, it is too speculative to measure the amount of harm to plaintiff because any injury he received has no actual value. Furthermore, any additional harm plaintiff is claiming to his loss of use of the vehicle was due to the accident, not to the alleged price fixing at a single automobile repair shop to provide an estimate for the value of his vehicle. Additionally, any time he lost from work by concentrating on this cause of action is not recoverable.  Violations of the Sherman Act allow for reimbursement of a private actor's attorney's fees. Plaintiff is not an attorney and not legally entitled to collect attorney fees for his work on the case. *See Hannon v. Security Nat'l Bank*, 537 F.2d 327, 328-29 (9th Cir. 1976); *see also Atherton v. Bd. Of Supervisors*, 176 Cal. App.3d 433, 435-46 (holding pro se litigant not entitled to attorneys' fees as a matter of law because he was not an attorney); Fritz v. Kern City, CA, WL 203774 a t*5 (E.D. Cal. 2008) (holding attorneys ' fees are not available as a matter of law to a plaintiff appearing in pro per).

C.   **PLAINTIFF'S RICO CLAIMS FAIL TO SUFFICIENTLY ALLEGE A PATTERN OF RACKETEERING ACTIVITY BECAUSE THE ALLEGED PREDICATE ACTS WERE NOT PART OF A SCHEME THAT POSED A THREAT OF CONTINUED CRIMINAL ACTIVITY.**

The FAC alleges that the Exchange was engaged in a pattern of racketeering activity by trying to get plaintiff to accept a lower value for replacing his vehicle. The Exchange allegedly tried to accomplish this by directing IBS to prepare a fraudulent repair estimate and vehicle valuation in March 2020 followed by sending plaintiff said fraudulent estimate vehicle valuation with an offer to resolve plaintiff's claims based on the alleged fraudulent information. The FAC further alleges that the Exchange also tried to negotiate with plaintiff twice in April based on car rental quotes that it knew was missing information.  This does not satisfy a "pattern" of racketeering activity.

A "pattern of racketeering activity" requires at least two predicate acts, though two is not always sufficient because "in common parlance two of anything do not generally form a 'pattern.'" *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987) (*quoting Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985)). The predicate criminal acts must be both "related" and "continuous." *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995). Acts are continuous "if the predicate acts posed a threat of continuing activity." *Sun Sav. & Loan*, 825 F.2d at 193. These requirements ensure that the RICO statute is not applied "to the perpetrators of isolated or sporadic criminal acts," since "Congress was concerned in RICO with long-term criminal conduct." *Id.* at 192; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989). For this reason, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct" are not enough to state a civil RICO claim. *H.J. Inc.*, 492 U.S. at 229.

i.   <u>There was no Continuity of the alleged acts.</u>

A plaintiff can establish that predicate acts were continuous by pleading either open-ended or closed-ended continuity. *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1526 (9th Cir.

1995). Open-ended continuity refers to "past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 241 (1989). Closed-ended continuity refers to "a series of related predicates extending over a substantial period of time." *Id.* at 242. The continuity requirement reflects Congress "concern[ ] in RICO with long-term criminal conduct." *Id.* at 242.

### ii.    The First Amended Complaint is Devoid of Open-ended Continuity.

None of the alleged predicate acts the Exchange engaged in pose a risk of future criminal activity. Assuming that the Exchange's offers to compromise constituted wire fraud or extortion, which the Exchange disputes that it does, the conduct would nevertheless cease after the parties accepted a resolution or reached an impasse. There is no conduct alleged that would occur past one of these two events.

If plaintiff were to accept the offers made by the Exchange, then the alleged scheme would be over after plaintiff received a settlement and waived his right to future payments. The alleged fraudulent transaction would be complete. *See Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.,* 833 F.2d 1360 (9th Cir.1987), *cert. denied,* 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989).  In *Medallion*, the plaintiff alleged that the defendant fraudulently induced it into entering a television contract. Although the Court agreed that the plaintiff had alleged two predicate acts, it affirmed the grant of summary judgment for the defendant, noting that "Medallion's allegations concern a single fraudulent inducement to enter a contract. Once the [contract was entered into], the fraud, if indeed it was a fraud, was complete." *Id.,* at 1364.

Likewise, plaintiff reaching an impasse also caused the alleged fraudulent activity to stop. That is what happened here. Plaintiff reached an impasse with the Exchange and the Exchange stopped trying to negotiate with him.

Furthermore, plaintiff cannot show that the alleged predicate acts were part of the Exchange's regular method to conduct business.  *See generally H.J.*, 492 U.S. 229, 243.

### iii.    The First Amended Complaint is Devoid of Closed-ended Continuity.

Here, it appears plaintiff is alleging **a single episode** of fraud against the Exchange for the alleged purpose of resolving plaintiff's claims against the Exchange's insured for below the fair market value by way of fraud. *See generally Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (multiple acts alleged by the plaintiff were considered a single episode when they had a singular purpose rather than being a series of separate, related acts.)

Courts routinely reject the argument that one or more predicate acts to bring about a single event constitute closed-ended continuity, especially if the acts were directed at **one singular person**. *See Server*, at 1535 (multiple acts against plaintiff with one purpose against one person does not satisfy the continuity requirement under RICO) (*citing to Medallion Television,* at 1364; *Jarvis v. Regan*, 833 F.2d 149, 152–153 (9th Cir.1987) (pattern requirement not satisfied by allegations that legal aid organizations committed three predicate acts of mail and wire fraud in obtaining a single federal grant to defray costs of opposing a ballot initiative); *Schreiber Distributing Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir.1986) (pattern requirement not established where defendant had fraudulently obtained a single shipment of goods in violation of plaintiff's exclusive distribution agreement for lack of threat of continuing activity).

Here, plaintiff's allegations, even if arguably characterized as more than one activity, boil down to a description of the Exchange's alleged attempt to settle a single vehicle damage claim, made by a single claimant, for a single purpose – to allegedly get plaintiff to settle his property damage claims for an amount below what plaintiff believes is the true value.  This does not constitute continuity for purposes of actionable RICO.

### iv.    Plaintiff's allegations of continued activity by the Exchange must fail.

Plaintiff cannot prevail on his attempts to save his RICO claims by alleging "[t]here is a more than likely chance that Ms. Peterson will, or has already engaged in the same

criminal, fraudulent activities in the future and the threat of continuity is a reasonable expectation." (Dkt. 65, p. 21:9-17.)

Such speculative, conclusory, and vague allegations are insufficient to allege an open-ended pattern of racketeering activity. *See Emery v. Amer. Gen. Finance, Inc*., 71 F.3d 1343, 1348 (7th Cir.1996) (finding that plaintiff failed to allege a pattern of racketeering where plaintiff failed to allege "names or dates or details of transactions involving any customers besides [the plaintiff]"); *see also Jepson, Inc. v. Makita Corp*., 34 F.3d 1321, 1328 (7th Cir.1994) (holding that plaintiff's allegation that defendant engaged in "multiple instances" of mail and wire fraud did not allege "pattern of racketeering activity" with sufficient particularity as required by Fed. R. Civ. P 9(b)); *Schreiber Distributing Co. v. ServWell Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir.1986) (to allege mail or wire fraud predicates for RICO claims, plaintiff must state the time, place, and specific content of the false representations as well as the identities of the parties to the representations as required by Rule 9(b)); *see also see also Higgins v. Farr Fin. Inc., No. C 07-02200 JSW, 2009 WL 3517597 (N.D. Cal. Oct. 26, 2009) (holding that plaintiff's conclusory allegations that other unidentified individuals were affected was insufficient to allege pattern of racketeering activity).*

**D.   PLAINTIFF'S TWELFTH CAUSE OF ACTION DOES NOT SUFFICIENTLY PLEAD A CONSPIRACY TO COMMIT A CIVIL RICO VIOLATION.**

Plaintiff's twelfth cause of action alleges that Gonzalez is liable under 18 U.S.C. § 1962(d) under the conspiracy provisions of RICO. Section 1962(d), the conspiracy provision of the RICO statute, provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section." *Baumer v. Pachl*, 8 F.3d 1341, 1345-46 (9th Cir. 1993) (quoting 18 U.S.C. § 1962(d)). A violation of 18 U.S.C. § 1962(d) requires that the defendant "knew about and agreed to facilitate the [fraudulent] scheme." *Salinas v. United States*, 522 U.S. 52 (1997); United States v.

17

Fernandez, 388 F.3d 1199, 1230 (9th Cir. 2004), modified, 425 F.3d 1248 (9th Cir. 2005) (liability for conspiracy defendant who "knowingly agreed to facilitate a scheme which includes the operation or management of a RICO enterprise"). To establish a violation of section 1962(d), a Plaintiff "must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Id; see also Wolov v. Duel*, 2023 WL 2780369, at *3 (C.D. Cal. Feb. 28, 2023).

As a preliminary matter, it is not plausible that Gonzalez's attorney filed a forged document with the CM/ECF system. The document in question is ECF Document Number 30. (*See* Dkt. 30.) The document was filed by Eran S. Forster and signed by Eran S. Forster. There is nothing forged on the document. Furthermore, 18 U.S.C. § 1503 is a criminal statute. It does not confer a private right of action to plaintiff. *Odell v. Humble Oil & Refining Co.*, 201 F.2d 123 (10th Cir.), *certiorari denied* 73 S.Ct. 833, 345 U.S. 941, 97 L.Ed. 1367 (1953). Furthermore, the conduct alleged does not violate 18 U.S.C. § 1962(d). The FAC is devoid of any facts that defendant Gonzalez violated 18 U.S.C. § 1962(a),(b), or (c).

Even if it is found that the filing of a legal document is a violation of 18 U.S.C. § 1962(d), the FAC does not plead facts with particularity identifying how Gonzalez knew and agreed to a scheme, including the operation and management of a RICO enterprise. Additionally, there are no facts in the FAC supporting an agreement between any of the members of the RICO enterprise.

Instead, it is plead that Gonzalez made an agreement with his own attorney, which also represents the Exchange. (FAC, at 262.) The FAC fails to explain how an agreement to waive service of the complaint by Gonzalez furthers the alleged RICO enterprise or how it violates 18 U.S.C. § 1962(d) or 18 U.S.C. 1503.

Furthermore, the FAC claims that the "forged" waiver of service provided Gonzalez with additional time to respond to the complaint. However, the CM/ECF system clearly

shows that plaintiff never personally served Gonzalez and would not be entitled to a responsive document if service was not waived. Gonzalez is not required to submit to the Court's jurisdiction until he is either personally served, waives service, or the Court allows plaintiff the ability to substitute service.

Consequently, this cause of action against Gonzalez must fail. It is not plausible that the document Gonzalez's attorney filed was a forged document. The FAC also fails to show that defendant Gonzalez violated any laws by his attorney filing the waiver of service, let alone a criminal statute. Plaintiff also fails to show how he has standing or how the alleged conduct violates 18 U.S.C. § 1962(d) or 18 U.S.C. 1503. Finally, the FAC does allege any facts with the requisite particularity identifying how Gonzalez knew and facilitated the racketeering scheme of an enterprise.

## II.   <u>CONCLUSION</u>

Plaintiff's FAC must be dismissed against the Exchange and the RICO conspiracy claim dismissed against Gonzalez.  The Exchange and Gonzalez respectfully request that this Court enter a judgment in favor of the Exchange regarding all causes of action alleged against it and in favor of Gonzalez dismissing the twelfth cause of action against him. Moving parties also ask that plaintiff not be given any further leave to amend because the nature of the dispute shows that plaintiff cannot maintain these causes of action as a matter of law.

Dated:  November 29, 2023

FORD, WALKER, HAGGERTY & BEHAR


BY:_____
        JEET SEN
        ERAN S. FORSTER
        Attorneys for Defendants,
        *The Interinsurance Exchange of the*
        *Automobile Club and Jorge Gonzalez*

19

1

2

3
## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1

4
    The undersigned, counsel of record for the Defendant Interinsurance Exchange of

5
the Automobile Club, certifies that this brief contains 6,580 words (excluding the caption,

6
any table of contents, any table of authorities, the signature block, this certification, and

7
any indices and exhibits), which complies with the 6,620 word limit of Local Rule 11-6.1.

8

9
Dated:  November 29, 2023

                         FORD, WALKER, HAGGERTY & BEHAR

10

11

12
                     BY: _____

13
                            JEET SEN

14
                            ERAN S. FORSTER

15
                            Attorneys for Defendant,
                            *The Interinsurance Exchange of the*

16
                            *Automobile Club and Jorge Gonzalez*

17

18

19

20

21

22

23

24

25

26

27

28