1
2
3
4
5

John W. Sigler
13129 Stern Ave
La Mirada, California 90638
Telephone: (714) 697-8576
Email: JSIGLER@SWS-LLC.COM
**Plaintiff In Propria Persona**



**F I L E D**
CLERK, U.S. DISTRICT COURT

12/30/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

6
7
8
9

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOHN W. SIGLER,

      Plaintiff,

vs.

Jorge Gonzalez, USAA Casualty
Insurance Company,  Interinsurance
Exchange of Automobile Club,
Imperial Body Shop, Inc., Pablo
Galvez, Greg Taylor, Melissa Ordell,
Danelle Bushnell, Amber Peterson
(aka Amber Peterson Forrest, aka
Amber J. Schneider), Kevin
Karapogosian, James Syring, Randy
Termeer, John Boyle and DOEs 1 to
99, inclusive;

      Defendants.

Case No.  **8:22-cv-2325-CJC-JDE**

**OPPOSITION TO THE
EXCHANGE'S MOTION FOR
JUDGMENT ON THE
PLEADINGS**

**HEARING DATE: January 22, 2024**
**HEARING TIME: 1:30 pm**
**Honorable Cormac J. Carney**

## Table of Contents

| Heading | Page No. |
|---|---|
| 1)  Background | 3 |
| 2)  Opposition To Defendant's Arguments | 5 |
| Legal Standards | 5 |
| i)        Opposition to Third Cause of Action Argument | 5 |
| ii)       Opposition to Fourth Cause of Action Argument | 9 |
| iii)      Opposition to Fifth Cause of Action Argument | 14 |
| iv)      Opposition to Sixth Cause of Action Argument | 21 |
| v)       Opposition to Twelfth Cause of Action Argument | 23 |
| 3)  Conclusion. | 26 |

## Table of Citations.

| Citation | Page No. |
|---|---|
| Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990) | 5 |
| Heliotrope General, Inc. v. Ford Motor Co., 189 F.3d 971 (9th Cir. 1999) at 979. | 5 |
| Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006) | 8, 13 |
| Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv. Inc., 911 F.2d 247 (9th Cir. 1990) | 10 |
| Engalla v Permanente Medical Group,Inc.,15Cal.4th 951,976,64,Cal.Rptr.2d 843(1997) | 12 |
| Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc., 343 F.3d 189, 195 (2d Cir. 2003) | 13 |
| Equinox Gallery Ltd. v. Dorfman, 306 F. Supp. 3d 560, 578 (S.D.N.Y. 2018) | 14 |
| United States v. Joyce, 895 F.3d 673, 677 (9th Cir. 2018) | 15 |
| Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489, 97 S. Ct. 690, 697, 50 L. Ed. 2d 701 (1977) | 16 |
| Amarel v. Connell, 102 F.3d 1494, 1507 (9th Cir. 1996), as amended (Jan. 15, 1997) | 16 |
| Diaz v. Gates, 420 F.3d, 909 (9th-Cir.2005) (per curiam) | 18 |
| Diaz v. Gates, 420 F.3d 897, 908 (9th Cir. 2005) Footnote 2. | 18 |
| Diaz v. Gates, 380 F.3d 480, 484 (9th Cir. 2004), on reh'g en banc, 420 F.3d 897 (9th Cir. 2005) | 19 |
| Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1526 (9th Cir. 1995). | 21 |
| H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 241 (1989). | 21 |

| | |
|---|---|
| Spool-v.-World Child Int'l Adoption Agency, 520 F.3d, 178, 184-8 (2d Cir.2008) | 21 |
| Inc. v. Hecht, 65 F.3d 1523, 1530–31 (9th Cir. 1995) | 22 |
| United States v. Carter, 721 F.2d 1514, 1528–32 (11th Cir.1984). | 22 |
| United States v. Elliott, 571 F.2d 880, 900–05 (5th Cir.) | 23 |
| United States v. Sutherland, 656 F.2d 1181, 1192 n. 7 (5th Cir.1981) | 23 |
| United States v. Tille, 729 F.2d 615, 619 (9th Cir. 1984) | 23 |
| California's Song-Beverly Act (CA. Civil Code 1794) | 3 |
| Federal RICO Act (18 U.S.C. 1962) | 3 |
| Clayton Act (15 U.S.C. 12) | 3, 15- 20 |
| 18 U.S.C. 1512 – Witness Tampering | 10, 21, 22 |
| 18 U.S.C. 1961 – Definitions, - Predicate Acts | 22 |
| 18 U.S.C. 1503  -  Obstruction of Justice | 23, 25 |

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## 1) **BACKGROUND**

The factual background for this lawsuit is contained in the First Amended Complaint (FAC) ¶¶28-102, so instead the Plaintiff will use this section to "connect the dots" regarding the Defendant's top-level strategy that explains the Defendant's motives behind their actions.  The overall driving force behind the Defendant's actions is to exploit a flaw in the U.S. legal system, but first let's discuss where the U.S. legal system "got things right".

Three of the "right things" in the legal system include Consumer Protection Laws, such as California's Song-Beverly Act (CA. Civil Code 1794), the Federal RICO Act (18 U.S.C. 1962), and the Clayton Act (15 U.S.C. 12).  In all these Acts, the authors realized that legal costs would prevent a person from being made whole, so they included provisions that the plaintiff could recover legal costs and attorney fees.  In the case of an automobile accident, the personal

injury side is able to make the victim whole by using "pain and suffering" damages to pay for the legal costs; but for property damages, there is no method for a victim to cover the legal / attorney costs which would be 30% - 40% on a contingency basis (FAC¶84), if you could find an attorney to accept such a case for these small amounts.

This "flaw" provides insurance companies a 30%-40% window in which to undervalue property damages where even if the plaintiff won the maximum value of his vehicle, his net award would be less than what the insurance company was offering, given the insurance company's offer was 60% – 70% of the actual value.   The numbers in this case bear this "flaw" out.   Taking into account that both insurance defendants' final property damage offers were $10,090.05 (USAA) and $10,377.01 (THE EXCHANGE), both values were approximately 67% - 69% of the valuation ($14,920) (FAC,Prayer,¶1) the Plaintiff obtained from the impartial source of the Kelly Blue Book.

Insurance companies will typically take advantage of this "flaw" if the cost to repair exceeds 60% of the valuation of a vehicle because by totaling a vehicle, the insurance company can open the door to manipulate the figures and defraud the accident victim out of thousands of dollars per claim, resulting in millions of dollars per years in "ill-gotten gains". (FAC¶56-59)

This "flaw" does not exist if a vehicle is repaired.   An insurance company cannot repair only 60% of a vehicle, so the overall motivation for insurance companies is to total a vehicle as often as possible.   The entire business model of any insurance companies is based upon Statistical Data and Actuarial Science, which shows the odds that an accident victim is going to fight for the true valuation of his property is low due to the cost of litigation.

Insurance companies will inflate repair costs, and deflate valuation to get into this 60 -70% "sweet spot".(FAC¶84)  They also undervalue loss of use damages,

knowing that few families can operate without a vehicle for very long.(FAC¶80-82)  They also inflate victims' damages through outrageous storage fees that few victims can sustain.(FAC¶66)  Since hiring an attorney is cost prohibitive, if a victim represents himself, they extend the lawsuit time, knowing that few victims can sustain the legal effort at the sacrifice of their business or work income.(FAC¶94)  This philosophy can be found throughout this lawsuit as the motivation behind the acts of fraud, extortion, and Obstruction of Justice; as well as the filing of motions in violation of local rules, where the only penalty is more work, and increased damages to the Plaintiff.

## 2) OPPOSITION TO DEFENDANT'S ARGUMENTS

**Legal Standards**

The key legal standards for a judgment on the pleadings are:  1) In ruling on a Motion for Judgment on the Pleadings brought pursuant to Rule 12(c), "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party, which have been denied, are assumed to be false." See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990), and 2) Judgment on the pleadings can only be granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law. Heliotrope General, Inc. v. Ford Motor Co., 189 F.3d 971 (9th Cir. 1999) at 979.

**i)      Opposition to Third Cause of Action Argument**

To allege intentional misrepresentation (fraud), the claimant must allege the following:

(1) <u>a material misrepresentation</u> (false representation, concealment, or nondisclosure) – THE EXCHANGE employee Amber Peterson stated in her

March 25, 2023 email "Your vehicle is non-repairable".FAC¶136  Plaintiff has stated this as a material misrepresentation by THE EXCHANGE employee Peterson.

(2) <u>scienter or knowledge of falsity</u>;  THE EXCHANGE employee Peterson based her misrepresentation that the Plaintiff's vehicle was "non repairable" on the Taylor VVR which Ms. Peterson knew, from a March 19, 2023 phonecall, contained false statements regarding the valuation of the Plaintiff's vehicle.(FAC¶48,75,140)

(3) <u>intent to induce reliance</u>; THE EXCHANGE, through the actions of their employee Peterson, intended to deceive and manipulate the Plaintiff through her statements on March 19, 2023 when she stated she would provide a fair and honest settlement offer, and that they ( her and THE EXCHANGE) would obtain their own fair and honest appraisal.(FAC¶14,48).  Further proof of intent was pled when on March 20, 2023, Peterson and USAA conspired to rig their vehicle Valuation Reports.  Planning to falsify THE EXCHANGE's VVR and repair estimate to match USAA's is clear evidence of intent and was fully pled.(FAC¶50-55)

(4) <u>actual and justifiable reliance</u> – Actual and justifiable reliance was pled.FAC¶154-156.  The Plaintiff believed Peterson's representation that his vehicle was non-repairable, and did not pursue his original plan of getting his vehicle repaired.  Instead Plaintiff was induced by Peterson's statement to go down the path of disputing valuation when repair of his vehicle was a legally available and better option; with THE EXCHANGE took "off the table" through their act of misrepresentation.  Plaintiff has pled that he did not put all the pieces together until last month (FAC¶155); meaning the last month prior to filing the FAC,(August – September 2023).  Plaintiff also pled that THE EXCHANGE's misrepresentation occurred on top of the similar misrepresentation by his own

insurer, who the Plaintiff had been mislead to believe were looking out for his best interests.(FAC¶129)

(5) <u>resulting damage</u> – the resulting damage were pled in FAC¶152, consisting of not getting his vehicle repaired, additional loss of use damages, additional storage damages, and not receiving fair market value for his vehicle. (FAC,Prayer,¶1) .

Defendant argument that Ms. Peterson's representation that the Plaintiff's vehicle was "non-repairable" was not material, is false.  This misrepresentation, denied the Plaintiff the option of repair, and justified THE EXCHANGE's falsifying the valuation of Plaintiff's vehicle.  It was a keystone of Defendant's acts of fraud.  The question of whether this misrepresentation was material, is a question of fact, not a question of law, and must be assumed in Plaintiff's favor.

Defendant argues that Ms. Peterson's representation that they (her and THE EXCHANGE) would provide an appraisal was not material.  An appraisal is a determination of the value of an item, and assumes that the valuation is based upon the item, and not the intentional matching of a known fraudulent appraisal in an illegal bid rigging scheme.(FAC¶51-55,153)   The appraisal provided was not a real appraisal, but an intentional falsification of both the valuation of the vehicle, to match USAA's previous fraudulent VVR(FAC¶51-55,140,145,146); and the repair estimate, which was not based upon actual repairs required to the vehicle, but falsified to support the intentional objective to "total" the Plaintiff's vehicle so THE EXCHANGE would have more leeway to manipulate numbers and force the Plaintiff to accept a low-ball settlement.(FAC¶148-149)

Defendant argues there was no reliance, but the Plaintiff states he replied on the misrepresentation that his vehicle was non-repairable until the August – September 2023 timeframe which colored all his decisions up until

then.(FAC¶155)  Where "matters are held to be peculiarly within defendant's knowledge, it is said that plaintiff may rely [on his representations] without prosecuting an investigation, as he had no independent means of ascertaining the truth." Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006) (citation and quotation marks omitted).  Ms. Peterson, THE EXCHANGE, and USAA are experts at determining whether a vehicle is repairable or totalled.  It was reasonable for the Plaintiff to rely on their representations.  The vehicle was not driveable, so THE EXCHANGE'S claims the Plaintiff could take his vehicle to another shop for a third party appraisal are false.

Defendant intentionally mischaracterizes Plaintiff's statements in FAC¶147, which stated "made it clear to THE EXCHANGE that their total loss determination was fraudulent".  This statement makes no reference to the Plaintiff coming to the same conclusion at that time, but finishes by stating "THE EXCHANGE continued to represent to the Plaintiff that his vehicle was a total loss, and the Plaintiff continued to rely upon THE EXCHANGE's, and Peterson's false representation".

Whether Plaintiff's reliance on Defendants' representations was reasonable cannot be resolved as a matter of law on Defendants' motion for Judgment on the Pleadings.  The question of what constitutes reasonable reliance is always nettlesome because it is so fact-intensive.  Disputed facts exist as to when the Plaintiff should have reviewed all the previous facts and determined that the Defendant's increasing valuation of his vehicle crossed the threshold of his vehicle not being "non-repairable".  The Plaintiff has pled he replied on THE EXCHANGE's misrepresentations of "non-repairable", that was also supported by similar misrepresentations from his own insurer, USAA. After this determination, Plaintiff moved on to arguing valuation and did not revisit the determination that his vehicle was "not totaled" until years later(FAC¶47) when

Plaintiff   John W. Sigler:                                    8:22-cv-2325-CJC-JDE
OPPOSITION TO EXCHANGE'S JUDGMENT ON THE PLEADINGS

he had gotten all the appraisals and repair estimates through discovery. (FAC¶5,27,35,37-43,47,155)

The Plaintiff fully pled all of the particularities for fraud in his Third Cause of Action.(FAC¶153) as well as reliance (FAC¶154,155) and resulting damages.(FAC¶152). Any argument by the Defendant that they are entitled to judgment as a matter of law, is based upon arguments containing numerous facts that are in dispute. Taking the Plaintiff allegations regarding the disputed facts as true, a motion for judgment on the Pleadings for the Third Cause of Action must be denied.

**ii)    Opposition to Fourth Cause of Action Argument**

The Defendant argues for judgment on the pleadings regarding the Fourth Cause of Action based upon three arguments: 1) the statements made by THE EXCHANGE's employee Amber Peterson were "puffery" and not actionable, 2) the Plaintiff was not damaged by Ms. Peterson's misrepresentations because the Defendant offered a replacement cost greater than the repair costs of the Plaintiff's vehicle, and 3) the Plaintiff reliance on the misrepresentations by the Defendant's employee Amber Peterson was not justifiable or reasonable.

In addressing the Defendant's first argument regarding "puffery", the Defendant's citations to a) Lopez v Ctpartners Exec. Search, b)Stewart v Electrolex Home Prod, and c) Haskell v Time,Inc all involve statements made to the general public (Advertising) and have no bearing on the Fourth Cause of Action which involves targeted statements made to a single individual to induce that individual to make a decision based upon those statements.

The ninth Circuit has stated: "*The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions. "[A]dvertising which*

*merely states in general terms that one product is superior is not actionable."* Smith-Victor, 242 F. Supp. at 308. *"However, misdescriptions of specific or absolute characteristics of a product are actionable."* Stif el, 658 F. Supp. at 1115." Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv. Inc., 911 F.2d 247 (9th Cir. 1990)  Here again, the statements made by Ms. Peterson were not advertising, but fall into the category of "*misdescriptions of specific or absolute characteristics of a product",* in this case a service, which are actionable.

Ms. Peterson's statements were specific promises regarding a specific product (i.e. a service) that Ms. Peterson and her employer would provide to the Plaintiff. Ms. Peterson made her false statements about a fair and honest settlement process after being informed that USAA had already made false and misleading representations to the Plaintiff.(FAC¶48)  When Ms. Peterson's remarks are reviewed in the context of the phone call as plead in the FAC¶48,161-165.  Ms. Peterson's misrepresentations are "misdescriptions of specific or absolute characteristics of a product" which "a reasonable consumer would interpret as a factual claim upon which he or she could rely".  As stated in the FAC¶78, Ms. Peterson formatted her statements to prey on, and deliberately reinforce, the Plaintiff's previous belief that his vehicle was totalled, arising out of statements from his own insurer, USAA that were communicated to Ms. Peterson during said March 19, 2020 phonecall.

Normally the Court and jury would be able to decide for themselves whether these statements were "puffery" or not, since they were part of the phone recording discussed in FAC¶85-86,161,174,230,238; but as alleged in FAC¶85-86,230,238, the Defendant engaged in an act of Witness Tampering, in violation of 18 U.S.C. 1512, and destroyed the recording of this phone conversation.  As such, the "Spoliation of Evidence" doctrine should apply in this case and the

Court must apply a negative evidentiary inference that the statements made by Ms. Peterson were material fact and not "puffery".

The Defendant fails to address in their motion the additional misrepresentations by the Defendant and Ms. Peterson that included: 1) Ms. Peterson's trickery of intentionally omitting taxes and fees in her first loss of use offer, stating "the cost to rent a Chevrolet Impala is $38.99 per day" (FAC¶166-169),  2) Ms. Peterson's trickery of using a COVID discounted rental car rate in her second loss of use offer which was not even available at the time of the loss of use.(FAC170-172), and 3) within 24 hours of stating THE EXCHANGE and Peterson would provide fair and honest settlement offers, and an appraisal; Peterson was conspiring to engage in a criminal price fixing scheme with USAA, supported by IBS and Taylor, to duplicate USAA's previous fraudulent appraisal offer,(FAC¶72-74), proving Peterson's representation was false.  The Defendant's silence regarding all these other misrepresentations by the Defendant and their employee Amber Peterson alleged in the Fourth Cause of Action, , speaks volumes.

The Defendant's second argument claims Plaintiff was not damaged by Ms. Peterson's intentional misrepresentations because Defendant made Plaintiff a settlement offer in excess of the cost to repair the Plaintiff's vehicle.  As pleaded (FAC¶4,78,136,146,152,164,187); having the Plaintiff's vehicle repaired was never "on the table" due to Ms. Peterson March 25, 2020 email stating "Your vehicle is non repairable"; a dishonest statement that was plead,(FAC¶146,152,164,165).   Ms. Peterson's dishonest statement that the Plaintiff's vehicle was "non repairable" eliminated the repair option for the Plaintiff. (FAC¶78-79)

Claiming the offering of a cash sum greater than the repair costs, is equivalent to, or better than providing repair of the vehicle; is false due to the shifting of the

repair liability.  If the defendant does the repair, the liability for the repair being complete and done correctly is on the defendant.  Shifting that liability to the Plaintiff is not equivalent, and would only be allowed if the Plaintiff were to agree to accept that liability, which he would not.

As pled in the FAC, damages arising out of Ms. Peterson's misrepresentations also included additional Loss-of-Use damages, as well as additional storage cost damages.(FAC¶173)  Defendant has not disputed the Plaintiff's allegations of these damages arising out of Ms. Peterson's misrepresentations, so Defendant agrees these damages exist as the result of these intentional misrepresentations by Ms. Peterson alleged in the Fourth Cause of Action.

Finally the Defendant claims there was no actual or justifiable reliance from Ms. Peterson's misrepresentations.  *"Actual reliance occurs when a misrepresentation is 'an immediate cause of a plaintiff's conduct, which alters his legal relations,' and when, absent such representation, 'he would not, in all reasonable probability, have entered into the contract or other transaction.'"* Engalla v Permanente Medical Group,Inc.,15Cal.4th 951,976,64,Cal.Rptr.2d 843(1997).  Actual reliance did occur because as a result of Ms. Peterson's misrepresentations, the Plaintiff chose to engage in the settlement process with THE EXCHANGE instead of seeking an alternative approach, which could have included "piggybacking" the property damages settlement process on the personal injury retainer agreement and having an attorney handle the process.(Complaint¶83-84,173)  Ms. Peterson's misrepresentations on March 19, 2020 also included her misrepresentation that she and her employer THE EXCHANGE would obtain their own fair and honest appraisal of the vehicle and get back to the Plaintiff.(FAC¶48), which lead to the Plaintiff choosing to engage THE EXCHANGE's settlement process instead of alternatives.

_____12_____

The Defendant argues that it was not reasonable to trust anything that THE EXCHANGE or Ms. Peterson said because "A reasonable person does not expect opposing parties to be looking out for the others' best interest". The Plaintiff never expected THE EXCHANGE to look out for his "best interest", but it was reasonable to expect THE EXCHANGE and Peterson to comply with the common law duty, to act honestly in the performance of business and contractual obligations.

"In assessing the reasonableness of a plaintiff's alleged reliance, courts consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc., 343 F.3d 189, 195 (2d Cir. 2003) (citation omitted). THE EXCHANGE and Ms. Peterson handle hundreds, if not thousands of auto accident settlements per year. This has been a once in a lifetime experience for the Plaintiff. It was reasonable for the Plaintiff to believe that Ms. Peterson would not intentionally lie to the Plaintiff. Where "matters are held to be peculiarly within defendant's knowledge, it is said that plaintiff may rely [on his [defendant's] representations] without prosecuting an investigation, as he had no independent means of ascertaining the truth." Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006) (citation and quotation marks omitted). The Plaintiff did in fact conduct an independent investigation. The Plaintiff verified THE EXCHANGE's falsehood regarding their appraisal with the fact that he received the same falsehood, his vehicle was "totalled" from his insurer, USAA. The plaintiff had no way of knowing, until discovery, that the two insurers had colluded in an illegal act of price fixing / bid rigging to defraud the Plaintiff and THE EXCHANGE's honest appraisal was a fraud.

Ultimately, *whether Plaintiff's reliance was reasonable remains a question for the trier of fact to decide after weighing all the relevant facts and circumstances surrounding the transaction*. Equinox Gallery Ltd. v. Dorfman, 306 F. Supp. 3d 560, 578 (S.D.N.Y. 2018)

The real proof of the misrepresentations and whether reliance was justified is contained in the recording of the March 19, 2020 phone call between the Plaintiff's son and Ms. Peterson; a recording that the Defendant has admitted to destroying (Complaint¶85-86,174).  The "Spoliation of Evidence" doctrine would apply in this case and the court must apply a negative evidentiary inference that the statements made by Ms. Peterson in the context of her March 19, 2020 phone call, were such that it was reasonable for the Plaintiff to rely on her statements.

All of the Defendant's arguments are based upon their interpretation of the facts, which differ from the Plaintiff's assertion of the facts in his FAC.  Any argument by the Defendant that they are entitled to judgment as a matter of law, is based upon arguments containing numerous facts that are in dispute.  Taking the Plaintiff allegations regarding the disputed facts as true, a motion for judgment on the Pleadings for the Fourth Cause of Action must be denied.

**iii)    Opposition to Fifth Cause of Action Argument**

The Defendant argues for judgment on the pleadings regarding the Fifth Cause of Action based upon three arguments: 1) Plaintiff does not have standing under the Sherman Act because he failed to plead that he suffered the type of injury that antitrust laws were enacted to forestall, 2) Plaintiff was not injured by receiving a low quote, 3) injuries claimed are not the type of injuries caused by the restraint of trade, 4) USAA and THE EXCHANGE are not in competition, and 5) plaintiff's injuries are too speculative to measure for recovery.

The Plaintiff was in the unique position where he had two insurance policies covering his property damages: 1) his collision damage policy through his own insurer USAA,(FAC¶9) and 2) the liability policy of Jorge Gonzalez though his insurer THE EXCHANGE.(FAC¶2)  During the settlement process, the Plaintiff had the right to compete the two policies to obtain the maximum compensation for his property damages(FAC¶188), and the two insurers conspiring to fix pricing and rig their bids for compensation of property damages was a clear case involving horizontal price fixing (two competitors on the same level) and bid rigging(FAC.¶183-188)

The Plaintiff pled the Essential Elements of a Sherman Act violation (FAC¶189) that include: 1) the charged conspiracy was formed,(FAC¶189a) 2) defendant knowingly jointed the charge conspiracy,(FAC¶189b) and 3) the charged conspiracy affect interstate trade.(FAC¶189c)  The Ninth Circuit has stated "*Although this court has never expressly held that bid rigging is a per se violation of Section 1 of the Sherman Act, bid rigging is a form of horizontal price fixing. See United States v. Fenzl, 670 F.3d 778, 780 (7th Cir. 2012) (describing bid rigging as "a form of price fixing in which bidders agree to eliminate competition among them, as by taking turns being the low bidder");  United States v. Bensinger Co., 430 F.2d 584, 589 (8th Cir. 1970) (holding bid rigging is "a price-fixing agreement of the simplest kind, and price-fixing agreements are per se violations of the Sherman Act"), superseded on other grounds as stated in DCS Sanitation Mgmt., Inc. v. Occupational Safety & Health Review Comm'n, 82 F.3d 812 (8th Cir. 1996). **Bid rigging is, therefore, a per se violation of the Sherman Act.**"* United States v. Joyce, 895 F.3d 673, 677 (9th Cir. 2018)

The bid rigging / price fixing engaged in by the Defendants is a per se violation of the Sherman Act, and therefore illegal under the Sherman Act.  Rigging of a bid not only includes the final pricing, but also would include any caveats that are

part of the bid; as in this case the caveat that the Plaintiff's vehicle was "non-repairable", or "totalled".(FAC¶187)  The Defendant's bid rigging / price fixing was anti-competitive and the violation reflects this.  Any injury resulting from such illegal act, is an antitrust injury.

In addressing the Plaintiff's standing under the Sherman Act, the Supreme Court has stated "*Plaintiffs must **prove antitrust injury**, which is to say **injury of the type the antitrust laws were intended to prevent** and that **flows from that which makes defendants' acts unlawful.** The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be "the type of loss that the claimed violations . . . would be likely to cause.*" Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489, 97 S. Ct. 690, 697, 50 L. Ed. 2d 701 (1977).  THE EXCHANGE and USAA matching the appraised value of the Plaintiff's vehicle, and conspiring to maintain the false representation that the Plaintiff's vehicle was "totaled", was anticompetitive and an unreasonable restraint of trade giving Plaintiff standing under the Sherman Act.(FAC¶188)  Defendant's bid rigging price fixing was illegal.  Antitrust laws were intended to prevent these acts.  An injury flowing from such an act, is a antitrust injury; thus, Plaintiff has standing for an antitrust injury until the Sherman Act, which is recoverable under the Clayton Act.

The Ninth Circuit, in Amarel v. Connell, 102 F.3d 1494, 1507 (9th Cir. 1996), as amended (Jan. 15, 1997), identified certain factors for determining whether a plaintiff who has borne an injury has antitrust standing. These factors include:

(1) the nature of the Plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall:  The Plaintiff's injuries, including: non-competitive / low-ball valuation of his vehicle (THE EXCHANGE's final valuation was less than 70% of true valuation, see OPP. Background), additional

loss of use, storage costs, business damages, and loss of the opportunity to have his vehicle repaired.(FAC¶94-98,188)  All injuries resulting from anti-competitive price fixing and bid rigging, injuries the Sherman Act was written to forestall.(FAC¶48-55,72-74,181-190,191-192)

(2) the directness of the injury:  The injuries, which included additional loss of use, additional storage costs, and damage to the Plaintiff's business from having to prosecute these claims, were directly targeted at the Plaintiff and did not involved any other parties.(FAC¶94-98,188)

(3) the speculative measure of the harm: There is no speculation regarding the harm caused by the Defendant's anti-competition bid rigging act.    The Defendant's act was key to the misrepresentation that the Plaintiff's vehicle was non-repairable and determined to be totalled; and forestall all subsequent settlement activity because the non-repairable determination took the settlement process down the "totalled vehicle" rabbit hole where the Defendants simply ended at "accept our offer or sue us"; knowing the "sue us" option would be costly to the Plaintiff.(FAC¶98)  The damages include Loss of Use, Storage Costs, and damages to the Plaintiff's business as allowed under the Clayton Act.(FAC¶191)

(4) the risk of duplicative recovery:  There is no risk of duplicative recovery since all the defendants THE EXCHANGE, USAA, and IBS all conspired to violate the antitrust laws so damages should be award jointly and severally.  Since there is only one lawsuit, the total awards, however the jury decides to award them, cannot exceed the total damages.

(5) the complexity in apportioning damages.  Since the defendants were all involved in the antitrust violations, awarding the damages jointly and severally eliminates any complexity in apportioning damages, but this is an issue for the jury to decide.

The damages awarded under the Clayton Act are specified by the Clayton Act as damages to the plaintiff's property or business.   Injuries to the Plaintiff's property were plead in FAC¶191a,191b,FAC¶190; while FAC191c describes injuries to the Plaintiff's business as per the Ninth Circuit's opinion in Diaz v. Gates, 420 F.3d, 909 (9th-Cir.2005) (per curiam).   The Plaintiff argues (FAC¶190) that in Diaz v Gates, Footnote 2, *" (interpreting RICO and the Clayton Act in tandem and stating that "[Congress] used the same words [in RICO and the Clayton Act], and we can only assume it intended them to have the same meaning that courts had already given them.")*; Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) Diaz v. Gates, 420 F.3d 897, 908 (9th Cir. 2005) Footnote 2.  <u>Damages to business that are found to be applicable under RICO, must also be applicable under Clayton.</u>

Further in Diaz v Gates, the Ninth ruled "*There is similarly no room in the statutory language for an additional, amorphous requirement that, for an injury to be to business or property, the business or property interest have been the "direct target" of the predicate act. The statute is broad, but that is the statute we have. Were the standard as the dissent claims, we would have the anomalous result that one could be liable under RICO for destroying a business if one aimed a bomb at it, but not if one aimed at the business owner, missed and hit the business by accident, or if one aimed at the business owner who happened to be in the business at the time*. (Id. 901–02)  *Diaz, on the other hand, has alleged both the property interest and the financial loss. The harms he alleges amount to intentional interference with contract and interference with prospective business relations, both of which are established torts under California law. See Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal.4th 376, 45 Cal.Rptr.2d 436, 902 P.2d 740, 750-51 (1995) (discussing torts of "interference with an existing business contract" and "interference with commercial relations"); see also*

*Restatement (Second) of Torts § 766A & cmt. e (intentional interference with another's performance of his own contract); id. § 766B & cmts. c-d (intentional interference with prospective contractual relations); Reeves v. Hanlon, 33 Cal.4th 1140, 17 Cal.Rptr.3d 289, 95 P.3d 513, 517 (2004) (interference with performance of contract is intentional if defendant knew "that the interference was certain or substantially certain to occur as a result of his or her action").* (Id. 900)   The language of the Diaz complaint qualifies the assertion that Diaz lost employment and employment opportunities by stating, *"in that plaintiff was rendered unable to pursue gainful employment while defending himself against unjust charges and while unjustly incarcerated."* Diaz v. Gates, 380 F.3d 480, 484 (9th Cir. 2004), on reh'g en banc, 420 F.3d 897 (9th Cir. 2005)  The Plaintiff has suffered business losses due to his have to prosecute this lawsuit for violation of both the Clayton and RICO Acts.

In conclusion, the Ninth Circuit ruled "*Diaz suffered two types of injuries: (1) the personal injury of false imprisonment and (2) the property injury of interference with current or prospective contractual relations.  Treating the two as separate, and denying recovery for the first, but letting the suit go forward on the second, is both analytically cleaner and truer to the language of the statute.*" (Diaz, at 902 )

The damages to the Plaintiff's business were not only a foreseeable damage the Defendants could have foreseen, but it was a damage the Defendants hoped would occur as a discouragement to the Plaintiff filing a lawsuit.  The lawsuit was a direct result of the Defendant's Clayton Act's violations, and since business damages allowed under RICO are the same as business damages under the Clayton Act, damages to the Plaintiff's business are allowed as plead.(FAC¶190,191d,192)

Contrary to the Defendant's argument, the Plaintiff is also entitled to attorney fees, especially if the Plaintiff chooses to hire a trial attorney as a "hired gun" for the actual trial, or after the jury makes an award in the Plaintiff's favour, the Plaintiff chooses to hire a top appeals law firm to handle the appeal that would assuredly be filed.

The Defendant's final argument is completely unrelated to the Clayton Act since it claims that the Plaintiff's injuries should not be allowed since they are not injuries cause by the restraint of trade and the claimed injuries do not affect anyone else.  The Clayton Act specifically states: *"(b), any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee"*.  Price fixing / bid rigging are per se violations of the Sherman Act, and are therefore covered under the Clayton Act, regardless of whether other parties are affected.  The Clayton Act has no requirement of injuries extending to other parties or any "pattern" requirement like the RICO act, so the Defendant's final argument is not applicable.

The facts alleged in the FAC cover the Defendant's involvement in a price fixing / bid rigging scheme which is a per se violation of the Sherman Act.  The Plaintiff has pled injure resulting from this antitrust scheme as per the Clayton Act, so the Defendant's request for Judgement on the Pleadings for the Fifth Cause of Action due to lack of standing must be denied.

### iv)     Opposition to Sixth Cause of Action Argument

Defendant's entire argument concerning the Sixth Cause of Action (RICO violation) centers on the claim that there is no pattern of racketeering activity.  It should be noted that Defendant does not argue the validity of the acts of fraud alleged in the FAC.

*A plaintiff can establish that predicate acts were continuous by pleading either open-ended or closed-ended continuity.* Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1526 (9th Cir. 1995). *Open-ended continuity refers to "past conduct that by its nature projects into the future with a threat of repetition."* H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 241 (1989).  *Closed-ended continuity refers to "a series of related predicates extending over a substantial period of time.*" Id. at 242. The continuity requirement reflects Congress "concern[ ] in RICO with long-term criminal conduct." Id. at 242.

Defendant's argument is void of one key concept, **Continuity is established based on a pattern of racketeering activities, <u>not a pattern of fraud activities</u>** as the Defendant would have the court believe.  The Defendant argues that multiple fraud acts committed in the March – April 2020 timeframe do not meet the establish requirement for close-ended continuity, but throughout the Defendant's entire argument, the Defendant ignores the predicate act of Witness Tampering, a violation of 18 U.S.C 1512(c)(1) that the Defendant committed in the April – June 2023.(FAC¶85-86, 230); which supports the claim of long term criminal conduct.

No court has established a hard line in defining "a substantial period of time" for closed-ended continuity. The Second Circuit has come closest in suggesting "*any scheme that lasts less than two years does not sufficiently allege a closed-ended, continuous criminal scheme*."(Spool-v.-World Child Int'l Adoption Agency, 520 F.3d,178,184-8 (2d Cir.2008)

The Ninth Circuit's position, although not a "hard line" can be found in Allwaste, Inc. V Hecht. "*as the district court assumed incorrectly that <u>closed-ended continuity could not be established absent a showing that predicate acts occurred during a period lasting more than one year</u> and that open-ended continuity could not be established because Allwaste had terminated the appellants' employment. Allwaste,*" Inc. v. Hecht, 65 F.3d 1523, 1530–31 (9th Cir. 1995)  It appears that the Ninth Circuit's hard line is one year.

In all Federal court's rulings, a pattern has always been defined based on racketeering activities, not simply fraud activities.  Witness Tampering, a violation of 18 U.S.C 1512(c)(1) is a listed predicate act under 18 U.S.C. 1961, and the Plaintiff has pled a violation of 18 U.S.C. 1512 that occurred in the April – June 2023 timeframe.(FAC¶85-86,230), which the Defendant does not address, and simply ignores.  Adding this predicate act to the fraud acts that were pled occurring in the March –April 2020 timeframe, the pattern of predicate acts committed by this defendant has transpired over a period of three years.  Coupling this with this defendant's funding of the Obstruction of Justice predicate act involving Jorge Gonzalez and this defendant's counsel in April 2023,(FAC¶87-89), the complaint alleges further evidence of close-ended continuity extending over a three year period.(FAC¶231)  A three year time span far exceeds any time period recognized by any U.S. court as meeting the definition of close-ended continuity for the pattern element of RICO.(FAC¶230-232)  It should be noted that the Defendant was completely silent on the non-fraud predicate acts that are part of a close-ended pattern.

While the Plaintiff could argue his case for open-ended continuity, there is no need since closed-ended continuity was adequately pled and the pattern requirement of RICO has been met.(FAC¶230-231)  Plaintiff also does not need to

argue the specific acts of fraud from the 2020 timeframe because the Defendant has not argued any matter of law regarding their occurrence.

The Defendant's entire argument for judgment on the Twelfth Cause of Action rests entirely on "not meeting the pattern requirement of RICO". The Plaintiff has pled closed-ended continuity of over three years when all predicate acts are considered; which exceeds any pattern requirement that has been established by any U.S. court. Since the pattern requirement was pled and meet, the Defendant's motion for Judgment on the Sixth Cause of Action must be denied.

**v)       Opposition to Twelfth Cause of Action Argument**

The issue presented here is thoroughly discussed in the decision of United States v. Carter, 721 F.2d 1514, 1528–32 (11th Cir.1984). As the court there observed, *Congress in enacting RICO expanded traditional conspiracy law by specifying a new objective from which the unlawfulness of a conspiracy may be established: violation of a substantive provision of RICO.* Id. at 1530. See also United States v. Elliott, 571 F.2d 880, 900–05 (5th Cir.), cert. denied, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978);1  United States v. Sutherland, 656 F.2d 1181, 1192 n. 7 (5th Cir.1981).

*"Proof of an agreement, the objective of which is a substantive violation of RICO (such as conducting the affairs of an enterprise through a pattern of racketeering) is sufficient to establish a violation of section 1962(d). It is only when proof of such an objective is lacking that the evidence must establish the defendant's participation or agreement to participate in two predicate offenses."* United States v. Tille, 729 F.2d 615, 619 (9th Cir. 1984)  Mr. Gonzalez's agreement and involvement in the act of violating 18 U.S.C. 1503, through endeavouring to impede the due administration of justice is a substantive violation of RICO.

The Defendant argues for judgment on the pleadings regarding the Twelfth Cause of Action based upon three arguments: 1) The Waiver of Service of Summons filed with the Court, Dkt. 30, was not a forged document, 2) the objective of the forged Waiver to provide additional time could not exist because Gonzalez was not personally served, and 3) no agreement, the objective of which is furtherance of conducting the affairs of an enterprise through a pattern of racketeering exists.

1) The Waiver of Service (Dkt. 30) was forged in two areas, the date of mailing, which was changed to read March 22, 2023 from the original which read March 17, 2023, and the date that attorney Eran Forster stated he signed the document which read March 22, 2023, but which could not have possibly been March 22, 2023.(FAC¶87) (the document was fraudulently pre-dated to account for the fact that Gonzalez was personally served through his designated agent of service, the law firm of Ford, Walker, Haggerty, &Behar on March 22, 2023).(FAC¶264)

2) The objective of the forged Waiver, to provide Gonzalez additional time, did exist because Mr. Gonzalez was personally served on March 22, 2023 through his designated agent of service, the law firm of Ford, Walker, Haggerty, &Behar. (Dkt. 27) which would require an answer be filed with the Court within 30 days on April 23, 2023. (State of California rules applied since original summons were issued by Superior Court)  It is no coincidence that the Forged Waiver was filed with the Court on April 23, 2023.(Dkt.30)

3) Mr. Gonzalez agreed to participate in furtherance of the racketeering enterprise, which he knew existed, though an act of Obstruct of Justice, which was calculated to provide him an advantage, and cause the Plaintiff additional damages through added delays which increased the Plaintiff's litigation costs.(FAC¶88,89,264)

_____24_____

Proof of Gonzalez's knowledge and agreement to be involved starts with the original Waiver which was mailed and delivered to Gonzalez at his home address. Proof of this is found by the fact that Gonzalez's attorney knew that a Waiver of Service was even "in play", and the only source of this information to his attorney, had to be Gonzalez himself.(FAC¶87)  Mr. Gonzalez had a copy of the original Complaint, so he knew that a RICO enterprise was being alleged in the lawsuit.(FAC¶264)  Mr. Gonzalez's answer to the Complaint was due on April 23, 2023, so he had to be involved in that submission since it would contain, at a minimum, his position as to whether he was negligent in causing the auto accident.

Instead of having his attorney file an answer on April 23, 2023 as required, Mr. Gonzalez agreed that his attorney would file a Waiver of Service, which Gonzalez had to know was forged, because he had the original, he never signed the original, and he knew the Waiver was voided since personal service was accepted by his designated agent on March 22, 2023.(FAC¶87)   Mr. Gonzalez agreed to participate in the furtherance of conducting the affairs of an enterprise through a pattern of racketeering activities when he agreed to his attorney Eran Forster filing the forged Waiver of Service with the court which was a violation of 18 U.S.C. 1503.

Gonzalez's fingerprints were all over the submission of the forged Waiver; from Gonzalez being the only source of knowledge to the attorneys that a Waiver was "in-play", to Gonzalez not signing the Waiver because he knew his agent was personally served on March 22, 2020, to Gonzalez trying to benefit from deceiving the court into believing he had more time to file his answer.

All of the Defendant's arguments concerning the Twelfth Cause of Action, boil down to them disputing the material facts pled in the FAC.  What Gonzalez knew and when is a question for the trier of fact to decide after weighing the relevant

facts and circumstances surrounding the event.   Since the Defendant clearly disputes material facts in their Motion, (i.e. whether the Waiver was a forgery or not, and whether Mr. Gonzalez conspired with racketeering enterprise through or with his attorney), the Court must deny the Defendant's Motion for Judgment on the Pleadings on the Twelfth Cause of Action.

3) **CONCLUSION**.

Most of the Defendant's arguments are arguments over matters of fact, not matters of law; therefore, Judgment on the pleadings can only be granted when there is no issue of material fact in dispute.   In the cases where the Defendants raise a question of law (puffery, closed-ended continuity, no antitrust violation or damages), the FAC adequately pled facts, and there is substantial case law showing, that the Plaintiff can maintain these Causes of Action as a matter of law and the Defendants are not entitled to judgment on the Pleadings for any of their argued causes of action.

Dated: December 28, 2023

JOHN SIGLER
*Plaintiff In Propria Persona*

Plaintiff   John W. Sigler:                                                                       8:22-cv-2325-CJC-JDE
OPPOSITION TO EXCHANGE'S JUDGMENT ON THE PLEADINGS

**Certificate of Compliance.**

The undersigned, John W. Sigler, the Pro Se Litigant, certifies that this brief contains 6,955 words, excluding the caption, the table of contents, the table of authorities, the signature block, the certification required by L.R. 11-6.2, and any indices and exhibits, which complies with the word limit of L.R. 11-6.1.

December 28, 2023

John W. Sigler

## CERTIFICATE OF SERVICE

**John W. Sigler v. Jorge Gonzalez, USAA Casualty Insurance Company, et al.**
**Case No. 8:22-cv-02325-CJC-JDE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am a citizen of the United States and reside at 13129 Stern Avenue, La Mirada, CA  90638.  I am over the age of 18 and not a party to the within actions.

On December 30, 2023, I served the document(s) entitled,

**OPPOSITION TO THE EXCHANGE'S MOTION FOR JUDGMENT ON THE PLEADINGS**

on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope addressed (see attached Service List) as stated below:

**(BYMAIL):**  I deposited such envelope in the mail at La Mirada Post Office, California with postage fully prepaid.  I am familiar with the practice of collection and processing correspondence for mailing.  Under that practice, it would be placed for mailing, and deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at La Mirada, California, in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States that the above is true and correct and was executed on December 30, 2023.


AnhThu Nguyen

_____1_____

**SERVICE LIST**

**John W. Sigler v. Jorge Gonzalez, USAA Casualty Insurance Company, et al.**

**Case No. 8:22-cv-02325-CJC-JDE**

Aparajito Sen, Esq.,

FORD, WALKER, HAGGERTY & BEHAR

One World Trade Center, 27th Floor

Long Beach, CA  90831-2700

Attorney for Defendant Interinsurance Exchange of the Automobile Club

Attorney for Defendant Jorge Gonzalez

Jeffery Lenkov

MANNING & KASS

ELLROD, RAMIREZ, TRESTER LLP

801 S. Figueroa St, 15th Floor

Los Angeles, CA  90017-3012

Attorney for Defendant Imperial Body Shop

Vivian I. Orlando (SBN 213833)

MAYNARD NEXSEN LLP

10100 Santa Monica Boulevard, Suite 550

Los Angeles, CA  90067

Attorney for Defendant USAA Casualty Insurance Co.

Attorney for Defendant Melissa Ordell

Attorney for Defendant Danelle Bushnell

Attorney for Defendant Randy Termeer