VIVIAN I. ORLANDO (SBN 213833)
VOrlando@maynardnexsen.com
Maynard Nexsen LLP
10100 Santa Monica Boulevard, Suite 550
Los Angeles, CA 90067
Telephone: 310.596.4500

Attorneys for Defendants
USAA Casualty Insurance Company

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JOHN W. SIGLER,

Plaintiff,

v.

JORGE GONZALEZ, USAA CASUALTY INSURANCE COMPANY, INTERINSURANCE EXCHANGE OF AUTOMOBILE CLUB, IMPERIAL BODY SHOP, INC., PABLO GALVEZ, GREG TAYLOR, MELISSA ORDELL, DANELLE BUSHNELL, AMBER PETERSON (aka AMBER PETERSON FORREST, aka AMBER J. SCHNEIDER), KEVIN KARAPOGOSIAN, JAMES SYRING, RANDY TERMEER, JOHN BOYLE and DOES 1 to 99, inclusive,

Defendants.

Case No. 8:22-cv-02325-CJC-JDEx

(Honorable Cormac J. Carney)

**DEFENDANT USAA CASUALTY INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO COMPEL APPRAISAL**

[Filed Concurrently with (i) Declaration of Melissa Ordell; (ii) Declaration of Vivian I. Orlando; and (iii) [Proposed] Order]

**Hearing**:
Date: February 26, 2024
Time: 1:30 p.m.
Courtroom: 9 B

Discovery C/O: April 22, 2024
Motion C/O: June 17, 2024
Trial Date: August 27, 2024

**TO THE HONORABLE COURT, PLAINTIFF, ALL OTHER PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on February 26, 2024 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 9 B of the United States Courthouse, located at 411 West 4th Street, Santa Ana, California 92701-4516, Defendant USAA Casualty Insurance Company ("USAA CIC"), will and hereby does move the Court for judgment on the pleadings, or in the alternative, to compel appraisal in favor of USAA CIC as to each cause of action against it in the First Amended Complaint ("FAC") filed by Plaintiff John Sigler ("Plaintiff").

This Motion is brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP") and the appraisal and other provisions of the Policy at issue on the ground that Plaintiff's FAC fails to state a claim upon which relief can be granted.

First, in an effort to avoid the appraisal requirements of the Policy, Plaintiff has conceded that USAA CIC's valuation of his vehicle was correct, and the Court should hold that he is bound by that determination under the Policy. As a result, Plaintiff's claims—all of which purport to challenge USAA CIC's valuation of his vehicle as a total loss—fail to state a claim. Plaintiffs' FAC therefore should be dismissed with prejudice as to USAA CIC.

Additionally, and independently, USAA CIC seeks dismissal of each of Plaintiff's claims against it under FRCP 12(c) on the grounds that:

(1) Plaintiff's Second Cause of Action for Intentional Misrepresentation fails as a matter of law and is therefore subject to dismissal pursuant to FRCP 12(b)(6) because the applicable statute of limitations bars Plaintiff's claims as against USAA CIC under California Code of Civil Procedure section 338(d), and otherwise fails to state a claim upon which relief can be granted because the FAC fails to allege a

misrepresentation on which Plaintiff justifiably relied, with resulting harm.

(2) Plaintiff's Fifth Cause of Action for Violation of Section I of the Sherman Act and Section IV of the Clayton Federal Act against USAA CIC fails as a matter of law and is therefore subject to dismissal pursuant to FRCP 12(b)(6) because Plaintiff does not have an Antitrust Injury and therefore does not have standing under the Clayton Act to bring a claim under Section I of the Sherman Act.

(3) Plaintiff's Sixth Cause of Action for Violation of the Civil Racketeer Influenced and Corrupt Organizations Act ("RICO") fails as a matter of law and is therefore subject to dismissal pursuant to FRCP 12(b)(6) because Plaintiff does not allege facts sufficiently and with the requisite FRCP 9(b) particularity to support a RICO claim against USAA CIC.

Finally, at a minimum, as the Court previously recognized, appraisal is a condition precedent to Plaintiff's suit under the plain terms of the Policy. (Dkt. 52.) Despite Plaintiff's claims otherwise, his FAC has continued to dispute matters that fall within the appraisal provisions of the Policy, and has refused to participate in appraisal as contemplated by the Policy. Thus, if the Court does not dismiss the case outright with prejudice as a result of this and other deficiencies, it should compel appraisal, require Plaintiff to select a qualified appraiser other than himself and dismiss (again) the lawsuit as to USAA CIC on this basis.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the pleadings in this action, the declarations of Vivian I. Orlando and Melissa Ordell, and any other argument properly before the Court.

/ / /

/ / /

/ / /

/ / /

This Motion is made following a conference of the parties pursuant to Local Rule 7-3, which took place on December 20, 2023 in which the parties fully discussed the substance of this Motion. Plaintiff has refused to amend his FAC or dismiss any claims.

Dated: January 18, 2024

MAYNARD NEXSEN LLP

By: */s/ Vivian I. Orlando*
VIVIAN I. ORLANDO
Attorneys for Defendant
USAA Casualty Insurance Company

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. LEGAL STANDARD ..... 5

IV. LEGAL ARGUMENT ..... 6

A. Plaintiff has Still Not Participated in the Appraisal Process ..... 6

B. The FAC Fails to State a Claim Because Plaintiff has Conceded that USAA CIC Properly Valued His Vehicle as a Total Loss ..... 7

C. Even if Plaintiff Properly Challenges USAA CIC's Valuation, the FAC Fails to State a Claim ..... 10

1. *Plaintiff's intentional misrepresentation claim is barred by the statute of limitations.* ..... 10

2. *Plaintiff failed to identify misrepresentations by USAA CIC that he relied on to his detriment.* ..... 12

3. *Plaintiff's antitrust claim fails as a matter of law.* ..... 15

4. *Plaintiff's RICO claim fails as a matter of law.* ..... 18

V. CONCLUSION ..... 21

**TABLE OF AUTHORITIES**


Page(s)

**Cases**

*Alamilla v. Hain Celestial Grp.*, Inc.,
30 F. Supp. 3d 943 (N.D. Cal. 2014) ..... 9

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) ..... 15, 16

*Amarel v. Connell*,
102 F.3d 1494 (9th Cir. 1996) ..... 16

*Beckwith v. Dahl*,
205 Cal. App. 4th 1039 (2012) ..... 13

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994) ..... 6

*Cadlo v. Owens-Illinois, Inc.*,
125 Cal. App. 4th 513 (2004) ..... 13

*Chapman v. Skype Inc.*,
220 Cal. App. 4th 217 (2013) ..... 12

*Daniels–Hall v. National Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ..... 9, 10

*Doan v. Singh*,
617 F. App'x 684 (9th Cir. 2015) ..... 20

*Edwards v. Marin Park, Inc.*,
356 F.3d 1058 (9th Cir. 2004) ..... 20

*Fleming v. Pickard*,
581 F.3d 922 (9th Cir. 2009) ..... 5

*Foladpour v. Hartford Life & Accident Ins. Co.*,
2014 WL 12966431 (C.D. Cal. Sept. 3, 2014) ..... 9

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal.4th 797 (2005) ........ 11

*Georgescu v. Bechtel Const., Inc.*,
15 F.3d 1085 (9th Cir. 1994) ........ 10

*H.J., Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989) ........ 18

*Higgins v. Farr Fin. Inc.*,
2009 WL 3517597 (N.D. Cal. Oct. 26, 2009) ........ 20

*Humphreys v. United States*,
272 F.2d 411 (9th Cir. 1959) ........ 11

*Illinois Brick v. Illinois*,
431 U.S. 720 (1977) ........ 16

*In re Jamster Mktg. Litig.*,
2009 WL 1456632 (S.D. Cal. May 22, 2009) ........ 21

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
940 F.2d 397 (9th Cir. 1991) ........ 20

*Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*,
833 F.2d 1360 (9th Cir. 1987) ........ 19

*Miller v. Yokohama Tire Corp.*,
358 F.3d 616 (9th Cir. 2004) ........ 21

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) ........ 21

*Shaw v. Nissan N. Am., Inc.*,
220 F. Supp. 3d 1046 (C.D. Cal. 2016) ........ 21

*Sheahan v. State Farm Gen. Ins. Co.*,
442 F. Supp. 3d 1178 (N.D. Cal. 2020) ........ 16

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir.) ........ 9

*Tawfilis v. Allergan, Inc.*,
157 F. Supp. 3d 853 (C.D. Cal. 2015) .......... 15

*Valley Surgical Supply Inc. v. Johnson & Johnson*,
523 F.3d 1116 (9th Cir. 2008) .......... 15, 16

*Vera v. REL-BC, LLC*,
66 Cal.App.5th 57 (2021) .......... 11

*Woods v. Asset*,
2006 WL 3782704 (E.D. Cal. Dec. 21, 2006) .......... 6

*Workman v. State Farm Mut. Auto. Ins. Co.*,
520 F. Supp. 610 (N.D. Cal. 1981) .......... 17

**Statutes**

15 U.S.C. § 1 .......... 15, 17

15 U.S.C. § 15(a) .......... 15

Cal. Code Civ. Proc. § 338(d) .......... 1, 10

**Rules**

Fed. R. Civ. P. 9(b) .......... 2, 12, 20

Fed. R. Civ. P. 12(b)(6) .......... 1, 2

Fed. R. Civ. P. 12(c) .......... 1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Through this lawsuit, Plaintiff John W. Sigler ("Plaintiff") purports to challenge a "scheme" whereby Defendant USAA Casualty Insurance Company ("USAA CIC") declared his vehicle total loss and offered to pay him $10,000 instead of paying a body shop a lesser amount of money to repair Plaintiff's vehicle. According to Plaintiff, this alleged scheme enriched USAA CIC to Plaintiff's detriment. The Court previously granted USAA CIC's motion for judgment on the pleadings and compelled—pursuant to the express terms of the Policy—Plaintiff to submit this dispute over the value of his vehicle to appraisal. Plaintiff refused that request and, in an effort to avoid the appraisal process, now concedes and accepts USAA CIC total loss valuation is correct.

Plaintiffs' concession must mean one of two things, either of which entitle USAA CIC to judgment on the pleadings and/or dismissal for a second time. First, and most obviously, to extent that Plaintiff is still attempting to skirt the appraisal provision in violation of the Policy's terms, the complaint must be dismissed. As the Court previously held, Plaintiff's dispute concerns the valuation of his vehicle (including, amount of total loss (or repair)), must be submitted to appraisal under the Policy's terms. Thus, to the extent that Plaintiff seeks to challenge USAA CIC's determinations, his claims are subject to mandatory appraisal and must be dismissed.

But if Plaintiff truly concedes that USAA CIC's valuation of his vehicle was correct, as he has stated as part of his effort to avoid appraisal, then that concession is fatal to Plaintiff's claims. Each of Plaintiff's causes of action against USAA CIC depend on the allegation that USAA CIC misrepresented information during the valuation process to Plaintiff's detriment, but Plaintiff has foregone any reliance on the alleged misrepresentations by accepting USAA CIC's valuation, and the determination of total loss. Indeed, as this Court previously recognized, Plaintiff's initial Complaint raised nothing more than a dispute over the amount of loss, which

the Policy required Plaintiff to submit to appraisal as a condition precedent to bringing suit against USAA CIC. (Dkt. 52.) Instead of participating in the appraisal process, Plaintiff elected to agree with USAA CIC's valuation of his vehicle, therefore ***conceding*** that his vehicle was correctly deemed a total loss under the Policy. (*See* Dkt. 76 (hereinafter First Amended Complaint ("FAC")) at Ex. A (October 6, 2023 Letter from Plaintiff).) The causes of action in Plaintiff's FAC each depend on the allegation that USAA CIC misrepresented information to USAA CIC. (*See* FAC, Second, Fifth, and Sixth Causes of Actions against USAA CIC.) But even taking Plaintiff's allegations as true, his concession makes clear that he (a) is no longer alleging misrepresentations in USAA CIC's valuations; (b) has waived any alleged detrimental reliance on USAA CIC's valuations; and (c) admitted he suffered no injury as a result of any misrepresentation. Therefore, each of Plaintiff's claims fail to state a claim against USAA CIC upon which relief can be granted.

Furthermore, and as USAA CIC detailed in its prior motion for judgment on the pleadings, Plaintiff fails to state a claim for several additional reasons. First, Plaintiff still fails to identify any misrepresentations by USAA CIC, or properly allege his justifiable reliance on such misrepresentations. As a result, his cause of action for intentional misrepresentation fails. It is also barred by the statute of limitations. And Plaintiff's antitrust claim fails because Plaintiffs has not identified an antirust injury sufficient to provide him standing to bring the cause of action. Finally, Plaintiff's RICO claim fails for reasons previously identified by the Court.

Judgment on the pleadings is due to be entered for USAA CIC.

## II. STATEMENT OF FACTS

Plaintiff alleges that his vehicle was damaged in a collision in February 2020. (FAC ¶1.) At the time, Plaintiff's 2013 Chevrolet Impala was a covered vehicle under a policy issued to Plaintiff ending in 7101-7 to Plaintiff for the policy period February 27, 2020 to August 27, 2020 (the "Policy"). (*See* concurrently filed Declaration of Melissa Ordell ("Ordell Decl.") at ¶3, Ex. A at

USAA_SIGLER_000001-000061.) The Policy provides, in relevant part, that USAA CIC will "pay for **loss** caused by collision." (Ordell Decl., Ex. A at USAA-SIGLER_000049.) "Loss" includes total loss and the "cost to repair or replace" the covered vehicle to its pre-loss condition. (*Id.* USAA_SIGLER_000048.) Loss is distinguished from the "actual cash value" of the vehicle, which is merely the cost to "buy a comparable vehicle" at the time of loss. (*Id.*)

Plaintiff's vehicle was towed to Defendant Imperial Body Shop ("IBS") for valuation of the damage. FAC ¶32. On March 10, 2020, IBS estimated the repairs would cost $9,775.68 (referred to in the FAC as the "Galvez" valuation). (FAC ¶¶35, 36.) The March 11, 2020 letter indicated that USAA CIC had determined that the actual cash value of the vehicle was $8,437. (*Id.*) USAA CIC therefore deemed the vehicle a "Total Loss" in accordance with the Policy, which provides:

> **We** will declare **your covered auto** to be a total loss if, in **our** judgment, the cost to **repair** it would be **greater** that its **actual cash value** minus its **salvage value** after the **loss**.

(Ordell Decl., Ex. A at USAA_SIGLER_000050.) The Galvez repair estimate exceeded the actual cash value of the vehicle (even before subtracting salvage value) by over $1,300. USAA CIC offered Plaintiff a total loss settlement value, reflecting the actual cash value of the vehicle plus sales tax, of $9,238.52. (Ordell Decl. at ¶¶5, 6, Exhibit C.)

Plaintiff alleges that USAA CIC adjusted its valuation on two occasions after he identified discrepancies in the Galvez estimate. (*See* FAC ¶¶46, 117.) First, on March 27, 2020, USAA CIC sent Plaintiff an updated valuation dated March 23, 2020, which accounted for a sunroof and California emission equipment not previously included. (Ordell Decl. at ¶8, Exhibit D.) USAA CIC estimated the actual cash value of the vehicle with the additional features as $8,872.00, ***which was still far lower than the estimate repair cost.*** (*Id.*) As such, after adding sales tax,

USAA CIC offered Plaintiff a total loss settlement value of $9,714.84, plus $214.00. (*Id.*) USAA CIC shared IBS' repair estimate with Plaintiff on March 27, 2020 (Ordell Decl. at ¶8, Exhibit D), and Plaintiff admitted in his original Complaint that he had at least one repair estimate from IBS in March 2020, which he cannot contradict now. (*See* (Dkt. 1 (Ex. A, Complaint, hereinafter "Compl.")) ¶45.)

Second, on March 31, 2020, USAA CIC again issued a revised valuation to account for non-standard equipment provided by Plaintiff. (FAC ¶118.) Accounting for the non-standard equipment, USAA CIC estimated the actual cash value as $8,990.00, ***which was still far lower than the estimate repair cost*** (even before subtracting salvage value from actual cash value as required by the Policy). (Ordell Decl., ¶¶9-10, Ex. E.) Therefore, after adding sales tax, fuel and other fees, USAA CIC offered a final total loss settlement value of $10,090.05. (*Id*. Ex. E)

Plaintiff refused this amount from USAA CIC, withdrew his claim, and asked the driver's insurer, Defendant Interinsurance Exchange of the Automobile Club (the "Exchange"), for another estimate. The Exchange also used IBS to prepare a repair estimate and determined the Vehicle is a total loss based on that repair estimate. (FAC ¶¶48, 74.) Plaintiff rejected the Exchange's total loss settlement offer.

Plaintiff initially filed this lawsuit in November 2022. The initial Complaint centered around an alleged conspiratorial scheme to create fraudulent undervalued vehicle valuations. (Compl. ¶178.) USAA CIC moved for judgment on the pleadings, and the Court granted USAA CIC's motion on July 3, 2023. (Dkt. 52.) Specifically, the Court held that Plaintiff's claims were nothing more than a challenge to USAA CIC's determination of the amount of Plaintiff's loss. (*Id.* at 5–6.) And, because the Policy required Plaintiff to submit disputes over the amount of loss to binding appraisal, his claims were "not ripe." (*Id.* at 6; *see* Ordell Decl. at ¶3, Ex. A at USAA-SIGLER_000053.) The Court therefore granted USAA CIC's motion for judgment on the pleadings, holding that "until an appraisal is completed, it is impossible to know whether USAA CIC has fraudulently undervalued, or used

a fraudulent process to undervalue, the vehicle." (Dkt. 52 at 6 (cleaned up).)

USAA CIC then attempted to schedule appraisal with Plaintiff. On July 11, 2023, USAA CIC identified an independent company it intended to use for the appraisal. (*See* concurrently filed Declaration of Vivian I. Orlando ("Orlando Decl."), ¶¶9-10, Ex. 4.) Plaintiff, on the other hand, designated himself as the appraiser. *Id.* On July 14, 2023, USAA CIC again offered to proceed with the appraisal if Plaintiff wished to identify someone other than himself as the appraiser (*id.*), but Plaintiff did not do so, and was not heard from again until October 6, 2023. (*Id.*) At that point, on October 6, 2023, Plaintiff asserted that he was ***no longer contesting*** the "amount of loss" or valuation and therefore did not need to participate in the appraisal process and could file suit. (Orlando Decl., ¶10–11, Ex. 4, 5.)

Plaintiff then filed the FAC, continuing to challenge USAA CIC's valuation of the vehicle as a total loss. Plaintiff now alleges that USAA CIC, the Exchange, and IBS somehow profited by colluding to declare the vehicle a total loss and hide the repairable nature of the vehicle from Plaintiff. (FAC ¶¶113, 187-188 & 200.) Plaintiff's intentional misrepresentation (Cause of Action II), Clayton Act (Cause of Action V), and RICO (Causes of Action VI) claims flow from the allegation that USAA CIC's valuation was improper and based on misrepresentations that were intentionally made to Plaintiff.

## III. LEGAL STANDARD

A motion for judgment on the pleadings should be granted "when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). In deciding a motion brought under Rule 12(c), in addition to the facts alleged in the Complaint, and "without converting the motion to one for summary judgment, the Court properly considers materials referred to in the complaint but not attached, such as the full text of a document quoted only in part in the complaint, if the complaint refers to the document, the document is central to the plaintiff's claim, and no party

questions the authenticity of the copy attached to the motion…." *Woods v. Asset Res.*, 2006 U.S. Dist. LEXIS 94325, *7, 2006 WL 3782704 (E.D. Cal. Dec. 21, 2006) (citing and quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).

Further, USAA CIC is permitted to rely upon the Policy and correspondence evidencing USAA CIC's demand for appraisal and Plaintiff's refusal to participate in the appraisal process. Based upon the allegations in the FAC and the Policy and other documents referenced therein upon which USAA CIC may rely, as a matter of law, USAA CIC is entitled to judgment on the pleadings as to each cause of action asserted against it in the FAC.

## IV. LEGAL ARGUMENT

Plaintiff has conceded his vehicle was not repairable under the plain terms of the Policy. If this concession is construed as an attempt to avoid the appraisal process—as it must be—then the Court should again compel Plaintiff to participate in appraisal. However, taking Plaintiff at his word that he accepts USAA CIC's valuation of the vehicle, Plaintiff bound himself to the valuation he purports to challenge in this action. That valuation properly resulted in a total loss determination under the Policy, and Plaintiff's claims fail. Therefore, the FAC fails to state a claim against USAA CIC.

### A. Plaintiff has Still Not Participated in the Appraisal Process

Despite the Court's Order compelling appraisal pursuant to the Policy, Plaintiff refused to submit his valuation dispute to appraisal. For that reasons, the Court should again grant USAA CIC's judgment on the pleadings and dismiss this action with prejudice for the failure to participate in the appraisal process or, alternatively, to compel appraisal again and dismiss the action for a second time.

On July 3, 2023, the Court granted USAA CIC's motion for judgment on the pleadings on Plaintiff's first complaint, holding that "[t]he policy' appraisal provision encompasses the dispute at issue." (Dkt. 52 at 5.) Each of Plaintiff's

claims, the Court explained, were "derivative of a disagreement with USA CIC over the valuation of his vehicle." (*Id.*) Thus, the Court refused to "allow Sigler to skirt the terms of his agreement with USAA CIC" by pleading causes of action that Plaintiff contended did not arise out of a dispute over valuation. (*Id.* at 6.) The Court therefore dismissed Plaintiff's claims pending his "[]compliance with the appraisal provision." (*Id.* at 7.)

As detailed above, Plaintiff has since reaffirmed his refusal to submit his claims to appraisal. (*See* Orlando Decl. ¶¶10-11, Exs. 4, 5.) In an effort to feign compliance, Plaintiff stated that instead of submitted to appraisal, Plaintiff now accepts the valuation of his vehicle provided by USAA CIC on March 31, 2020. USAA CIC demonstrates below that this concession is fatal to Plaintiff's claims. But, in the event Plaintiff opposes USAA CIC's motion on the ground that he has not actually accepted USAA CIC's valuation, the Court must again grant USAA CIC's motion for judgment on the pleadings or appraisal because Plaintiff has failed to satisfy the appraisal provision, which is a pre-requisite to any lawsuit. (Ordell Decl., Ex. A at USAA_SIGLER_000053, 000056.) Plaintiff did not "select a competent appraiser," no umpire was selected, and no decision was reached or agreed to. (*Id.* at USAA_SIGLER_000053; Orlando Decl. ¶¶10-11, Exs. 4, 5.) And Plaintiff cannot demonstrate that his claims no longer challenge the valuation of the vehicle. As explained in detail below, each of Plaintiff's causes of action depend on the propriety of USAA CIC's valuation of his vehicle. As it stands, that valuation has not been properly appraised as required by the Policy. Therefore, at a minimum, USAA CIC is entitled to judgment on the pleadings or an order compelling appraisal and dismissal for the same reasons the Court previously recognized.

### B. <u>The FAC Fails to State a Claim Because Plaintiff has Conceded that USAA CIC Properly Valued His Vehicle as a Total Loss</u>

Plaintiff's concession also demonstrates that his claims fail as a matter of law. Each of Plaintiff's claims against USAA CIC depend on the allegedly faulty

valuation by USAA CIC. In support of Plaintiff's intentional misrepresentation claim (Count II), Plaintiff alleges that "[t]he primary act of fraud" was USAA CIC's "false representation that the Plaintiff's vehicle was a total loss." (FAC ¶113.) Plaintiff's antitrust claim (Count V) depends on the allegation that USAA and the Exchange agreed to provide Plaintiff the same allegedly erroneous total loss valuation. (*Id.* ¶¶181, 187.) And the alleged enterprise at the heart of Plaintiff's RICO claim (Count VI) "falsified appraisals and repair estimates in order to falsely classify the Plaintiff's vehicle as totaled." (*Id.* ¶198.) The central premise of the FAC is Plaintiff's allegation that USAA CIC improperly (*i.e.*, intentionally, fraudulently) deemed his vehicle a total loss.

But the FAC fails to state a claim upon which relief can be granted because Plaintiff has conceded that USAA CIC properly valued the loss. On October 6, 2023, after refusing to participate in the appraisal process ordered by the Court, Plaintiff explained that he "no longer . . . disagree[d] on the amount of loss states by USAA." (FAC Ex. A.) Plaintiff specifically referred to the loss amounts stated in USAA CIC's March 31, 2020 letter, and stated that he "agree[d] on this valuation." (*Id.*) That letter unambiguously states that Plaintiff's vehicle was a total loss under the Policy. (*See* Ordell Decl., Ex. E at USAA-SIGLER_000733.)

Under the Policy, a vehicle is a "total loss if, in [USAA CIC's] judgment, the cost to **repair** it would be **greater** that its **actual cash value** minus its **salvage value** after the **loss**." (Ordell Decl., Ex. A at USAA-SIGLER_000050.) So, if USAA CIC determined that the actual cash value ***itself*** was less than the estimated repair cost, the vehicle was properly deemed a total loss. And, in fact, USAA CIC at all times—even in the March 31, 2020 valuation Plaintiff has conceded is correct—determined that repair costs exceeded actual cash value. The March 31, 2020 valuation stated an actual cash value of ***$8,990.00***. (Ordell Decl., Ex. E at USAA-SIGLER_000733.) Even accepting Plaintiff's "repair cost" of $9,223.68 [FAC ¶122], Plaintiff's vehicle was still a total loss by nearly $300. And, after deducting the salvage value from

actual cash value as directed by the Policy, the repair cost exceeds the vehicle's value by even more. Therefore, because Plaintiff has conceded that his vehicle was a total loss under the express terms of the Policy, each of his causes of action fail to state a claim upon which relief can be granted. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.) (a plaintiff can "plead himself out of a claim by including unnecessary details" and incorporating exhibits "contrary to his claims"); *Alamilla v. Hain Celestial Grp.*, Inc., 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) (where documents incorporated into a complaint "contradict the allegation upon which [plaintiff's] entire complaint hinges," the complaint is properly dismissed).

Plaintiff attempts to side-step this straightforward conclusion by conflating USAA CIC's total loss settlement offers and the "fair market valuation of the vehicle," suggesting that USAA CIC fraudulently concealed that the vehicle's "fair market valu[e]" exceeded the repair costs. (FAC ¶¶114, 126–27.) But the Policy predicates total loss on a finding that the repair costs exceeds the ***actual cash value*** minus the salvage value of the vehicle. *See Foladpour v. Hartford Life & Accident Ins. Co.*, 2014 WL 12966431, at *2 (C.D. Cal. Sept. 3, 2014) (in deciding motion for judgment on the pleadings, Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint" (quoting *Daniels–Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010))). And the Policy does not use the term "fair market valuation" at all. At all times, even after USAA CIC revised its valuation as directed by Plaintiff, the actual cash value of the vehicle was less than the repair cost. The March 31, 2020 valuation—which Plaintiff ***agrees with***—clearly states that the "[v]ehicle's actual cash value" was $8,990.00. (Ordell Decl., Ex. E at USAA-SIGLER_000733.) And the March 31, 2020 valuation clearly states that the total loss settlement offer amount is ***not*** the same as actual cash value. The settlement valuation ($10,090.05) includes taxes, fees and extras that ***are in addition to*** actual cash value. (*Id.*) USAA CIC at no time represented that the actual cash value of the vehicle—which is the ***only*** value relevant to the total loss

determination—was greater than $8,990.00. Plaintiff has either misinterpreted the Policy or misinterpreted USAA CIC's total loss settlement offers, or both. But the Court need not accept Plaintiff's allegations over the plain words of the documents from which his allegations are drawn. *See Daniels-Hall*, 629 F.3d at 999. These documents make clear that USAA CIC's unchallenged total loss determination was correct. And, because each of Plaintiff's claims depend on the validity of USAA CIC's valuation, judgment should be entered in USAA CIC's favor for this reason alone.

**C. <u>Even if Plaintiff Properly Challenges USAA CIC's Valuation, the FAC Fails to State a Claim</u>**

At the outset, USAA CIC contends that each of the causes of action asserted by Plaintiff fail because he either failed to properly submit his claims to appraisal, or because his concession regarding the appropriate valuation of his vehicle is fatal to his claims. Plaintiff has no continuing claim for relief based on a valuation that he has agreed to be bound by. Each of the causes of action addressed below depend on the allegation that USAA CIC improperly valued his loss, and therefore these causes of action fail to state a claim. Nonetheless, USAA CIC demonstrates below that even if Plaintiff had some surviving challenge to USAA CIC's valuation, the FAC fails to state a claim for intentional misrepresentation, fails to allege an antitrust violation, and a fails to state a claim under RICO.

**1. *Plaintiff's intentional misrepresentation claim is barred by the statute of limitations.***

Pursuant to California Code of Civil Procedure section 338(d), Plaintiff's intentional fraud claim is barred by the three-year statute of limitations. The Court previously dismissed Plaintiff's claims against USAA CIC without prejudice. (Dkt. 52.) Dismissal of a case without prejudice, for statute of limitations purposes, erases any tolling as if the case never existed for the named plaintiffs. *See Georgescu v. Bechtel Const., Inc.*, 15 F.3d 1085, 1085 (9th Cir. 1994) ("Because the court's

dismissal of [Plaintiff's] original complaint without prejudice did not toll the statute of limitations the second complaint was time barred by the ninety-day statute of limitations."); *Humphreys v. United States,* 272 F.2d 411, 412 (9th Cir. 1959) (**"[A] suit dismissed without prejudice ... leaves the situation the same as if the suit had never been brought in the first place."**) (emphasis added). The Court dismissed USAA CIC without prejudice on July 3, 2023. (Dkt. 52.) In the meantime, the statute of limitations ran on Plaintiff's fraud claim.

Plaintiff alleges misrepresentations by USAA CIC in March 2020, more than three years before the FAC was filed. When Plaintiff received the March 31, 2020 letter, Plaintiff knew or should have known that, under his theory, his vehicle was incorrectly claimed to be a total loss. That statute of limitations expired on or before March 31, 2023. Plaintiff did not file his FAC against USAA CIC until October 9, 2023. And, although Plaintiff claims later discovery, Plaintiff's pleading contradicts this allegation as Plaintiff admits he had a copy of the Exchange's IBS repair estimate in March 2020. (FAC ¶185.) Plaintiff's admission comports with his admission in ¶45 of his original Complaint, which he cannot now contradict. And because the March 23, 2020 repair estimate was $9,654.78, [FAC ¶143], which is $500 less than what Plaintiff claims is the fair market value in the March 31, 2020 valuation, Plaintiff was on notice on March 31, 2020 that, under his theory of the case, his car was not a total loss. *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 807 (2005) ("plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements."); *Vera v. REL-BC, LLC*, 66 Cal.App.5th 57, 69 (2021), *review denied* (Oct. 13, 2021) ("[I]t has long been settled that actual knowledge is not necessary. . . . The statute of limitations begins to run when the plaintiff has *information which would put a reasonable person on inquiry*. . . . . Wrong and wrongdoing in this context are understood in their lay and not legal senses."). Therefore, Plaintiff's claim for intentional misrepresentation is barred by the statute of limitations.

**2. *Plaintiff failed to identify misrepresentations by USAA CIC that he relied on to his detriment.***

Under California law, "[t]he essential elements of a count for intentional misrepresentation are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage." *Chapman v. Skype Inc.,* 220 Cal. App. 4th 217, 230–31 (2013). FRCP 9(b) imposes a heightened pleading standard for fraud whereby a party must "state with particularity the circumstances constituting fraud or mistake." Here, Plaintiff has alleged not actionable misrepresentations with sufficient particularity, nor could he demonstrate actual or justifiable reliance on any misrepresentations or resulting damage.

First, the majority of the alleged misrepresentations identified in the FAC cannot be attributed to USAA CIC because they were included in the valuation reports Plaintiff alleges were created by Galvez, an employee of IBS. (FAC ¶¶113, 115, 116, 119, 122.) Plaintiff does not allege that USAA CIC created the reports, or that a representative of USAA CIC "doctored" a repair estimate. (*Id.* ¶124.) To the contrary, he alleged that USAA CIC relied on IBS to prepare the valuation. (*Id.* ¶115.) In fact, the FAC demonstrates that when alerted to these alleged misrepresentations, USAA CIC promptly took action to correct its own valuations and explain the errors to Plaintiff. (*Id.* ¶117, 126.) Because Plaintiff fails to impute the errors made by Galvez to USAA CIC [*see id.* ¶131], Plaintiff's intentional misrepresentation claim fails as a matter of law to the extent he relies on errors in the reports created by IBS.

Second, the FAC demonstrates that the representations properly attributed to USAA CIC were not misrepresentations. For one thing, it was not a misrepresentation for USAA CIC to inform Plaintiff that it had "sent [Plaintiff] information about the total loss of your vehicle." (FAC ¶121.) This statement was factually correct, as demonstrated by Plaintiff's own allegations. Each of the letters

containing this statement undoubtedly contained "information about the total loss of [Plaintiff's] vehicle." Further, for the reasons set forth above, it was not a misrepresentation for USAA CIC to state that Plaintiff's vehicle was a total loss. Nor is there any merit to Plaintiff's allegation that USAA CIC "withheld" any reports from Plaintiff, as each communication from USAA CIC attached the valuation reports that formed the basis for USAA CIC's settlement offer. (*See* Ordell Decl., Exs. C, D, E.) Therefore, Plaintiff has failed to allege any misrepresentations by USAA CIC.

Third, USAA CIC did not misrepresent anything to Plaintiff by not offering to repair his vehicle. Plaintiff suggests that USAA CIC was required to "provide[] the option of having the vehicle repair," but instead USAA CIC deceived him into believing his vehicle was a total loss. (FAC ¶120.) Even if Plaintiff's vehicle had been repairable, the Policy expressly gives USAA CIC the ***option*** to "pay for loss in money" or "repair or replace the [vehicle]." (Ordell Decl., Ex. A, at USAA-SIGLER_000051.) The Policy does not provide Plaintiff the right to dictate how USAA CIC makes a claim payment—whether in cash or services. It was not a misrepresentation for USAA CIC not to provide Plaintiff with the option to have his car repaired.

Fourth, even if Plaintiff had satisfied all other elements of an intentional misrepresentation claim, Plaintiff does not sufficiently allege reliance. Plaintiff must allege facts showing he detrimentally changed his position in actual and justifiable reliance on the misrepresentation or omission. *See Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004) ("The mere assertion of 'reliance' is insufficient. The plaintiff must allege the specifics of his or her reliance on the misrepresentation to show a bona fide claim . . . ."); *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1062 (2012) ("There are two causation elements in a fraud action. First, the plaintiff's actual and justifiable reliance on the defendant's misrepresentation must have caused him to take a detrimental course of action. Second, the detrimental action taken by

the plaintiff must have caused his alleged damage.”).

The FAC confirms Plaintiff *did not rely* on USAA CIC’s alleged misrepresentations. Plaintiff did not “detrimentally rely” on the valuation reports or USAA CIC’s statements regarding the loss to his vehicle. Rather, Plaintiff refuted the valuations, asked for an amended appraisal, and USAA CIC provided amended appraisals. (*See* Ordell Decl., Exs. C-E.) That Plaintiff eventually rejected USAA CIC’s offer does not demonstrate that he detrimentally relied on USAA CIC’s representations—to the contrary, Plaintiff ***did not accept*** “an unreasonably low settlement offer,” as he suggests. (FAC ¶10.) Plaintiff instead canceled his claim and chose to take his car and go home.[1] The fact that Plaintiff refuted USAA CIC’s offers, complained to USAA CIC, received adjusted offers addressing his complaints, and then sued USAA CIC prove that he did not rely on the purported representations. The FAC similarly establishes that Plaintiff did not rely on USAA CIC’s statements regarding the source of the inaccuracies in USAA CIC’s initial offer. By Plaintiff’s own admission, he discovered the VIN report did not omit these items a mere “90 minutes after” their conversation. (*See* Compl. ¶101; FAC ¶46.)

Finally, Plaintiff’s failure to adequately plead intentional misrepresentation is magnified by his concession that USAA CIC’s valuation was proper. Plaintiff will never be able to demonstrate that he was damaged by misrepresentations that resulted in the ***correct*** valuation of his vehicle. In other words, even if USAA CIC affirmatively misrepresented information to Plaintiff, and even if he justifiably relief on that misrepresentation, Plaintiff agrees that USAA CIC arrived at the right valuation of his vehicle nonetheless. Therefore, Plaintiff sustained no damages as a result of any misrepresentation by USAA CIC. Accordingly, the FAC is devoid of any facts plausibly demonstrating any actionable misrepresentation by USAA CIC,

[1] Given this conduct, Plaintiff will never be able to demonstrate that he appropriately mitigated his own damages.

and judgment must be granted in USAA CIC's favor on Plaintiff's Second Cause of Action.

**3. *Plaintiff's antitrust claim fails as a matter of law.***

Plaintiff alleges that USAA CIC, the Exchange, and IBS (along with individuals who have not yet appeared or have been dismissed) engaged in a "criminal" violation of the Sherman Act, Section 1, 15 U.S.C. § 1, because he claims they intentionally "price fix[ed] / bid rigg[ed]" valuations intending to cause damage to Plaintiff's business and property. (FAC ¶180.) Plaintiff contends that he asked the Exchange an independent, competitive bid, but that its similar (though not identical) valuation robbed him of that opportunity. (FAC ¶¶181, 188.) Plaintiff's allegation at its core is that he sought a second opinion on the valuation of the damaged vehicle and USAA CIC and the Exchange predetermined the value of Plaintiff's vehicle, robbing him of the opportunity for a "competitive settlement offer." (FAC ¶48.) That claim is both factually and legally flawed because Plaintiff has not (and cannot) allege a restraint of trade barred by the Clayton Act or Sherman Act, and Plaintiff lacks standing to pursue a claim under the Clayton Act.

Specifically, Plaintiff lacks antitrust standing because he has not alleged the type of injury prohibited by antitrust law, let alone that he was injured at all by the USAA CIC's alleged conduct. Antitrust standing is distinguishable from Article III standing. *See Tawfilis v. Allergan, Inc.*, 157 F. Supp. 3d 853, 862–63 (C.D. Cal. 2015). Section 4 of the Clayton Act authorizes the award of damages under the antitrust laws to "any person . . . injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a); *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999). Taken literally, this provision could provide a cause of action to any person able to trace an injury to an antitrust violation. *Id.* However, "[t]he Supreme Court has interpreted that section narrowly, thereby constraining the class of parties that have statutory standing to recover damages through antitrust suits." *Del. Valley Surgical Supply Inc. v.*

*Johnson & Johnson*, 523 F.3d 1116, 1120 (9th Cir. 2008) (citing *Illinois Brick v. Illinois*, 431 U.S. 720 (1977)). As a result, a "plaintiff who satisfies the constitutional requirement of injury in fact is not necessarily a proper party to bring a private antitrust action." *Am. Ad Mgmt.*, 157 F.Supp.3d. at 1054 n.3. To evaluate antitrust standing, courts consider: (1) the nature of the plaintiff's alleged injury; that is, whether it is the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages. *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1996).

Plaintiff alleges two injuries, neither of which relate to unfair competition. Plaintiff first contends that he suffered an injury by having to pursue this lawsuit, causing him to incur costs and requiring him to devote time to his pursuit of recovery. (FAC ¶191(c), (d).) Plaintiff second contends that USAA CIC and the Exchange's alleged communications deprived him of the "[l]oss of a fair and competitive offer" for his damaged Vehicle, which resulted in additional incurred charges that would have been avoided had USAA CIC deemed his Vehicle repairable. (FAC ¶191(a), (b).) Neither are allegations of antitrust injury resulting from conduct the antitrust laws proscribe.

In fact, Plaintiff fails to allege an injury resulting from any activity unrelated to his own experience giving rise to this lawsuit. Plaintiff alleges that he was not the "direct target" of the "scheme" underlying his antitrust claims, but the allegations of the FAC undermine that suggestion. (FAC ¶192.) Plaintiff relies *only* on alleged communications related to *his pursuit* of a valuation from USAA CIC and the Exchange. And the injuries he relies on concern only *his* loss of so-called "competitive" bid. Plaintiff does not allege that his injuries "result[ed] from monopoly power or unreasonable restraint of trade." *Sheahan v. State Farm Gen. Ins. Co.*, 442 F. Supp. 3d 1178, 1195 (N.D. Cal. 2020) (no antitrust injury where insurer was alleged to have coordinated with a vendor to suppress replacement

values). Rather, Plaintiff's alleged injuries concern routine communication between non-competitors that resulted in no market harm. Plaintiff does not allege an industry-wide practice that deprived him of an opportunity to receive a more accurate valuation. *Id.* at 1194. In fact, Plaintiff was free to get an independent repair quote from an automotive mechanic of his choice and was free to research the value of his vehicle. Plaintiff instead confined his options to USAA CIC and the Exchange, thereby artificially creating a "market of two" that he now intends to challenge as anti-competitive. Even if Plaintiff had identified anticompetitive behavior, the antitrust laws do not prohibit anticompetitive conduct in markets artificially created by plaintiffs. Plaintiff was not deprived of a competitive offer in a way that resulted in an antitrust injury.

Because Plaintiff has failed to allege an antitrust injury, his claim fails for lack of standing. But even if he had, Plaintiff's claim fails because he has failed to identify a concerted action in restraint of trade. Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade." 15 U.S.C. § 1. The law is well-settled that parallel conduct alone will not support an inference of concerted action." *Workman v. State Farm Mut. Auto. Ins. Co.*, 520 F. Supp. 610, 617 (N.D. Cal. 1981). "Only where the pattern of action undertaken is *not consistent with the self-interest of the individual actors*" does parallel conduct support an inference of concerted action. *Id.* (emphasis added). Simply obtaining "market information from competitors, when undertaken without any agreement or understanding regarding reciprocity, does not raise antitrust concerns, since it fosters, rather than hinders, competition." *Id.* at 618.

Plaintiff alleges nothing more than an isolated instance of information sharing to support his antitrust claim, but that allegation fails to support a pattern of concerted action in restraint of trade. For one thing, as mentioned previously, Plaintiff alleges that he was singled out by USAA CIC and the Exchange—he does not allege a scheme to affect other insureds. Further, Plaintiff fails to demonstrate

that the Exchange and USAA CIC are in competition for payment of the claim, such that undervaluing Plaintiff's vehicle is inconsistent with their self-interest. Nor would that allegation make sense, in any event. USAA CIC has no incentive to deem Plaintiff's vehicle a total loss, or to prevent another insurer from valuing the Vehicle higher. This matter did not involve any actual "competitive" offers. Therefore, Plaintiff fails to allege a concerted action in restraint of trade, and his claim fails.

**4. *Plaintiff's RICO claim fails as a matter of law.***

Plaintiff alleges that USAA CIC, the Exchange, and IBS are engaged in a racketeering enterprise "with the goal of minimizing claims payouts to Plaintiff resulting from the auto accident caused by Jorge Gonzalez" by falsifying settlement offers, appraisals, and repair estimates to "falsely classify the Plaintiff's vehicle as totaled." (FAC ¶198.) To attempt to show a pattern of racketeering, as to USAA CIC, Plaintiff claims predicate acts primarily related to the valuation of his vehicle or other lawsuits Plaintiff found on the internet that may involve some USAA entity or USAA CIC but are wholly unrelated to this case in every other way. (FAC ¶¶204-210.) None of these categories create a pattern sufficient to support a RICO claim.

The Court previously recognized that Plaintiff's predicate acts do not support a RICO claim. In dismissing Plaintiff's Complaint in September 2023, the District Court explained to Plaintiff the types of activities that satisfy the "Pattern of Racketeering" element. "The Supreme Court has cautioned that 'whether predicate acts establish a threat of continued racketeering activity depends on the specific facts of each case.'" (Dkt. 73 at 10 (quoting *H.J., Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 242 (1989)).) The Court then provided a half-page block quote describing the neighborhood "hoodlum" who offers "insurance" to local shops. (*Id.*) "This case, as currently pled, [still] does not look like these examples." (*Id.* at 11.) Indeed, as to category (i), above, the Court's Order equally applies now:

> Even though Plaintiff alleges multiple predicate acts, "[t]his case involve[s] but a single alleged fraud [on the

> part of each Defendant] with a single victim. All of [Defendants'] assertions about [the allegedly fraudulent appraisals] … were parts of [a] single effort [by each Defendant] to induce" Plaintiff to accept an offer that did not fully compensate Plaintiff for his losses. *Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1363–64 (9th Cir. 1987). The few alleged predicate acts—committed over the course of two weeks—constitute the entire scheme and do not form a continuous pattern.

(*Id.* at 11.)

This remains true now, as Plaintiff has not made any additional allegations in the FAC of additional predicate acts, particularly against anyone other than Plaintiff. Plaintiff remains the sole alleged victim and this derives from one claim on his single Vehicle.[2]

Plaintiff also misplaces his reliance on other purported but partially identified cases (and alleged complaints and purported testimony in those cases) that cannot be used to support his claims in this case. First, even if Plaintiff requests in this case judicial notice of the complaints upon which he relies, they are not the proper subject of judicial notice. Second, even as alleged, these purported other matters do not involve the same line of insurance, are not California cases and do not involve any of the individuals or other defendants Plaintiff identifies in his FAC. Plaintiff cannot use these other cases to meet the pleading requirements for ***his*** fraud or RICO claims. In fact, in the cases he cites, the valuations were lowered following the initial valuation, which is exactly the opposite of what happened here. Plaintiff asserts allegations that other, unidentified, individuals were and will be affected by the

[2] To the extent that Plaintiff added allegations of predicate acts arising out of actions taken in this litigation (category (ii)) in an apparent effort to extend the timeframe, his claims are specious and refutable and do not qualify as predicate acts.

alleged scheme, but such allegations are insufficient to allege a "pattern of racketeering activity" as required by FRCP 9(b). *See Higgins v. Farr Fin. Inc.*, No. C 07-02200 JSW, 2009 WL 3517597 (N.D. Cal. Oct. 26, 2009) (holding that plaintiff's conclusory allegations that other unidentified individuals were affected by conclusory allegations insufficient to allege pattern of racketeering activity). These other cases also cannot support the pleading of a predicate act for purposes of RICO because they do not involve any of the same alleged actors and therefore, are not examples of an "Associate-In-Fact" Enterprise. *See Doan v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015) ("To allege an association-in-fact, the complaint must describe…evidence that the various associates function as a continuing unit." (internal quotation marks and citations omitted)). Thus, Plaintiff has not met the pattern of racketeering element and his RICO claim fails.

Plaintiff's RICO claim also fails because he cannot satisfy the racketeering element. Plaintiff asserts as predicate acts that USAA CIC committed wire fraud and extortion.[3] Notably, when the predicate acts sound in fraud, the complaint must meet the particularized pleading requirements of FRCP 9(b). *See Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). In other words, the complaint must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004). To establish wire fraud, a plaintiff must generally establish that:

> "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails [or wires] or caused a use

---

[3] Notably, in opposition to the Exchange's motion for judgment on the pleadings, [Dkt. 109], Plaintiff has demonstrated another reason his RICO claim fails against USAA CIC. Specifically, Plaintiff admits that to establish the requisite continuity for a pattern of racketeering, he must allege racketeering activities over a sufficient period of time. *Id.* at 22 (Plaintiff acknowledging he must allege a pattern of activities over "one year"). USAA CIC's alleged racketeering activities *do not satisfy* the continuity standard because Plaintiff makes no allegation against USAA CIC outside of a ***one month*** period in 2020.

> of the United States mails [or wires] in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud."

*Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986)). But Plaintiff has not alleged a single claim as to any other party with the requisite particularity (or as to him at all) and, thus cannot support an allegation of fraud.[4]

Plaintiff also has not shown the existence of an enterprise because the facts do not indicate that USAA CIC, the Exchange and Imperial "acted with an objective unrelated to ordinary business." *In re Jamster Mktg. Litig.*, No. 05CV0819 JM (CAB), 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (finding RICO claims were not adequately pleaded because, after plaintiff's legal conclusions were set aside, all that remained was "conduct consistent with ordinary business conduct and an ordinary business purpose."). "[C]ourts have overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises." *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016).

In short, USAA CIC's valuation of Plaintiff's vehicle did not form a criminal enterprise and was not an act of racketeering and Plaintiff's RICO therefore fails.

## V. **CONCLUSION**

For the foregoing reasons, USAA CIC respectfully requests this Court grant its Motion.

Dated: January 18, 2024

MAYNARD NEXSEN LLP

By: */s/ Vivian I. Orlando*
VIVIAN I. ORLANDO
Attorneys for Defendant
USAA Casualty Insurance Company

---

[4] Plaintiff's allegations of extortion are likewise useless to save his RICO claim because they all relate to him and therefore provide no evidence of a pattern.

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1**

The undersigned, counsel of record for USAA Casualty Insurance Company, certifies that this brief contains 6,987 words (excluding the notice, caption, any table of contents, any table of authorities, the signature block, this certification, and any indices and exhibits), which complies with the 7,000 word limit of Local Rule 11-6.1.

Dated: January 18, 2024

MAYNARD NEXSEN LLP

By: */s/ Vivian I. Orlando*
VIVIAN I. ORLANDO
Attorneys for Defendant
USAA Casualty Insurance Company

# CERTIFICATE OF SERVICE

***John W. Sigler v. Jorge Gonzalez, USAA Casualty Insurance Company, et al.***
***Case No. 8:22-cv-02325-CJC-JDEx***

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am a citizen of the United States and employed in Los Angeles, California, at the office of a member of the bar of this Court at whose direction this service was made. I am over the age of 18 and not a party to the within actions; my business address is 10100 Santa Monica Blvd., Ste. 550, Los Angeles, CA 90067.

On **January 18, 2024**, I served the document(s) entitled, **DEFENDANT USAA CASUALTY INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO COMPEL APPRAISAL** on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope(s) addressed as stated below:

☒ **(BY MAIL)**: I deposited such envelope in the mail at Los Angeles, California with postage fully prepaid. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be placed for collection and mailing, and deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☒ **(BY ELECTRONIC MAIL)**: By transmitting a true copy thereof to the electronic mail addresses as indicated below.

and telephone number as stated.

☒ **(BY CM/ECF SERVICE)**: I caused such document(s) to be delivered electronically via CM/ECF as noted herein.

I declare under penalty of perjury under the laws of the United States that the above is true and correct and was executed on **January 18, 2024**, at Los Angeles, California.

Lea Borys

**SERVICE LIST**

***John W. Sigler v. Jorge Gonzalez, USAA Casualty Insurance Company, et al.***
***Case No. 8:22-cv-02325-CJC-JDEx***

**VIA EMAIL AND MAIL**
John W. Sigler
13129 Stern Avenue
La Mirada, California 90638
Telephone: (714) 697-8576
Email: JSIGLER@SWS-LLC.COM
*Plaintiff In Propria Persona*

**VIA CM/ECF**
Jeffrey M. Lenkov, Esq.
jeffrey.lenkov@manningkass.com
tlp@ManningKass.com
MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999
*Attorneys for Imperial Body Shop, Inc.*

**VIA CM/ECF**
Jeet Sen, Esq.
Eran Scott Forster, Esq.
eforster@fwhb.com
rbaptist@fwhb.com
jsen@fwhb.com
FORD, WALKER, HAGGERTY & BEHAR, LLP
One World Trade Center, 27th Floor
Long Beach, California 90831-2700
(562) 983-2500 | (562) 983-2555 Fax
*Attorneys for Defendant, Interinsurance Exchange of Automobile Club of Southern California*