1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

John W. Sigler
13129 Stern Ave
La Mirada, California 90638
Telephone: (714) 697-8576
Email:  JSIGLER@SWS-LLC.COM
**Plaintiff In Propria Persona**



**F I L E D**
CLERK, U.S. DISTRICT COURT

02-05-2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ts_____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JOHN W. SIGLER,

      Plaintiff,

vs.

Jorge Gonzalez, USAA Casualty Insurance Company,  Interinsurance Exchange of Automobile Club, Imperial Body Shop, Inc., Pablo Galvez, Greg Taylor, Melissa Ordell, Danelle Bushnell, Amber Peterson (aka Amber Peterson Forrest, aka Amber J. Schneider), Kevin Karapogosian, James Syring, Randy Termeer, John Boyle and DOEs 1 to 99, inclusive;

      Defendants.

Case No.  **8:22-cv-2325-CJC-JDE**

**OPPOSITION TO THE USAA's MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION TO COMPEL APPRAISAL**

**HEARING DATE: February 26, 2024**
**HEARING TIME: 1:30 pm**
**Honorable Cormac J. Carney**

## Table of Contents

| Heading | Page No. |
|---|---|
| I.   Introduction | 3 |
| II.   Statement of Facts | 3 |
| III.   Legal Standard | 4 |
| IV.   Legal Argument | 5 |
| A. Motion to Compel- Arbitration is Voluntary; USAA does not dispute FAC facts; there is nothing to Arbitrate. | 5 |
| B. Plaintiff never conceded USAA properly valued his vehicle as a total loss.  USAA's policy definitions and USAA's stated numbers, show USAA intentionally misrepresented Plaintiff's vehicle as a total loss | 9 |
| C. Plaintiff's FAC fully states proper claims for Intentional misrepresentation, violation of Clayton Act, and violation of the RICO Act | 12 |
| 1. USAA's statute of limitation argument is based upon a fraudulent citation, and Plaintiff's FAC meets all statute of limitations requirements. | 12 |
| 2. Plaintiff's Second Cause of Action for Intentional Misrepresentation identifies USAA's misrepresentations which he relied on to his determent. | 14 |
| 3. Plaintiff's Fifth Cause of Action for violation of the Clayton Act involves a Per Se violation of the Sherman Act which the court has previously upheld against USAA's co-conspirator THE_EXCHANGE. | 16 |
| 4. Plaintiff's Sixth Cause of Action for RICO establishes a pattern of racketeering activities engaged in by USAA for over three years and identifies elements of ongoing racketeering activities as part of USAA's normal business activities. | 22 |
| V.   Leave To Amend | 27 |
| VI.   Conclusion | 28 |

## Table of Citations.

| Citation | Page No. |
|---|---|
| Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990) | 5 |
| Heliotrope General, Inc. v. Ford Motor Co., 189 F.3d 971 (9th Cir. 1999) at 979. | 5 |
| Prudhomme v. Geico Ins.Co., No. CV 15-00098,2018 WL | 6 |

| | |
|---|---|
| 1371240, at*7–8 (W.D.La. Feb.9,2018) | |
| Prudhomme v. Geico Ins.Co., No. CV 15-0098, 2018 WL 1368335 (W.D. La. Mar.16,2018) | 6 |
| Tacoma Elec. Supply Inc. v. Atl. Mut. Ins. Co., 40 F. App'x 567, 568 (9th Cir. 2002) | 7,10,14 |
| Sw. Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 774 (9th Cir.1986)  S. California Counseling Ctr. v. Great Am. Ins. Co., 162 F. Supp. 3d 1045, 1052 (C.D. Cal. 2014), aff'd, 667 F. App'x 623 (9th Cir. 2016) | 9 |
| Georgescu v. Bechtel Const., Inc., 15 F.3d 1085, 1085 (9th Cir. 1994) | 12 |
| Humphreys v. United States, 272 F.2d 411 (9th Cir. 1959) | 12 |
| A. B. Dick Co. v. Marr, 2 Cir., 1952, 197 F.2d 498, 502; Maryland Casualty Co. v. Latham, 5 Cir., 1930, 41 F.2d 312, 313. | 13 |
| Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1053 (3d ed. 2002). Mann v. Am. Airlines, 324 F.3d 1088, 1090 (9th Cir. 2003) | 13 |
| United States v. Joyce, 895 F.3d 673, 677 (9th Cir. 2018) | 17,22 |
| In re Online DVD–Rental, 779 F.3d at 922 | 17 |
| Amarel v. Connell, 102 F.3d 1494, 1507 (9th Cir. 1996), as amended (Jan. 15, 1997) | 17 |
| Diaz v. Gates,420 F.3d,909(9th-Cir.2005) | 19 |
| Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 538, 103 S. Ct. 897, 908, 74 L. Ed. 2d 723 (1983) | 21 |
| H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 242(1989) | 22,27 |
| Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1526 (9th Cir. 1995). | 24 |
| H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 241 (1989) | 24 |
| Spool-v.-World Child Int'l Adoption Agency, 520 F.3d,178,184-8 (2d Cir.2008) | 24 |
| Allwaste Inc. v. Hecht,65,F.3d 1523,1530–31(9th-Cir. 1995) | 25 |
| Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985) | 25 |
| H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 243, 109 S. Ct. 2893, 2902, 106 L. Ed. 2d 195 (1989) | 26 |
| United States-v-Webb, 655 F.2d 977,979(9th Cir.1981) | 27 |
| Ascon Properties, Inc.-v-Mobil Oil Co.,866 F.2d,1149,1160(9th Cir.1989). | 28 |
| DCD Programs, Ltd.-v-Leighton,833,F.2d,183,186(9th | 28 |

Plaintiff   John W. Sigler:                                             8:22-cv-2325-CJC-JDE
OPPOSITION TO EXCHANGE'S JUDGMENT ON THE PLEADINGS

| Cir.1987) | |
| Eldridge v. Block, 832 F.2d 1132, 1135 (9th Cir. 1987) | 28 |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The court has already made statements regarding the Defendant's arguments and denial of the Defendant's motion would provide consistency.

## II.    STATEMENT OF FACTS

**Arbitration.(IV.A)**  Court has stated "*And USAA does not address the facts alleged in the FAC that, if true, would render Plaintiff's claims against it ripe for litigation in this Court. (See, e.g., FAC ¶¶ 26–27, Ex. A.)*"((Dkt.87,pg.2,Last line)  USAA has not disputed FAC facts.

**Total Loss.(IV.B)**  USAA mischaracterizes "Cost to Buy" in "Actual Cash Value" definitions as the act of buying a car without paying taxes and license fees, which is illegal in California.

**Statute of Limitation.(IV.C.1)** USAA's argument is based upon false citations, where USAA deleted critical citation phrasing referencing "voluntary dismissal"(FRCP.Rule 41).

**Intentional Misrepresentation, -2nd COA.(IV.C.2)** Court denied THE EXCHANGE's motion based upon same behaviour.(Dkt.112,Pg.10,ln25)

**Clayton Act. -5th COA.(IV.C.3)**   Court denied THE_EXCHANGE's motion, where THE_EXCHANGE was the other half of the conspiracy to engage in price fixing/bid rigging.(Dkt.112.pg.14,ln.10), stating  "*This type of horizontal price fixing among insurers and their collaborators aims at keeping more funds in insurance companies' pockets and minimizes the payouts to policy holders like Plaintiff*".

**RICO Act. -6th COA (IV.C.4).** Court previously noted alleged pattern history of USAA deceiving policyholders.(Dkt.112.pg18,Footnote)

## III.   LEGAL STANDARD

Legal standards for Judgment on Pleadings:  1) In ruling on a Motion for Judgment on Pleadings pursuant to Rule 12(c), "*allegations of the non-moving party must be accepted as true, while the allegations of the moving party, which have been denied, are assumed to be false.*" See Hal Roach Studios,Inc. v. Richard Feiner and Co.,Inc.,896,F.2d,1542,1550(9th.Cir.1990), and 2) *Judgment on Pleadings can only be granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law*. Heliotrope General,Inc. v. Ford Motor Co.,189,F.3d,971 (9th.Cir.1999) at 979.

## IV.   LEGAL ARGUMENT

### A. Motion to Compel- Arbitration is Voluntary; USAA does not dispute FAC facts; there is nothing to Arbitrate.

United States District Court, W.D. Louisiana, Lafayette Division has ruled that appraisal clause is voluntary, stating:

"*As provided above, the appraisal provision [GEICO case] states "either party "may, within 60 days after proof of loss is filed, demand an appraisal of the loss ..." <u>In contract construction, the word "may" is generally permissive</u>. Pierce Foundations, Inc. v. Jaroy Const.,Inc.,190,So.3d,298,305 (La.,2016); Iberiabank v. Broussard,2016,WL5794545,at*4,f.n.9(W.D.La.,2016). There is nothing that suggests that this provision was intended as anything other than a voluntary process—essentially an alternative dispute resolution mechanism. The closing phrase of the provision, "We will not waive our rights by any of our acts relating to appraisal," <u>further supports the contingent, non-binding nature of this</u>*

*provision."*....Prudhomme v. Geico Ins.Co., No. CV 15-00098,2018 WL 1371240, at*7–8 (W.D.La. Feb.9,2018), report and recommendation adopted, No. CV 15-0098, 2018 WL 1368335 (W.D. La. Mar.16,2018)

USAA's Auto Policy states in Part D – PHYSICAL DAMAGE COVERAGE, - APPRAISAL:

"If we and you do not agree on the amount of loss, either may demand an appraisal.  In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree they will submit their differences to the Empire.  A decision agreed to by any two will be binding.  Each party will pay its chosen appraiser and share the expense of the Empire equally. Neither we nor you waive any rights under this policy by agreeing to an appraisal."(Ordell-Decl.,Exhibit-A,USAA-SIGLER_000053)

In USAA's appraisal clause, *"may demand"* is also permissive and nothing suggests this provision is anything other than an optional occurrence; a voluntary process.  USAA uses "may" in its Termination Clause, Section 1 and 2, and throughout the policy; implying various actions are optional.(Ordell-Decl.,Exhibit-A,USAA-SIGLER_000058)  USAA's statement that decision "*will be binding*", alludes to the the outcome if a voluntary process is agreed to. Nowhere in the wordings is there the requirement that Party B must agreed to participate in the appraisal process.  If the process was mandatory, that wording would be present.  USAA's closing provision, "*Neither we nor you waive any rights under this policy by agreeing to an appraisal*" further supports the voluntary, optional nature of appraisal.

*An insurance contract must be given a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." Kitsap County v. Allstate Ins. Co., 136 Wash.2d 567, 964 P.2d 1173,*

Plaintiff   John W. Sigler:                                                      8:22-cv-2325-CJC-JDE
OPPOSITION TO EXCHANGE'S JUDGMENT ON THE PLEADINGS

1177 (Wash.1998) (quotations omitted). *We interpret a policy's terms in accordance with the policy's definitions; undefined terms are given their "plain, ordinary, and popular" meanings. Id. at 1178 (quotations omitted). If the language is unambiguous, we must enforce the contract as written. A clause is ambiguous when it is "fairly susceptible to two different, reasonable interpretations." Id. If the language is ambiguous and extrinsic evidence of the parties' intent does not resolve the ambiguity, we must resolve the conflict in the insured's favor. Id.* Tacoma Elec. Supply Inc. v. Atl. Mut. Ins. Co., 40 F. App'x 567, 568 (9th Cir. 2002)  The ambiguous wording, nothing stating the process is mandatory, must be resolved in Plaintiff's favor, and appraisal is voluntary.

**<u>In addition, there is nothing to arbitrate.</u>**  Plaintiff agreed (October 6, 2023 letter) to move forward using valuation of $10,090.05, in USAA's March 31, 2020 letter(FAC¶26-27,Exhibit-A), as USAA's valuation threshold proving his vehicle should not have been totalled, so there is nothing to arbitrate and trigger appraisal arbitration.

Additionally, this court stated "*And USAA does not address the facts alleged in the FAC that, if true, would render Plaintiff's claims against it ripe for litigation in this Court. (See, e.g., FAC ¶¶ 26–27, Ex. A.)*"(see Dkt.87,pg.2,last line)  USAA has not shown the facts as false.

Plaintiff reached out to USAA on July 6, 2023 to engage in appraisal process.(Orlando_Decl.Ex.4,pg.20)(Mischaracterized by USAA.(Mot.pg5,ln2) Plaintiff complied with terms of the Appraisal Clause, identifying himself as his "Competent Appraiser" choice.  Plaintiff already had appraisal of the valuation of his vehicle, as stated in FAC,Prayer,Item-1(a-e).  It was un-necessary for Plaintiff to repeat and pay an outsider for another appraisal.  USAA refused to participate so long as Plaintiff named himself as his appraiser, with multiple excuses in July 11, 2023 email,(Orlando_Decl.Ex.4,pg.19) including:

1) <u>the appraisers selected obviously cannot be the insurer or the insured.</u> **No cited case law or provision in the policy prohibits this.**

2) <u>would render material language in the appraisal provision ineffective</u>. (USAA selects an appraiser and prepares an appraisal.  Their appraiser and Plaintiff compare appraisals.  If no agreement, an umpire is selected to decide.  **Plaintiff being his own appraiser has no effect on process**.

3) <u>is not consistent with the purpose and intent of the appraisal provision or arbitration in general</u>.  **It is consistent with the process, unless USAA's process is solely to cost Plaintiff time and money**.

4) <u>no cases support your claim that you should be allowed to act as an appraiser.</u>  USAA has cited no case law saying Plaintiff cannot.  "*undefined terms are given their "plain, ordinary, and popular meaning"s.*(Tacoma Elec. at 568). **Policy's only requirement is the appraiser be competent, and a Kelly Blue Book Appraisal by Plaintiff is.(FAC,Prayer,Item.1)**

5) We also do not believe you are a competent appraiser. A competent appraiser is a person with knowledge, training and expertise in the field of car repair and valuation, and you do not meet this criteria.  **USAA and Ms. Orlando, have no idea what Plaintiff's knowledge base, training, or past experience in auto repair is.  Plaintiff's appraisal is derived from KBB, who is nationally recognized.  This assessment is arbitrary.**

USAA then claimed the "Competent Appraiser" must be "independent". (Dkt.99,pg5,ln.7)  **There is no wording stating the competent appraiser has to be independent.**

Now USAA is adding the qualifier of "qualified appraiser" to their demand for appraisal.(USAA Notice of Motion,pg.2,ln.20)  Plaintiff found only six states that provide licensing or certification of automobile appraisers.  California IS NOT

one of those.  **California does not provide definition of "qualified appraiser",
so this terminology is undefined.**

Contrary to USAA's assertions,(Mot.pg13,ln8) USAA ended discussions
regarding appraisal on July 14, 2023, stating "Given your emails and previous
communications, we do not believe that further discussion with you would be
productive or is warranted at this time."(Orlando_Decl.Ex.4,pg.17.)

Since USAA has not disputed the Facts alleged in the FAC, <u>**compeling
appraisal should be denied and Plaintiff's claims are ripe for litigation as this
court has previously stated.**</u>

When "USAA continued to change and redefine the terms",(FAC¶27) the
Plaintiff's work-around was to agree to USAA's March 31, 2020 letter valuation.

*"Fraud in the execution results in an agreement being void ab initio, whereas
fraud in the inducement makes the transaction merely voidable."* Sw.
Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 774 (9th Cir.1986).  S.
California Counseling Ctr. v. Great Am. Ins. Co., 162 F. Supp. 3d 1045, 1052
(C.D. Cal. 2014), aff'd, 667 F. App'x 623 (9th Cir. 2016)

Appraisal was voluntary.  USAA refused to participate in Appraisal process
unless policy terms were changed.  USAA terminated Appraisal process.  As such,
Plaintiff's "work-around" October 6, 2023 letter was the product of "fraud in the
inducement", and the court should not limit the Plaintiff to the exact contents of
said letter.  Plaintiff should be allowed the opportunity to uncover further
evidence that USAA fraudulently depressed the valuation of Plaintiff's vehicle.

**B.  Plaintiff never conceded USAA properly valued his vehicle as a total
loss.  USAA's policy definitions and USAA's stated numbers, show
USAA intentionally misrepresented Plaintiff's vehicle as a total loss.**

USAA bases their entire argument on falsely defining **Actual Cash Value**.

USAA Auto Policy states, **"Actual Cash Value"** *means the amount that it would cost, at the time of loss, to buy a comparable vehicle.*(USAA Policy Definition.)[Ordell_Decl.,Exhibit-A,USAA-SIGLER_000048]

"**cost to buy a comparable vehicle**" in *"plain, ordinary, and popular meaning"* (Tacoma Elec. at 568) must include taxes and license fees.  It is illegal to buy a car without paying taxes/license fees.  In the case of a comparable vehicle, the cost of gas in the fuel tank must be included.

USAA's March 31, 2020 valuation of Plaintiff's vehicle contained an appraised value of $8,990, sales tax of $854.05, CA CVR fees of $214, fuel in tank of $32; - for a total cost to buy a comparable vehicle of **$10,090.05;** which is clearly the vehicle's "**Actual Cash Value**", or the "**cost to buy a comparable vehicle**" according to USAA policy definitions.  USAA miss-labels "Actual Cash Value" as "Net Total" or "Total Loss" repeatedly in violation of their Policy Definitions.)[Ordell_Decl.,Exhibit-D,USAA-SIGLER_000733]

USAA's March 31, 2020 letter listing Net Total, should be interpreted as nothing other than the "**net total**" of the **Actual Cash Value** as **$10,090.05**(FAC¶120) in accordance with USAA's policy terms defining **Actual Cash Value**.

Plaintiff agreed to use USAA's number of **$10,090.05** as the "**Actual Cash Value**" (**ACV**) of his vehicle.(Defined by USAA policy Terms)

USAA's policy states: "*We will declare your covered auto to be a total loss if, in our judgment, the cost to repair it would be greater than its actual cash value minus its salvage value after the loss.*" (Mot.pg.3.ln.13)[Ordell_Decl.,Exhibit-D,USAA-SIGLER_000713]

First off, USAA has never stated a salvage value for Plaintiff's vehicle until this motion.  Now USAA is using THE_EXCHANGE's salvage value of $821,

which is not verified, and is extracted from documents never provided to Plaintiff.(Ordell_Decl.,Exhibit-D)

Nevertheless, the **Total Loss threshold** is computed as **Actual Cash Value** – **Salvage Cost** ($10,090.05 - $821) = **$9,269.05** (a lower "Cost to Repair" would indicate vehicle **IS NOT totalled**)

USAA's inflated cost to repair is $9,775.68.(FAC¶119) (Ordell.Decl.,Exhibit-D,USAA-SIGLER_000713)

Plaintiff subtracted inflated labor rates of $542 from Galvez Repair Estimate (Cost to Repair)(FAC¶122), initially computing USAA's **Cost to Repair** as **$9,223.68;** $45.37 below the Total Loss Threshold of $9,269.05 – **meaning vehicle was not totalled**. (even allowing for THE_EXCHANGE's unsubstantiated salvage estimate).(FAC¶45,122)   Using USAA's ZERO salvage estimate, $866.37 below Total Loss Threshold of $9,269.05

**At this point in the calculations, the facts alleged in the Complaint show USAA falsely classified Plaintiff's vehicle as totalled**.   **Plaintiff has never conceded that his vehicle was not totalled.**

USAA's "**cost to repair**" drops further factoring in the Plaintiff's deductible. Galvez Repair Estimate(Ordell.Decl.,Exhibit-A,USAA-SIGLER_000713) states: **Insurance Pays $8,775.68**.   Correcting for inflated labor rate deduction, USAA's new **Cost to Repair** drops to **$8223.68**.   $1,045.37 below Total Loss Threshold.

Plaintiff noted major discrepancies in the Galvez Repair Estimate including $542 in excess labor charges.(FAC¶39-41).   Plaintiff has since found, more discrepancies, including $654.60 in un-necessary replacement of air bag diagnostic unit (commonly know as the Airbag Control Module (ACM))(Galvez Repair Estimate, Ordell.Decl.,Exhibit-A,USAA-SIGLER_000711,Line:5-6), computed as ($540.60+$114 Labor(1.2 x $95)=total of $654.60)  Photographs of the vehicle(referenced in FAC¶34) did not show deployment of the air bags, and

no damages near any air bag system component to warrant such replacement. Deducting for un-necessary ACM, USAA's **Cost to Repair** drops to **$7,569.08**, for a final total to this date of **$1,699.97 below the Total Loss Threshold.**

**Plaintiff has never conceded USAA properly valued his vehicle as Totalled.**

In anticipation of USAA claiming Plaintiff's deductible does not apply, USAA's policy only allows USAA to waive the deductible if all of 4 criteria are met.(Ordell_Decl.,Exhibit-A,USAA-SIGLER_000052).   Criteria #3 is not met because other vehicle's liability policy ($25k) is not sufficient to cover the loss. Since criteria #3 refers to Gonzalez's "liability policy covering the loss", loss in this instance must be "liability loss" as defined by THE_EXCHANGE's policy which would include the vehicle, loss of use, and storage costs, which exceeds Gonzalez's Policy limit of $25k.(FAC,Prayer)

**C. Plaintiff's FAC fully states proper claims for Intentional misrepresentation, violation of Clayton Act, and violation of the RICO Act**

**1. USAA's statute of limitation argument is based upon a fraudulent citation, and Plaintiff's filing of FAC meets all statute of limitations requirements.**

USAA bases their argument on Georgescu v. Bechtel Const., Inc., 15 F.3d 1085, 1085 (9th Cir. 1994), which is based upon Humphreys v. United States, 272 F.2d 411 (9th Cir. 1959).

In Georgescu, the court "dismissed Georgescu's complaint without prejudice for failure to prosecute on August 24, 1990. Georgescu did not appeal that dismissal.(Id, 1085), a voluntary action on his part.

In Humphreys, plaintiff dismissed her case in Oregon for the convenience of the parties(Id.Humphreys,412) and then "the motion to set aside dismissal is raised at a time when the statute of limitations on the cause of action has expired" (Humphreys,412).  A voluntary action by Humphreys.

In USAA's citation of Humphrey, USAA boldy states: "[A] suit dismissed without prejudice ... leaves the situation the same as if the suit had never been brought in the first place." (emphasis added)".  The actual wording in Humphrey is **"a suit dismissed without prejudice <u>pursuant to Rule 41(a)(2)</u> leaves the situation the same as if the suit had never been brought in the first place**. A. B. Dick Co. v. Marr, 2 Cir., 1952, 197 F.2d 498, 502; Maryland Casualty Co. v. Latham, 5 Cir., 1930, 41 F.2d 312, 313.

The dismissal of USAA in July 2023 was not voluntary,(Dkt. 52).  None of this case law is applicable.  USAA citing these cases, and **<u>deleting the key phrase of "pursuant to Rule 41(a)(2)"</u>** shows an inexcusable and deliberate lack of candour to the court.

The filing of a complaint tolls the statute of limitations.  *Once a complaint is filed, the statute of limitations is tolled unless and until the district court dismisses the action.* See 4 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1053 (3d ed. 2002). Mann v. Am. Airlines, 324 F.3d 1088, 1090 (9th Cir. 2003).   The original complaint was filed on November 18, 2022. USAA claims the statute of limitations expired on March 31, 2023, a time period of 133 extra days the Plaintiff had.  The time period from July 3, 2023 to October 9, 2023, when the FAC was filed is 98 days.  Even if USAA's dismissal stopped tolling, (which is debatable) the plaintiff had 133 days left, and refiled in 98 days,

**2. Plaintiff's Second Cause of Action for Intentional Misrepresentation identifies USAA's misrepresentations which he relied on to his determent.**

USAA's first argument is "*majority of the alleged misrepresentations identified in the FAC cannot be attributed to USAA CIC because they were included in the valuation reports Plaintiff alleges were created by Galvez, an employee of IBS*". This argument **fails** because the FAC states "*Galvez-VVR-00 was created through software provided by CCC, and listed Pablo Galvez as the appraiser, and stated "the value of the loss vehicle, [was] based on information provided to CCC by USAA Casualty Insurance Company"*.(FAC¶115) USAA's fingers were all over the fraudulent Galvez VVR along with IBS through their employee Pablo Galvez.

Second, USAA claims it was not a misrepresentation for USAA CIC to inform Plaintiff that it had "sent [Plaintiff] information about the total loss of your vehicle." The FAC states the misrepresentation was USAA misrepresenting the Plaintiff's vehicle as a total loss.(FAC¶¶113,127(b)(iii)) USAA admits stating Plaintiff's vehicle was a "total loss" Plaintiff's vehicle was not a total loss as previously proved,(Opp.Section IV.B).

USAA withheld the Galvez VVR until March 27, 2020,(Mot.pg12,ln2) a day after the claim was cancelled on March 26, 2020,(FAC¶¶44,45) All parties agreed the claim was cancelled on March 26, so Plaintiff did not review this material in depth. Providing documentation after a claim is cancelled shows intent to hide material facts from the Plaintiff, and Plaintiff could only rely upon USAA's false representation.

Third, USAA argues that "the Policy expressly gives USAA CIC the option to "pay for loss in money" or "repair or replace the [vehicle]" is a mischaracterization of the facts. The full statement says "*We may pay for the loss*

_____14_____

*in money, or repair or replace the damaged or stolen property.  We may, at our expense, return any stolen property to you or to the address shown on the Declarations"*.(Ordell Decl. Exhibit A, USAA-Sigler_000051).  **USAA changed key phrasing to change meaning**.   While Plaintiff's vehicle is his property, the clear meaning of this section is to refer to property other than the vehicle itself. "*If the language is ambiguous and extrinsic evidence of the parties' intent does not resolve the ambiguity, we must resolve the conflict in the insured's favour*". (Tacoma, at 568)   Throughout the policy, USAA uses vehicle to refer to the vehicle.  This argument: (1)refers to property other than the vehicle so is not applicable, and (2)does not even address the issue that USAA intentionally misrepresented that the Plaintiff's vehicle was a total loss.

USAA falsely classified the Plaintiff's vehicle as totaled.(**the intentional misrepresentation**)(FAC¶29-47,126)   The Plaintiff relied upon USAA's misrepresentation that his vehicle was a total loss, damaging the Plaintiff by denying him the option of getting his vehicle repaired which resulted in the Plaintiff suffering further damages in the form of additional "Loss of Use" damages, and additional Storage cost damages; all damages that could have been avoided if USAA had not falsely represented that the Plaintiff's vehicle was "totaled".(FAC¶127)

"*Based upon USAA's statement, the Plaintiff assumed USAA's representation that his vehicle was totaled was truthful and did not pursue his original plan from March 2, 2020 to get his vehicle repaired.*"(FAC¶129)   Plaintiff pursuing negotiations of valuation was a detrimental action that Plaintiff wouldn't have pursued if not for USAA falsely stating his vehicle was totalled.

This court previously stated <u>"In the absence of the Exchange's representation,[i.e. Plaintiff's vehicle was non-repairable, a total loss] Plaintiff would have repaired his Vehicle and would not have been damaged by having to</u>

Plaintiff   John W. Sigler:                                                      8:22-cv-2325-CJC-JDE
OPPOSITION TO EXCHANGE'S JUDGMENT ON THE PLEADINGS

pay for such extensive storage costs and other costs associated with the loss of use of the Vehicle.  This adequately states a claim."(Dkt.112,pg10,ln25)  **The same conclusion must apply to USAA who engaged in identical behaviour of misrepresenting that the Plaintiff's vehicle was totalled.**

USAA's argument that Plaintiff conceded USAA's valuation was proper returns to USAA's mischaracterization about "Actual Cash Value",(Opp.Section.IV.B)  Plaintiff never conceded his vehicle was properly identified as totalled.  The only act the Plaintiff agreed to was moving forward using USAA's fraudulent valuation of March 31, 2020 ($10,090.05) because it exceeded the valuation necessary to prove USAA's misrepresented his vehicle as totalled.(FAC¶27)

USAA also argues an irrelevant claim concerning mitigating damages.  USAA claims "Plaintiff will never be able to demonstrate that he appropriately mitigated his own damages",(Mot.Footnote 1, pg 14), because Plaintiff moved his vehicle to his property for storage.  Not only is this not applicable to relevancy argument, the vehicle was moved to mitigate damages and avoid an $80 per day storage fees that was an act of extortion by USAA via their partner in crime, IBS.(FAC¶66)

3. **Plaintiff's Fifth Cause of Action for violation of the Clayton Act involves a Per Se violation of the Sherman Act which the court has previously upheld against USAA's co-conspirator THE_EXCHANGE.**

It was pled that USAA and THE_EXCHANGE engaged in a scheme of price fixing / bid rigging involving matching fraudulent valuations of the Plaintiff vehicle and matching their determinations that Plaintiff's vehicle was totalled, a violation of the Clayton and Sherman Antitrust Acts.(FAC72-74,181-188)

_____16_____

The short response to USAA's argument to dismiss this claim is that "it takes two to tango".  Price fixing and especially bid rigging, involve the action of two parties conspiring together.  The court previously found sufficient cause to deny THE_EXCHANGE's request for dismissal of the Fifth Cause of Action.  Since USAA was the other party to this conspiracy, for consistency, the same ruling must apply to USAA.

The Ninth Circuit has stated "*Although this court has never expressly held that bid rigging is a per se violation of Section 1 of the Sherman Act, bid rigging is a form of horizontal price fixing. See United States v. Fenzl, 670 F.3d 778, 780 (7th Cir. 2012) (describing bid rigging as "a form of price fixing in which bidders agree to eliminate competition among them, as by taking turns being the low bidder"); United States v. Bensinger Co., 430 F.2d 584, 589 (8th Cir. 1970) (holding bid rigging is "a price-fixing agreement of the simplest kind, and price-fixing agreements are per se violations of the Sherman Act"), superseded on other grounds as stated in DCS Sanitation Mgmt., Inc. v. Occupational Safety & Health Review Comm'n, 82 F.3d 812 (8th Cir. 1996). Bid rigging is, therefore, a per se violation of the Sherman Act.*" United States v. Joyce, 895 F.3d 673, 677 (9th Cir. 2018)

**Contrary to USAA claims, Plaintiff has antitrust standing**.  "*Antitrust injury "can be established by showing that consumers paid higher prices for a product due to anticompetitive actions of a defendant, such as a horizontal market allocation scheme.*" In re Online DVD–Rental, 779 F.3d at 922.  This court has already concluded: "*This type of horizontal price fixing among insurers and their collaborators aims at keeping more funds in insurance companies' pockets and minimizes the payouts to policy holders like Plaintiff.*"(Dkt.112,pg14,ln13)

All of USAA's citations boil down to the Ninth Circuit, in Amarel v. Connell, 102 F.3d 1494, 1507 (9th Cir. 1996), as amended (Jan. 15, 1997), which identifies

certain factors for determining whether a plaintiff has antitrust standing.  These factors include:

(1) <u>the nature of the Plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall:</u> The Plaintiff's injuries involved: (1)non competitive/low-ball valuation of his vehicle, (2)additional loss of use and storage costs, business damages, and (3)loss of the opportunity to have his vehicle repaired.(FAC¶94-98,188)   All these injuries resulted from anti-competitive price fixing and bid rigging, injuries the Sherman Act was written to forestall.(FAC¶48-55,72-74,181-190,191-192)

(2) <u>the directness of the injury:</u> The injuries, additional loss of use, additional storage costs, and damage to the Plaintiff's business from having to prosecute these claims, were directly targeted at the Plaintiff and did not involved any other parties.(FAC¶94-98,188)

(3) <u>the speculative measure of the harm:</u> There is no speculation regarding the harm caused by the Defendant's anti-competition bid rigging act.   USAA's actions were key to the misrepresentation that the Plaintiff's vehicle was determined to be totalled and were caused by USAA conspiring with THE_EXCHANGE, including providing THE_EXCHANGE with a copy of the Galvez-VVR-00 to copy.  USAA's action forestalled all subsequent settlement activity because the "totalled" determination took the settlement process down the "totalled vehicle" rabbit hole.  The damages include Loss of Use, Storage Costs, and damages to the Plaintiff's business are easily quantified and allowed under the Clayton Act.(FAC¶191-192)  <u>Same injuries caused by THE_EXCHANGE which this court previously acknowledged.</u>

(4) <u>the risk of duplicative recovery:</u> There is no risk of duplicative recovery since all defendants, THE EXCHANGE, USAA, and IBS, conspired to violate the antitrust laws so damages would be awarded jointly and severally. Since there is

only one lawsuit, the total awards, however the jury decides to award them, cannot exceed the total damages and no other Plaintiff has any claim to create duplicative recovery.

(5) <u>the complexity in apportioning damages</u>. Since the defendants were all involved in the antitrust violations, awarding the damages jointly and severally eliminates any complexity in apportioning damages, but this is an issue for the jury to decide.

Plaintiff's injuries and damages arise from the Clayton Act stating "injury to business or property". Plaintiff alleged injury to his Property, including: (a)loss of a fair and competitive offer for valuation of his vehicle and loss of the option to have his vehicle repaired, (b)loss of use and storage cost damages, (c)(d)damages to his business through interference with current business productivity, part-time and full-time.(FAC¶191-192)

Next, USAA argument that theirs and THE_EXCHANGE's bids were similar, though not identical; is false. Both fraudulent appraisals were for the exact same amount. More telling is the appraisals were for the same **<u>fraudulent amount</u>**.(FAC¶183) The only difference was that USAA claimed the Plaintiff's vehicle did not have a sunroof or CA emission equipment. THE_EXCHANGE claimed the Plaintiff's vehicle did not have a sunroof or metallic paint. The fraudulent valuations were identical,(FAC¶51) and the changing of the false characterizations of the Plaintiff's vehicle to achieve the same valuation, is glaring proof of a conspiracy of bid rigging.

USAA, argument that "Plaintiff stated he was not the direct target of the scheme" is another USAA mischaracterization. Plaintiff stated "This price fixing scheme was an intentional and targeted attack against a single party, the Plaintiff.(FAC¶188) references to "direct target" come from the Plaintiff quoting the Ninth Circuit's ruling in Diaz v Gates(Diaz v. Gates,420 F.3d,909(9th-

Cir.2005) justifying his business damages by quoting "*There is similarly no room in the statutory language for an additional, amorphous requirement that, for an injury to be to business or property, the business or property interest have been the "direct target" of the predicate act*", and further stating "*injuries under Clayton to "business or property" must be considered exactly the same as injuries under RICO, which according to the Ninth Circuit in Diaz v Gate, do not have to be the direct target of the price fixing scheme*".(FAC¶190)  In these quotes "direct target" refers a Ninth Circuit quote stating Plaintiff's injuries to his business are allowed.

USAA argues "Plaintiff does not allege that his injuries "result[ed] from monopoly power or unreasonable restraint of trade," is nonsense.  Monopoly power and restraint of trade are secondary issue under the Sherman Act and not applicable.  Plaintiff's injuries arose from price fixing/bid rigging, act forbidden under Sherman.  The damages are derived from language in the Clayton Act, arising from Defendant engaging in anything forbidden under the Sherman Act.  Bid rigging/price fixing are Per Se violations of the Sherman Act and monopoly power and restraint of trade (other than anti-competition Per Se nature of bid rigging) have nothing to do with this claim.

Defendant's reference to Sheahan v State Farm Gen. Ins. is not even relevant since Sheahan was asking for damages under the Sherman Antitrust Act, not the Clayton Act.

USAA claims supplying THE_EXCHANGE a copy of the Galvez VVR was nothing more that "routine communication between non-competitors that resulted in no market harm".  If this was routine communications, why did: 1) USAA "share" a VVR which USAA knew to contain misrepresentations,(FAC¶54), 2) USAA not record this "sharing" in their Claim Notes which USAA employee Ordell has declared is a record of the claim's transactions,(FAC¶50,54-55),

_____20_____

3)why was sharing accompanied by THE_EXCHANGE stating that they would produce a valuation with similar values, which turned out to be identical to the fraudulent valuation in the "shared" Galvez VVR?(FAC¶51)  The alleged facts clearly show the "routine communication" was the "factual heart" of the conspiracy for price fixing/bid rigging.(FAC¶183)

USAA's argues "the antitrust laws do not prohibit anticompetitive conduct in markets artificially created by plaintiffs"; but cites no case law to support this claim.  It appears that USAA is admitting their actions were anticompetitive, but not criminal since they occurred within "a market artificially created by the Plaintiff".  Bid rigging, a Per Se violation, only takes two and there is no "market size" requirement in Clayton or Sherman.  Bid rigging will always occur in a market created by the victim, who is the party seeking competitive bids from two or more parties.

USAA argues "parallel conduct alone will not support an inference of concerted action".  THE_EXCHANGE stated they would produce a similar valuation.(FAC¶51)  USAA provided the "known at the time" fraudulent Galvez-VVR-00 to THE_EXCHANGE to match. <u>This was not parallel conduct, this was a conspiracy to commit price fixing/bid rigging</u>.(FAC¶50,54-55)

The Plaintiff pled all the essential elements of a Sherman Act violation.(FAC¶189)  (1)a charged conspiracy was knowingly formed, (2)defendants knowingly joined the conspiracy, (3)conspiracy affect interstate commerce)FAC¶189)   "*As the legislative history shows, the Sherman Act was enacted to assure customers the benefits of price competition, and our prior cases have emphasized the central interest in protecting the economic freedom of participants in the relevant market*".  Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 538, 103 S. Ct. 897, 908, 74 L. Ed. 2d 723 (1983)  The defendant's act of price fixing/bid rigging

_____21_____

deprived the Plaintiff of the benefits of competing the two insurance policies that covered his damages.(FAC¶50)

USAA's argument that Plaintiff has not alleged "a scheme to affect other insureds", is not applicable.  The Clayton Act does not require anything more than one victim, stating "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws".(15.U.S.C.15.Section 4)  Bid rigging is a Sherman Act violation(United States v. Joyce, at 677) and rarely does bid rigging have more than one victim; the party seeking competitive bids.  There is no "greater-good", "multiple victim requirement" to this violation; although, the court did note in its Order(Dkt.112,page 14) "This type of horizontal price fixing among insurers and their collaborators aims at keeping more funds in insurance companies' pockets and minimizes the payouts to policy holders like Plaintiff."

    4.  **Plaintiff's Sixth Cause of Action for RICO establishes a pattern of racketeering activities engaged in by USAA for over three years and identifies elements of ongoing racketeering activities as part of USAA's normal business activities**.

Firstly, USAA attempts to establish legitimacy for their arguments from this court's ruling in September 2023(Dkt.73).  That ruling had nothing to do with RICO claims involving USAA.  USAA was dismissed from the lawsuit in July 2023 and the court's ruling was concerning THE_EXCHANGE.

Regarding prior court rulings, in the court's prior Order(Dkt.112), the court noted "Plaintiff does allege that USAA has a history of deceiving its policy holders in a similar manner, but there are no such allegations as to the Exchange. (See FAC ¶ 56.)"(Dkt.112,page-18,footnote 4)

This court has used the Supreme Court's example of a RICO pattern, quoting H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 242(1989) as:

*A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit. Suppose a hoodlum were to sell "insurance" to a neighborhood's storekeepers to cover them against breakage of their windows, telling his victims he would be reappearing each month to collect the "premium" that would continue their "coverage." Though the number of related predicates involved may be small and they may occur close together in time, the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity. In other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business. Thus, the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes. Such associations include, but extend well beyond, those traditionally grouped under the phrase "organized crime." The continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO "enterprise."*

The RICO claim against USAA mirrors this example in the following manner:

1) Instead of neighbourhood storekeepers, USAA's victims are its policyholders and claimants; which include: the Plaintiff (2020), the Reyes (2017), the Kelleys (2018), Kraig Vandewalle (2019),(FAC.¶56,204), and Sonny Letot (2013)(FAC¶60).

2) Instead of extortion in the form of "insurance", the predicate acts were wire fraud where USAA used its financial power (in the form of continuing business to the appraisal companies, (IBS and Allcat)) to direct appraisers to falsify appraisals

with the aim of keeping more funds in insurance companies' pockets and minimizes the payouts to policy holders like the Plaintiff, the Reyes, the Kelleys, Kraig Vandewalle, and Sonny Letot.(FAC¶204)

3) P{attern and continuity are shown in USAA's pattern of fraud in directing appraisers to falsify appraisals, extends over a seven year period from 2020 with the Plaintiff, to the Reyes (2017), the Kelleys (2018), Kraig Vandewalle (2019), (FAC.¶56,204), and Sonny Letot (2013)(FAC¶60).

4) USAA's pattern of racketeering predicate acts involves numerous other victims; <u>specifically</u> the Reyes, Kelleys, Kraig Vandewalle, and Sonny Letot; FAC¶56-57,Exhibit-E,Exhibit-F)) and <u>generally</u> the victim list includes hundreds or thousands of members of the Sonny Letot class action lawsuit.(FAC¶58,Exhibit-B-D))

*A plaintiff can establish that predicate acts were continuous by pleading either open-ended or closed-ended continuity.* Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1526 (9th Cir. 1995). *Open-ended continuity refers to "past conduct that by its nature projects into the future with a threat of repetition."* H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 241 (1989). *Closed-ended continuity refers to "a series of related predicates extending over a substantial period of time."* Id. at 242. *"* Id. at 242.

No court has established a hard line in defining "a substantial period of time" for closed-ended continuity. The Second Circuit has come closest in suggesting *"any scheme that lasts less than two years does not sufficiently allege a closed ended, continuous criminal scheme."*(Spool-v.-World Child Int'l Adoption Agency, 520 F.3d,178,184-8 (2d Cir.2008)

The Ninth Circuit's position, although not a "hard line" can be found in Allwaste, Inc. V Hecht. *"as the district court assumed incorrectly that closed  ended continuity could not be established absent a showing that predicate*

_____24_____

*acts occurred during a period lasting more than one year and that open-ended continuity could not be established because Allwaste had terminated the appellants' employment"*. Allwaste Inc. v. Hecht,65,F.3d 1523,1530–31(9ᵗʰ-Cir. 1995)  It appears that the Ninth Circuit's hard line is one year.  A RICO pattern of predicate acts by USAA were pled as meeting the requirement of closed-ended continuity over a seven year period.(FAC¶204-211)

USAA argues the facts, depositions, complaints, and court testimony (yes, the Plaintiff has a copy of court transcripts) cannot be used in his claims of past predicate acts,(Reyes, Kelleyts, Vanderwalle, Letot) but cites no case law for this argument nor for their argument that these records are not the proper subject for judicial notice.  The admissibility of this evidence is not a question for Judgement on the Pleadings.  Jennifer Posas's (adjuster for Reyes), or Gair Allie's (adjuster for Kelley and Vandewalle) testimony would certainly be admissible.

USAA argues the predicate acts,(Reyes, Kelleyts, Vanderwalle, Letot) are unrelated and not a pattern.  *"[C]riminal conduct forms a pattern if it embraces criminal acts that have the same __or__ similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."* 18 U.S.C. § 3575(e). (footnote 14) Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985) (emphasis on **"or"**, meaning not all these criteria have to apply, though most of them do.)

The alleged predicates acts form a pattern because they:

1) all have the same victims, USAA policyholders.(FAC¶204)  This group was acknowledged by this court statements of: 1) *"Plaintiff does allege that USAA has a history of deceiving its policy holders in a similar manner, but there are no such allegations as to the Exchange."*,(Dkt.112,pg.18,footnote) and 2)*"This type of horizontal price fixing among insurers and their collaborators aims at keeping*

_____25_____

*more funds in insurance companies' pockets and minimizes the payouts to policy holders like Plaintiff.*"( Dkt.112,pg.14,ln.13);

2) <u>all have the same participants</u>, USAA directing one of their financially dependent appraisal subcontractors. (for Plaintiff – IBS, for Reyes, Kelley, Vandewalle – Allcat, for Letot – Stewart Mayfield)

3) <u>same method of commission</u>, USAA directing the falsification of appraisals(Plaintiff, Reyes, Kelley, Vandewalle) or falsely classifying vehicles as totalled(Plaintiff, Letot),

4) <u>the same purpose</u>, "keeping more funds in insurance companies' pockets and minimizes the payouts to policy holders" as this court has previously noted.

The Plaintiff also pled the particularities of the predicate acts of wire fraud involving the Plaintiff,(FAC¶128), and the other victims(FAC¶56-57,Exhibits B-F)

The pattern of racketeering activities can also be established through the concept of open-ended continuity.  *The continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO "enterprise."*  H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 243, 109 S. Ct. 2893, 2902, 106 L. Ed. 2d 195 (1989)

Plaintiff pled extortion, in the form of forcing Plaintiff to pay un-necessary premiums unless he settled his claim for a fraudulent amount.(FAC¶62-65)  USAA does not deny these facts or this predicate act.  The predicate act of extorting "un-necessary premiums" is coded into USAA's website, which means it is still active today, three years later supporting the allegations of a predicate act that is part of USAA's regular way of doing business.(FAC¶208,213)  With USAA's predicate act of extortion coded into their website, this clearly shows this

predicate act is ***a regular way of conducting defendant's ongoing legitimate business,*** establishing open-ended continuity.

Finally, USAA argues their actions, and the actions of THE_EXCHANGE and IBS, were "conduct consistent with ordinary business conduct and an ordinary business purpose."  If USAA's argument is true, then USAA, THE_EXCHANGE and IBS's ordinary business conduct involved: (1)predicate acts of wire fraud  in misrepresenting vehicles as totalled by falsifying appraisals and repair estimates with their partner IBS; in a scheme whose fraud also was used in support of price fixing and bid rigging,(FAC¶29-47,48-55), (2)establishing a scheme to extort un-necessary premiums from policyholders unless they accept fraudulent low-ball appraisals,(FAC¶62-65) and (3)teaming with a repair shop (IBS) to charge exorbitant storage fees as a further act of extortion to force a victim to accept a fraudulent  low-ball appraisal.(FAC¶66)

USAA's argument that these activities are ordinary business conduct would support the Supreme Court's definition of open-ended continuity of a pattern, stating "*The continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business"(Id.* H.J., Inc. at 242), and be an admission of racketeering activities with the common purpose of keeping more funds in insurance companies' pockets and minimizing payouts on policy holders' claims; as the court noted in it's Order, Dkt.112, pg14,ln.13.

## V.   LEAVE TO AMEND

In determining whether to grant leave to amend, "a court must be guided by the underlying purpose of Rule.15-to facilitate decision on the merits, rather than on the pleadings or technicalities." United States-v-Webb, 655 F.2d 977,979(9th Cir.1981)

The Ninth Circuit Court of Appeal has stated that Rule 15's policy favoring amendments is applied liberally by us. Ascon Properties, Inc.-v-Mobil Oil Co.,866 F.2d,1149,1160(9th Cir.1989).

Leave to amend a pleading under Rule 15(a) is to be granted freely and with "extreme liberality." DCD Programs, Ltd.-v-Leighton,833,F.2d,183,186(9th Cir.1987).  This policy is applied even more liberally to pro se litigants." Eldridge v. Block, 832 F.2d 1132, 1135 (9th Cir. 1987).

The entire pre-trial motion process is a learning process for Pro Se litigants and the Plaintiff should be granted leave to amend to fix any omissions, or to provide clarity on any issues the court finds in his pleadings; correcting any of the multiple acts of mischaracterization, such as misrepresenting the definition of "Actual Cash Value", mischaracterizing citations regarding voluntary dismissals, or mischaracterizing basic fact regarding USAA's Appraisal clause that the court may believe; or responding to additional issues the Defendant may raises in their reply that the Plaintiff has no opportunity to address.


## VI.   CONCLUSION

For the above listed arguments, the Plaintiff respectfully requests this court deny the Defendant's motion.


Dated: February 4, 2024



_____
JOHN SIGLER
*Plaintiff In Propria Persona*

_____28_____

Plaintiff   John W. Sigler:                                                8:22-cv-2325-CJC-JDE
OPPOSITION TO EXCHANGE'S JUDGMENT ON THE PLEADINGS

1

2

3 **Certificate of Compliance.**

4

5 The undersigned, John W. Sigler, the Pro Se Litigant, certifies that this brief

6 contains 6,856 words, excluding the caption, the table of contents, the table of

7 authorities, the signature block, the certification required by L.R. 11-6.2, and any

8 indices and exhibits, which complies with the word limit of L.R. 11-6.1.

9

10

11

12 February 4, 2024

13                                    John W. Sigler

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff   John W. Sigler:                                    8:22-cv-2325-CJC-JDE
OPPOSITION TO EXCHANGE'S JUDGMENT ON THE PLEADINGS

## CERTIFICATE OF SERVICE

**John W. Sigler v. Jorge Gonzalez, USAA Casualty Insurance Company, et al.**

**Case No. 8:22-cv-02325-CJC-JDE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am a citizen of the United States and reside at 13129 Stern Avenue, La Mirada, CA  90638.  I am over the age of 18 and not a party to the within actions.

On February 5, 2024, I served the document(s) entitled,

**OPPOSITION TO THE USAA's MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION TO COMPEL APPRAISAL**

on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope addressed (see attached Service List) as stated below:

**(BYMAIL):**  I deposited such envelope in the mail at La Mirada Post Office, California with postage fully prepaid.  I am familiar with the practice of collection and processing correspondence for mailing.  Under that practice, it would be placed for mailing, and deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at La Mirada, California, in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States that the above is true and correct and was executed on February 5, 2024.


AnhThu Nguyen

_____1_____

## <u>SERVICE LIST</u>

**John W. Sigler v. Jorge Gonzalez, USAA Casualty Insurance Company, et al.**

**Case No. 8:22-cv-02325-CJC-JDE**

Aparajito Sen, Esq.,

FORD, WALKER, HAGGERTY & BEHAR

One World Trade Center, 27th Floor

Long Beach, CA  90831-2700

Attorney for Defendant Interinsurance Exchange of the Automobile Club

Attorney for Defendant Jorge Gonzalez

Jeffery Lenkov

MANNING & KASS

ELLROD, RAMIREZ, TRESTER LLP

801 S. Figueroa St, 15th Floor

Los Angeles, CA  90017-3012

Attorney for Defendant Imperial Body Shop

Vivian I. Orlando (SBN 213833)

MAYNARD NEXSEN LLP

10100 Santa Monica Boulevard, Suite 550

Los Angeles, CA  90067

Attorney for Defendant USAA Casualty Insurance Co.