VIVIAN I. ORLANDO (SBN 213833)
VOrlando@maynardnexsen.com
Maynard Nexsen LLP
10100 Santa Monica Boulevard, Suite 550
Los Angeles, CA 90067
Telephone:  310.596.4500

Attorneys for Defendants
USAA Casualty Insurance Company

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN W. SIGLER,<br><br>                    Plaintiff,<br><br>         v.<br><br>JORGE GONZALEZ, USAA CASUALTY INSURANCE COMPANY, INTERINSURANCE EXCHANGE OF AUTOMOBILE CLUB, IMPERIAL BODY SHOP, INC., PABLO GALVEZ, GREG TAYLOR, MELISSA ORDELL, DANELLE BUSHNELL, AMBER PETERSON (aka AMBER PETERSON FORREST, aka AMBER J. SCHNEIDER), KEVIN KARAPOGOSIAN, JAMES SYRING, RANDY TERMEER, JOHN BOYLE and DOES 1 to 99, inclusive,<br><br>                    Defendants. | Case No.  8:22-cv-02325-CJC-JDEx<br><br>(Honorable Cormac J. Carney)<br><br>**DEFENDANT USAA CASUALTY INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO COMPEL APPRAISAL**<br><br>[Filed Concurrently with Supplemental Declaration of Vivian I. Orlando]<br><br>**Hearing**:<br>Date:          February 26, 2024<br>Time:          1:30 p.m.<br>Courtroom:   9 B<br><br>Discovery C/O:   April 22, 2024<br>Motion C/O:      June 17, 2024<br>Trial Date:       August 27, 2024 |

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................. 1

II.     ARGUMENT ................................................................................................... 2

    A.      Plaintiff Cannot "Work Around" the Appraisal Provision by
        "Agreeing" to an Offer USAA CIC Never Made ................................. 2

        1.      Appraisal is not "Voluntary" Under Either California
                Law or the Court's Prior Order ................................................... 3

        2.      Plaintiff Agreed to USAA CIC's "Amount of Loss,"
                not the Actual Cash Value that Formed the Basis for
                the Amount of Loss. ................................................................... 6

    B.      Plaintiff's Intentional Misrepresentation Claim Fails
        Because Plaintiff Concedes USAA CIC Disclosed the
        Allegedly Incorrect Valuation ............................................................. 8

        1.      Plaintiff's Intentional Misrepresentation Claim is
                Barred by the Statute of Limitations. ........................................ 8

        2.      The FAC Fails to Allege an Actionable
                Misrepresentation. ..................................................................... 9

    C.      Plaintiff's Antitrust Claim Fails as a Matter of Law. ........................ 10

        1.      Plaintiff Has Not Alleged an Agreement in Restraint
                of Trade. ................................................................................... 10

        2.      Plaintiff Fails to Allege an Antitrust Injury ............................ 14

    D.      Plaintiff Has Not Alleged a Pattern of Racketeering Activity ............ 15

III.    CONCLUSION ............................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allwaste, Inc. v. Hecht,*
  65 F.3d 1523 (9th Cir. 1995) ...............................................................16

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................................11

*Brantley v. NBC Universal, Inc.,*
  675 F.3d 1192 (9th Cir. 2012) .......................................................11, 15

*Community Assisting Recovery, Inc. v. Aegis Security Insurance Company,*
  92 Cal.App. 4th 866 (2001) ....................................................................4

*Cozzitorto v. W. Pac. Hous., Inc.,*
  2006 WL 8459994 (N.D. Cal. Aug. 2, 2006) .........................................9

*Enger v. Allstate Ins. Co.,*
  407 F. App'x 191, 193 (9th Cir. 2010) ..................................................4

*Garner v. State Farm Mut. Auto. Ins. Co.,*
  2008 WL 2620900 (N.D. Cal. June 30, 2008)........................................4

*H.J. Inc. v. Nw. Bell Tel. Co.,*
  492 U.S. 229 (1989)...................................................................16, 17, 19

*Humphreys v. United States*
  272 F.2d 411 (9th Cir. 1959) ..................................................................9

*In re Online DVD-Rental Antitrust Litig.,*
  779 F.3d 914 (9th Cir. 2015) ................................................................14

*Kacha v. Allstate Ins. Co.,*
  140 Cal. App. 4th 1023 (2006) ...............................................................5

*Kendall v. Visa U.S.A., Inc.,*
  518 F.3d 1042 (9th Cir. 2008) ..............................................................11

*Lee v. California Cap. Ins. Co.*,
237 Cal. App. 4th 1154 (2015) ...................................................................5

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
884 F.2d 504 (9th Cir. 1989) ...................................................................11

*McGowan v. Weinstein*,
505 F. Supp. 3d 1000 (C.D. Cal. 2020) ..................................................19

*Medallion Television Enters. v. SelecTV of California, Inc.*,
833 F.2d 1360 (9th Cir. 1987) ..................................................................19

*Parker Auto Body Inc v. State Farm Mut. Auto. Ins. Co.*,
171 F. Supp. 3d 1274 (M.D. Fla. 2016) ..................................................13

*Parker v. Marcotte*,
975 F. Supp. 1266 (C.D. Cal. 1997) ...........................................................9

*Pavlina v. Safeco Ins. Co. of Am.*,
2012 WL 5412796 (N.D. Cal. Nov. 6, 2012) .............................................4

*Prudhomme v. Geico Ins. Co.*,
2018 WL 1371240 (W.D. La. Feb. 9, 2018) ...............................................4

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985) .................................................................................16

*Sheahan v. State Farm General Insurance Company*,
442 F. Supp. 3d 1178 (N.D. Cal. 2020) ..............................................14, 15

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ...................................................................17

*Sun Sav. & Loan Ass'n v. Dierdorff*,
825 F.2d 187 (9th Cir. 1987) ...................................................................16

*United Brotherhood. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*,
    770 F.3d 834 (9th Cir. 2014) .................................................................................16

*Workman v. State Farm Mut. Auto. Ins. Co.*,
    520 F. Supp. 610 (N.D. Cal. 1981).........................................................................13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In order to avoid appraisal, Plaintiff John W. Sigler's ("Plaintiff") First Amended Complaint ("FAC") alleges that there is no longer a dispute over the "amount of loss" Plaintiff sustained when his vehicle was damaged in a collision. Because Plaintiff "agrees" to the amount of loss estimated by USAA Casualty Insurance Company's ("USAA CIC"), USAA CIC moved for judgment on the pleadings, contending that Plaintiff's FAC fails to state a claim regarding the valuation that Plaintiff concedes is correct.  Plaintiff's Opposition contends that he does not actually agree to the amount of loss, that he stated as much only in an attempt to "work around" the appraisal provision, and that he actually "agrees" to a different amount USAA CIC never agreed to.  In other words, Plaintiff's Opposition demonstrates that he continues to dispute the extent of the amount of loss, which the Court previously held is a dispute that is subject to the appraisal provision of the Policy.  So, either Plaintiff's claims fail for lack of a dispute, or his claims remain premature.  Either way, USAA CIC's motion must be granted.

Plaintiff makes another concession in his Opposition that invalidates his claims.  Contrary to the FAC, Plaintiff acknowledges that he received the repair estimate USAA CIC relied on in March 2020.  That concession (which contradicts the allegations of the FAC) has two effects.  First, it means Plaintiff's intentional misrepresentation claim is barred by the statute of limitations.  And second, it means USAA CIC did not withhold an estimate from Plaintiff, which Plaintiff alleges over and over again in support of his claims.

Plaintiff's antitrust and RICO claims remain fundamentally flawed.  As explained below, Plaintiff fails to allege an agreement in restraint of trade or an antitrust injury.  On the RICO claim, Plaintiff attempts to establish a pattern of racketeering activity based on irrelevant, unrelated, and unverified allegations by

1

other policyholders that have nothing to do with Plaintiff or USAA CIC's handling of California auto claims.

Accordingly, for the reasons set forth herein and in USAA CIC's moving papers, USAA CIC requests that the Court dismiss with prejudice Plaintiff's case against it.

## II.    ARGUMENT

### A.    Plaintiff Cannot "Work Around" the Appraisal Provision by "Agreeing" to an Offer USAA CIC Never Made

As the Court previously recognized, the Policy contains a mechanism for resolving disputes—like the present dispute—over the value of a damaged vehicle: appraisal.  (Dkt. 52 at 5-6).  The Court held that "the policy's plain text proscribes Sigler from maintaining this suit against USAA CIC" and ordered him to comply with the appraisal provision.  (*Id.* at 7).  Instead of participating, Plaintiff initially designated himself as an appraiser, then ultimately refused to participate in the process at all.  (*See* Dkt. 111 at 13).  To avoid appraisal, Plaintiff stated in an October 6, 2023 letter that he would agree to "the ***amount of loss*** stated by USAA [CIC]," in the amount of $10,090.05.  (FAC, Ex. A (emphasis added)).

As USAA CIC's Motion explains, Plaintiff's concession regarding the valuation of his vehicle "must mean one of two things."  (Dkt. 111 at 9).  Either Plaintiff agrees with USAA CIC's valuation, meaning his claims fail, or he doesn't, meaning his claims still cannot proceed "at this time."  (Dkt. 52 at 7).

Plaintiff's response to this argument says too much.  In referring to his agreement as a "work-around," Plaintiff concedes that he agreed to accept USAA CIC's valuation only as an effort to avoid the express appraisal provision of the Policy, (Dkt. 115 at 9), and to avoid the directive in the Court's Order compelling Plaintiff to participate (Dkt. 52).  Plaintiff's claims are therefore still premature and must be compelled to appraisal.  On the other hand, if Plaintiffs' concession is sufficient to avoid the appraisal provision, his claims fail as a matter of law—that is,

Plaintiffs' lawsuit concerns a valuation for his vehicle that the parties **_agree_** is correct. Each of Plaintiff's claims **_depends on_** the allegation that the valuation was incorrect (and therefore "fraudulent," according to Plaintiff). (*See* Dkt. 111 at 15-16). If Plaintiff truly agrees to USAA CIC's valuation, the FAC fails to state a claim.

Plaintiff does not contest any of the foregoing. Instead, recognizing these impediments to relief, Plaintiff's Opposition attempts to walk back his attempted work-around by arguing (again) that his claims are not subject to appraisal, and that he did not actually intend to agree to USAA CIC's valuation at all. (Dkt. 115 at 5, 10). Plaintiff contends that appraisal is "voluntary" under inapplicable authorities that conflict with California law. (*See id.* at 5-6). And Plaintiff contends that although his October 6, 2023 letter stated that he agreed with the "amount of loss" stated by USAA CIC, he actually "agreed" to a different amount. (*Id.* at 10). Neither argument cures the FAC's failure to state a claim.

### 1. Appraisal is not "Voluntary" Under Either California Law or the Court's Prior Order.

Plaintiff attempts to re-litigate issues conclusively determined by the Court several months ago by arguing that his claims are not subject to appraisal. (*See* Dkt. 52). The Court already determined that Plaintiff's claims were subject to the appraisal provision in the Policy, which applies when Plaintiff and USAA CIC "do not agree on the **_amount of loss_**." (Dkt. 111-2 at 60 (emphasis added)). The Court explained that "until an appraisal is completed, it is impossible to know whether USAA CIC has fraudulently undervalued, or used a fraudulent process to undervalue, the vehicle." (Dkt. 52 at 6 (quotation omitted)). Plaintiff's current claims depend on the same central allegation. (*See* Dkt. 111 at 15-16). Now, just as before, Plaintiff's claims cannot be decided until an appraisal is completed, and "no legal action can be brought against USAA CIC unless and until there is full compliance" with the appraisal provision. (Dkt. 52 at 6).

Plaintiff responds that, contrary to the Court's prior Order, appraisal is actually "voluntary." (Dkt. 115 at 5-6). Plaintiff cites a Western District of Louisiana Magistrate Judge's Report and Recommendation that is both inapposite and contrary to California law. *See Prudhomme v. Geico Ins. Co.*, 2018 WL 1371240, at \*7 (W.D. La. Feb. 9, 2018), *report and recommendation adopted*, 2018 WL 1368335 (W.D. La. Mar. 16, 2018). In holding that a similar appraisal provision was voluntary, the *Prudhomme* court also held that the appraisal provision would not "resolve" the claims presented in the lawsuit. *Id.* at \*7. Unlike the present case, the *Prudhomme* plaintiff challenged the lawfulness of the insurer's use of a tool to value losses. *Id.* That challenge, the court reasoned, was not encompassed by an appraised determination of the loss itself. *Id.*

Here, Plaintiff has challenged nothing but the valuation of his loss, which is expressly subject to the appraisal provision. (Dkt. 111-2 at 60). The provision permits USAA CIC to request appraisal, and USAA CIC has done so. This case is therefore much more like the California federal decisions that have enforced similar provisions. *See Pavlina v. Safeco Ins. Co. of Am.*, 2012 WL 5412796, at \*5 (N.D. Cal. Nov. 6, 2012) (citing *Community Assisting Recovery, Inc. v. Aegis Security Insurance Company*, 92 Cal.App. 4th 866, 895 (2001)); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 2620900, at \*7 (N.D. Cal. June 30, 2008). Indeed, the Court previously cited the Ninth Circuit's decision in *Enger v. Allstate Ins. Co.*, which held that an appraisal provision "triggered at the request of either party" is mandatory, and affirmed the dismissal of claims filed prior to appraisal requested by the insurer. 407 F. App'x 191, 193 (9th Cir. 2010); (Dkt. 52 at 6). Therefore, Plaintiff is simply mistaken that appraisal was voluntary.

Plaintiff also suggests that even if appraisal is not "voluntary," USAA CIC somehow prevented an appraisal from taking place because it insisted that he could not serve as his own appraiser. (Dkt. 115 at 7-8). But Plaintiff's position conflicts with the FAC and the Policy language. Plaintiff has repeatedly alleged that USAA

4

CIC deprived him of an "independent appraisal," but he refused to identify an independent appraiser.  (FAC at ¶¶154, 185, 188).  And, under the Policy, an appraiser must be "competent," which at the very least imposes some qualifications beyond a layperson.  (Dkt. 111-2 at 60).  Moreover, this Court and other California courts have recognized that appraisal is a formal process akin to arbitration, meaning an appraiser must also be competent as to "the rules governing arbitration." *Lee v. California Cap. Ins. Co.*, 237 Cal. App. 4th 1154, 1165 (2015); (Dkt. 52).  And an appraiser must be qualified to "determine the amount of damage resulting to various items submitted for their consideration." *Kacha v. Allstate Ins. Co.*, 140 Cal. App. 4th 1023, 1032 (2006).  None of these decisions support the notion that a claimant can serve as an appraiser.  Nonetheless, even if Plaintiff could serve as his own appraiser, there is no question that Plaintiff did not attempt to identify a neutral umpire to make a decision on the competing valuations.  (*See* Dkt. 111-2 at 60).  And there is no question that Plaintiff ended the parties' efforts to schedule appraisal without identifying any of the alleged deficiencies with USAA CIC's position he identifies in his Opposition.  When Plaintiff says USAA CIC "continued to change and redefine the terms" of the appraisal provision, what Plaintiff means is that USAA CIC would not accede to his unilateral valuation of his own vehicle in violation of the express appraisal provision.  (*See* Dkt. 115 at 9).  USAA CIC did not prevent Plaintiff from complying with the appraisal provision.

Plaintiff also argues that the Court pre-determined that the FAC properly pled around the appraisal provision.  (Dkt. 115 at 7).  In an Order denying USAA CIC's *ex parte* motion to strike the FAC, the Court stated that "the facts alleged in the FAC, . . . if true, would render Plaintiff's claims against [USAA CIC] ripe for litigation in this Court."  (Dkt. 87 at 2).  The Court cited paragraphs 26 and 27 of the FAC.  (*Id.*).  Paragraph 26 merely recites the appraisal provision, and paragraph 27 explains that Plaintiff no longer disagrees with USAA CIC on "the amount of loss" stated in USAA CIC's final settlement communication.  (FAC at ¶¶26-27).  Neither of these

1  paragraphs demonstrate that Plaintiff complied with the appraisal provision.  As
2  explained next, paragraph 27, if true, demonstrates that Plaintiff's claims fail as a
3  matter of law.

4        **2.**     **Plaintiff Agreed to USAA CIC's "Amount of Loss," not the**
5            **Actual Cash Value that Formed the Basis for the Amount of**
6            **Loss.**

7  As set forth above, Plaintiff cut off the appraisal process by stating that he "no
8  longer . . . disagree[d] on the amount of loss stated by USAA [CIC]."  (FAC, Ex. A).
9  He referenced the amount of loss stated in USAA CIC's final settlement letter, sent
10  on March 31, 2020.  (*Id.*; Dkt. 111-2 at 136-38)  This letter included the following
11  breakdown of USAA CIC's total loss amount:

| Vehicle's actual cash value: | $8,990.00 |
| Sales tax: | $854.05 |
| CA CVR Fees: | $214.00 |
| Manager Adjustment: | $0.00 |
| Fuel: | $32.00 |
| Collision Deductible: | $0.00 |
| **Net Total:** | **$10,090.05** |

18  (Dkt. 111-2 at 138).  As USAA CIC explained in its Motion, Plaintiff's claims each
19  depend on the allegation that his car was repairable, not a total loss under the Policy.
20  (*See* Dkt. 111 at 15-16).  The Policy states that a vehicle is a total loss when the "cost
21  to repair" exceeds the "actual cash value minus the salvage value after the loss."
22  (Dkt. 111-2 at 57).  As clearly demonstrated by the above table, which Plaintiff
23  "agreed" to, USAA CIC determined on March 31, 2020 that the actual cash value of
24  Plaintiff's vehicle was $8,990.00.  Plaintiff's FAC alleges that the cost to repair
25  Plaintiff's vehicle was around $9,200 though the IBS repair estimate provided to
26  USAA CIC (which Plaintiff now admits he was provided with in March 2020) was
27  higher at $9,775.68.  (FAC at ¶122; Dkt. 115 at 14:20-23; Dkt. 111-2 at 129).
28  Therefore, Plaintiff concedes that the vehicle was a total loss under the Policy.

In response to this argument, Plaintiff reframes his "agreement" in a way that fails to save his claims from dismissal.  Plaintiff first contends that he did not intend to accept USAA CIC's amount of loss, but instead intended to accept an "**actual cash value** as $10,090.05." (Dkt. 115 at 10).  Of course, as the above indicates, that is not a valuation that USAA CIC ever made.  And Plaintiff's October 6, 2023 letter does not use the term "actual cash value" but instead refers to the "amount of loss" stated in USAA CIC's settlement communication.  (FAC, Ex. A).  Therefore, the Court should reject Plaintiff's attempts to walk back his agreement.  Alternatively, to the extent Plaintiff contends he never accepted USAA CIC's amount of loss, he failed to comply with the appraisal provision.  Either way, Plaintiff's claims must be dismissed.

Plaintiff also attempts to avoid his agreement by contending that the phrase "actual cash value" is ambiguous.  Plaintiff seems to be suggesting that although he used a term other than "actual cash value" to refer to an amount in a document other than the actual cash value listed in the document, the Court should excuse that mistake because USAA CIC should have used the term "actual cash value" to refer to the amount of loss.  (*See* Dkt. 115 at 10).  Even if Plaintiff could demonstrate ambiguity, however, the fact remains that Plaintiff represents in the FAC that he agreed to the ***amount of loss*** offered by USAA CIC, and he made that representation to avoid the present dispute over the value of the vehicle.[1]  (FAC, Ex. A).  It is telling that to support this argument, Plaintiff doubles-down on demonstrating that he remains committed to disputing the valuation of the vehicle through this lawsuit.  (*See* Dkt. 115 at 11).  In short, Plaintiff states that he "agree[s] to use USAA [CIC's] number of $10,090.05 as the Actual Cash Value . . . of his vehicle," (Dkt. 115 at 10), to which USAA CIC simply responds that it has not agreed to use that number for

---

[1] USAA CIC also notes that Plaintiff's attempt to dispute a term of the Policy is inconsistent with his causes of action.  If Plaintiff contends that his disputed meaning of "actual cash value" should have controlled, USAA CIC could not have *intentionally* misrepresented the value of Plaintiff's vehicle.

that purpose, thereby demonstrating that a dispute over the value of the loss exists. Therefore, to the extent Plaintiff can be excused from the representation in the FAC that he agreed to the amount of loss, his claims must be dismissed for failure to comply with the appraisal provision.

Just as Plaintiff cannot unilaterally foist a meaning of the appraisal provision on USAA CIC that conflicts with its terms, Plaintiff cannot unilaterally agree to a valuation of his vehicle USAA CIC never made in order to avoid appraisal.

**B.      Plaintiff's Intentional Misrepresentation Claim Fails Because Plaintiff Concedes USAA CIC Disclosed the Allegedly Incorrect Valuation.**

Even if the Court concludes that Plaintiff has complied with the appraisal provision, Plaintiff concedes that his intentional misrepresentation claim is barred by the statute of limitations because he received USAA CIC's estimate more than three years prior to filing the FAC.  (*See* Dkt. 115 at 14).  But even if his claims somehow benefit from tolling, Plaintiff's receipt of the repair estimate and valuation means USAA CIC did not misrepresent anything to Plaintiff, so the FAC fails to state a claim for intentional misrepresentation.

**1.      Plaintiff's Intentional Misrepresentation Claim is Barred by the Statute of Limitations.**

Plaintiff's intentional misrepresentation claim is governed by a three-year statute of limitations.   C.C.P. § 338(d).   Plaintiff alleges that USAA CIC misrepresented information by providing an incorrect estimate to him in March 2020, more than three years prior to the filing of the FAC in October 2023.  In the Motion, USAA CIC contended that Plaintiff could not demonstrate that he was unaware of these alleged misrepresentations until later (Dkt. 111 at 19), and Plaintiff has now conceded that he received USAA CIC's estimate including the repair estimate on March 27, 2020, (Dkt. 115 at 14).  Plaintiff's claim is therefore barred by the applicable statute of limitations.

Plaintiff responds with the accusation that USAA CIC has misrepresented the law.  (Dkt. 115 at 13).  Not so. For one thing, *Humphreys v. United States* was not limited to dismissals pursuant to Rule 41(a)(2) but its own terms. 272 F.2d 411, 412 n.1 (9th Cir. 1959) ("In the absence of statute, a party cannot deduct from the period of the statute of limitations . . . the time consumed by the pendency of an action . . . which was dismissed without prejudice as to him . . . .").  Nor does this rule apply only to voluntary dismissals.  "When a complaint is dismissed without prejudice, it is as if it never existed." *Cozzitorto v. W. Pac. Hous., Inc.*, 2006 WL 8459994, at *2 (N.D. Cal. Aug. 2, 2006).  And when an action is dismissed for completion of a condition precedent, "[a] plaintiff who re-files a case in order to reinstate his claims may have a problem with the statute of limitations." *Id.* (noting that the circumstances might be different if the court provides a time for compliance with the condition); *see also Parker v. Marcotte*, 975 F. Supp. 1266, 1269 (C.D. Cal. 1997) (collecting cases), *rev'd on other grounds*, 198 F.3d 254 (9th Cir. 1999).

Plaintiff is simply mistaken that "[t]he filing of a complaint tolls the statute of limitations." (Dkt. 115 at 13).  If that were true, a plaintiff could extend statutes of limitations indefinitely by filing frivolous lawsuits and dismissing them without prejudice at the first sign of adversity, each time contending the statutory period had only run while a lawsuit was not pending.  The statute of limitations ran while USAA CIC was not a party to this action, and Plaintiff's attempt to state stale claims fails.

### 2.    The FAC Fails to Allege an Actionable Misrepresentation.

USAA CIC's Motion demonstrates that even if Plaintiff's claims are timely, there is no question that USAA CIC made no actionable misrepresentations.  (Dkt. 111 at 20-23).  USAA CIC contends that it was not a misrepresentation for USAA CIC to provide Plaintiff with an estimate prepared by an IBS employee, to state that it provided information to Plaintiff regarding the value of the vehicle, to correct that valuation based on information provided by Plaintiff, and to nonetheless conclude that the vehicle remained a total loss. (Dkt. 111 at 20-21).  Plaintiff's Opposition

1  does not take issue with the factual accuracy of USAA CIC's statements, but

2  contends that the FAC's allegations are sufficient. (Dkt. 115 at 14-16). Nor does

3  Plaintiff's Opposition provide any support for the allegation that these

4  misrepresentations were *intentional*. To the contrary, Plaintiff continues to allege

5  that "USAA [CIC] falsely classified [the] vehicle as totaled," but Plaintiff has

6  prevented an appraiser from assessing the value of the vehicle and such a

7  disagreement does not in any event amount to fraud. (Dkt. 115 at 15). Nor could he

8  make such a showing, as there is no indication of an agreement between USAA CIC

9  and the Exchange to change the valuation of Plaintiff's vehicle. (*See infra*, at Section

10 II.C.2).[2]

11 Plaintiff also cites no authority in support of his intentional misrepresentation

12 claim. USAA CIC therefore contends that the FAC fails to state a claim for the

13 reasons provided in its Motion.

14 **C.    Plaintiff's Antitrust Claim Fails as a Matter of Law.**

15 Plaintiff contends that the Court's Order denying the Exchange's Motion for

16 Judgment on the Pleadings pre-determined the outcome of the present motion. (Dkt.

17 115 at 17). But USAA CIC has made arguments in support of the present motion

18 different from those made by the Exchange. (*Compare* Dkt. 95 at 15-18, *with* Dkt.

19 111 at 23-26). Most importantly, USAA CIC *has* presented authority contrary to

20 Plaintiff's suggestion that an antitrust violation occurred. (*Cf.* Dkt. 112 at 14).

21 Primarily, USAA CIC has attacked the theory underlying Plaintiff's claim on the

22 merits, demonstrating that: (1) the FAC does not allege a "price-fixing" agreement,

23 and (2) the FAC fails to demonstrate that Plaintiff suffered an antitrust injury.

24 **1.    Plaintiff Has Not Alleged an Agreement in Restraint of**

25 **Trade.**

26 The Court need not accept Plaintiff's allegation that "price-fixing" occurred—

27

28 [2] Again, the IBS repair estimate for USAA CIC and USAA CIC's valuations were
all disclosed to Plaintiff in March 2020, which he concedes.

rather, "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Plaintiff fails to meet this standard from the outset because, among other reasons, he fails to allege an agreement to ***fix prices***.  Horizontal price fixing may be a *per se* violation of the Sherman Act, (Dkt. 112 at 13), but that does not alleviate Plaintiff of his burden to properly allege that horizontal price fixing took place.  *See Twombly*, 550 U.S. at 555 (the Federal Rules "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  Plaintiff simply takes for granted that a one-time agreement between employees of USAA CIC and the Exchange amounts to a price-fixing agreement in restraint of trade, but Plaintiff must allege "evidentiary facts" supportive of an agreement "which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).  "[A] section one claimant may not merely recite the bare legal conclusion that competition has been restrained unreasonably." *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989).  Rather, he must "sketch[] the outline of an injury to competition." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012).  A horizontal agreement "to set prices ***may*** injure competition" where the agreement results in "the elimination of one form of competition, namely price." *Id.* (quotation omitted, emphasis added).

Here, the agreement alleged by Plaintiff—even if it were properly alleged, which is addressed in more detail below—***did not result in market harm***.  Plaintiff contends that the alleged agreement between USAA CIC and the Exchange deprived him of a "competitive bid," (*see* FAC at ¶186), but that theory neither comports with logic nor the law.  For one thing, a settlement offer is not a good with a fixed price within an identifiable market.  Each settlement offer depends on innumerable variables, the most important of which are the coverage provided, the type of vehicle, and the extent of damage.  Moreover, even if there were an identifiable market for such offers, USAA CIC and the Exchange do not "compete" for the price of

11

Plaintiff's settlement. USAA CIC was Plaintiff's insurer; the Exchange insured the at-fault driver. USAA CIC and the Exchange owed duties to their insureds that diverged, and they had divergent interests when it came to the loss Plaintiff suffered. If Plaintiff had accepted USAA CIC's settlement, USAA CIC would have recovered that amount from the Exchange as the subrogee of Plaintiff's right to recover from Gonzalez. To that end, there would be no market gain by an agreement to set the price of Plaintiff's settlement. USAA CIC simply had no incentive to "minimize[] the payout to [a] policy holder like Plaintiff"—in fact, it had the opposite incentive because it would ultimately have to attempt to recover the payout from the Exchange. (Dkt. 112 at 14).

But even setting aside the lack of a market effect, Plaintiff failed to properly allege an agreement in the first place. Plaintiff again takes for granted that a phone call between USAA CIC adjuster Danelle Bushnell and Amber Peterson, an adjuster for the Exchange, supports the inference of an agreement or conspiracy between USAA CIC and the Exchange to fix prices. (*See* FAC at ¶181; Dkt. 115). But as support for this allegation, Plaintiff relies on facially false speculation and the allegation of parallel conduct.

First, Plaintiff alleges that USAA CIC and the Exchange's agreement is demonstrated by the fact that USAA CIC "share[d]" an estimate with the Exchange but did not provide the same estimate to Plaintiff. (Dkt. 115 at 20; FAC at ¶¶54-55). That allegation fails to demonstrate a conspiracy for several reasons. For one thing, as discussed previously, Plaintiff's Opposition demonstrates that this allegation is false—Plaintiff now *concedes* he received the IBS repair estimate from USAA CIC in March 2020. (Dkt. 115 at 14). The estimate was not withheld. And Plaintiff acknowledges that USAA CIC's Claim Notes do not support any inference that the estimate was provided to the Exchange by USAA CIC pursuant to any agreement to withhold the estimate from Plaintiff. Moreover, the Claim Notes Plaintiff purports to quote from in the FAC and his Opposition, do not reflect the word "agreement"

at all.  (*See* Supplemental Declaration of Vivian I. Orlando ("Supp. Orlando Decl."), Ex. 6; FAC at ¶49)).  The entry Plaintiff incorporated into the FAC by reference states that Peterson "adv[ised] the[ Exchange] use[s] the same valuation system and software," the software created by a third party, CCC Intelligent Solutions ("CCC"), and therefore "will have a similar" value for the vehicle.  (*Id.*; *see* FAC at ¶115).  There is **no suggestion** of an agreement to match the valuation, an agreement to share information withheld from Plaintiff, or an agreement to minimize the payout to Plaintiff.  As USAA CIC stated in its motion, this was nothing more than "routine communication between non-competitors" that does not result in "market harm." (Dkt. 111 at 25).

Stripped of Plaintiff's speculation, his antitrust claim boils down to one allegation of parallel conduct: the similar valuations provided by the Exchange and USAA CIC.  But "parallel conduct alone will not support an inference of concerted action."  *Workman v. State Farm Mut. Auto. Ins. Co.*, 520 F. Supp. 610, 617 (N.D. Cal. 1981).  Even "conscious parallelism" is not enough to support the inference of an agreement—Plaintiff must allege that USAA CIC and the Exchange "engag[ed] in the parallel action [that was] contrary to [their] economic self-interest."  *Parker Auto Body Inc v. State Farm Mut. Auto. Ins. Co.*, 171 F. Supp. 3d 1274, 1281 (M.D. Fla. 2016).  This requirement reflects the primary deficiency in Plaintiff's antitrust claim.  There is no question that Plaintiff has not alleged an action contrary to USAA CIC and the Exchange's economic self-interest.  To the contrary, Plaintiff alleges that the agreement resulted in settlement offers *higher* than he was entitled to.  But an actionable agreement to fix prices is actionable because it presupposes that by agreeing to forego competition *between the conspirators*, the agreement will attract more business to the price-fixing conspirators in the long-term, to the detriment *of their competitors*.  In other words, the primary market harm by a horizontal agreement is *horizontal*, not vertical—competition is eliminated between conspirators to the detriment of their competitors.  As explained previously,

however, competition did not exist between the Exchange and USAA CIC.

In short, what Plaintiff has actually alleged is that USAA CIC and the Exchange, two insurers of adverse claimants, used the same starting point for their settlement offers—a valuation not created by the insurers but created by CCC's valuation software. Plaintiff does not allege that the agreement to use the same software resulted in price-fixing, nor does he allege that CCC was in on the alleged conspiracy by USAA CIC and the Exchange to fix the valuation of his vehicle. Unsurprisingly, USAA CIC and the Exchange's use of the same software resulted in the same "base vehicle rate" for Plaintiff's vehicle. (*See* FAC at ¶140). But that parallel conduct alone is not enough to demonstrate that an agreement to fix prices was made. Therefore, the allegations of the FAC fail to allege an agreement in restraint of trade.

### 2.    Plaintiff Fails to Allege an Antitrust Injury.

Moreover, USAA CIC and the Exchange's alleged agreement cannot be said to have resulted in an injury the antitrust laws were intended to prevent. Plaintiff did not pay a higher or lower price for a product based on the alleged agreement, *cf. In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 922 (9th Cir. 2015), nor was Plaintiff a bidder against USAA CIC and the Exchange who lost out on an opportunity to make a competitive bid due to an agreement to "rig" bids. Plaintiff was seeking a settlement from USAA CIC and the Exchange based on estimates for the same vehicle. He wished for the Exchange to estimate the cost of repair differently than USAA CIC, but he was not bargaining for that estimate or a purchaser of that estimate. In fact, Plaintiff was free to seek an estimate or appraisal from a third party and bring that estimate or appraisal to USAA CIC, but he declined that option. (*See* Dkt. 111-2 at 57). Plaintiff instead confined his options to USAA CIC and the Exchange, creating the illusion of competition where none was present.

In this respect, *Sheahan v. State Farm General Insurance Company,* 442 F. Supp. 3d 1178 (N.D. Cal. 2020) is instructive. In that decision, the Northern District

14

concluded that the insured plaintiff failed to allege an antitrust injury caused by an alleged agreement between an insurance company and an appraiser to depress the estimated value of homes, thereby resulting in inadequate insurance sold to the insured. *Id.* at 1193-96. The court explained that the plaintiff's theory, which asserted individual injury from an alleged agreement to minimize insurance payouts by selling inadequate insurance, was "counterintuitive from an antitrust perspective" because only competitors of the insurer would conceivably be injured by the alleged agreement. *Id.* at 1195. The plaintiff, on the other hand, was free to secure adequate coverage from another source. *See id.* at 1194.

The same is true here. *If* the Exchange and USAA CIC had an agreement to minimize claim payouts by undervaluing damaged vehicles, *if* those two entities were Plaintiff's only potential source of the valuation of his vehicle, and *if* their agreement applied beyond Plaintiff's claim (which Plaintiff does not allege), then USAA CIC and the Exchange could conceivably gain a competitive advantage over ***their competitors*** that may in theory have harmed Plaintiff. But Plaintiff does not allege that these circumstances are present. Rather, he merely alleges that he declined two settlement offers he disagreed with because they were similar, but admittedly not the same. That allegation may demonstrate some kind of injury, but it is not sufficient to state an ***antitrust*** injury. A plaintiff must demonstrate "how ***competition*** (rather than consumers)" is injured by the allegedly unlawful practice. *Brantley*, 675 F.3d at 1203 (emphasis added). Plaintiff has alleged only "an intentional and targeted attack against a ***single party***," himself. (FAC at ¶188 (emphasis added); Dkt. 115 at 19).

Therefore, Plaintiff has not alleged an antitrust injury.

### D.   Plaintiff Has Not Alleged a Pattern of Racketeering Activity.

For largely the same reasons Plaintiff's fraud and antitrust claims fail, so too should Plaintiff's RICO claim as Plaintiff's concessions advanced to avoid appraisal render his RICO claim meritless too. Further, what is evident from Plaintiff's

Opposition is that he fundamentally lacks an understanding of what he must plead to properly allege a RICO claim against USAA CIC.

The elements of a RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Brotherhood. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014). Plaintiff's RICO claim fails because he cannot show a "pattern of racketeering" relating to the alleged conspiracy between USAA CIC, the Exchange, and IBS "with the goal of minimizing claims payouts to Plaintiff resulting from the auto accident caused by Jorge Gonzalez" by falsifying settlement offers, appraisals, and repair estimates to "falsely classify the Plaintiff's vehicle as totaled." (FAC ¶198.)

As this Court has previously stated [*see* Dkt. 73, 9:21-27], a "pattern of racketeering activity" requires at least two predicate acts, though two is not always sufficient because "in common parlance two of anything do not generally form a 'pattern.'" *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987) (*quoting Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985)). The predicate criminal acts must be both "related" and "continuous." *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995). Acts are continuous "if the predicate acts posed a threat of continuing activity." *Sun Sav. & Loan*, 825 F.2d at 193.

"[T]he term pattern itself requires the showing of a relationship between the predicates, and of the threat of continuing activity.  It is this factor of continuity plus relationship which combines to produce a pattern." *H.J. Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 239 (1989) (citations, brackets, and internal quotation marks omitted) ("RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."). "Predicate acts extending over a few weeks or months and threatening no future

criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id*. at 242.

Here, Plaintiff's FAC alleges a solitary incident of alleged fraud, *i.e.*, the allegedly erroneous determination that his vehicle was a total loss. As discussed above, USAA CIC disputes this claim and believes that Plaintiff cannot assert it here given his concession to avoid appraisal, among other things.  But, regardless, this lone incident does not satisfy the requirement of at least two predicate acts to demonstrate a pattern of racketeering activity.  One is not two, and thus Plaintiff's RICO claim fails as a matter of law, which is consistent with the Court's prior findings on the Exchange's motions.

Plaintiff's reliance and citation to other lawsuits allegedly filed against USAA CIC in the State of Texas are insufficient to establish a pattern of racketeering activity because Plaintiff cannot show the predicate acts are related.  *H.J. Inc.,* 492 U.S. at 239.  Plaintiff's "conclusory, unwarranted deductions of fact, or unreasonable inferences" advanced here need not and should not be accepted as true.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001).

Specifically, the Texas cases Plaintiff references in his FAC and upon which he relies to demonstrate a purported "pattern" have no relation whatsoever to Plaintiff or the alleged scheme to improperly deem his vehicle a total loss.  Even a cursory review of these purported Texas matters (which Plaintiff referenced in Exhibits B through F to his FAC) shows they are totally irrelevant to Plaintiff's claims here.  For example, the article Plaintiff relies upon regarding the Reyeses [Ex. B to the FAC, containing no actual complaint or case cite], states the Reyeses sought coverage under their homeowners' insurance policy for damage to their home's roof, and the repair estimate was subsequently lowered allegedly at a supervisor's request. Here, no evidence exists of lowering Plaintiff's estimate after the estimate was complete (in fact, Plaintiff concedes that the total loss offers were increased).

17

Further, this article makes no mention of Plaintiff, it is not related to the determination of a total loss under automobile coverage, and does not reference any RICO claims. Likewise, a second article and complaint pertain to a claim by an insured for damage to his home under a homeowners' insurance policy that was classified by the insurer as vandalism instead of the alleged wind damage which lowered the estimated benefit payable [*Kelly*, Exs. B and C to the FAC]. This, again, has no connection to Plaintiff's claims here, auto insurance coverage, or RICO, and does not even involve USAA CIC. *Id.* The same follows for the *Vandewalle* case [Exs. B and D to the FAC], which again refers to a claim under a homeowners' policy for roof damage (not auto insurance coverage), did not involve any of the parties in this case and has no relevance to the Plaintiff or his claims (again, USAA CIC increased (not decreased) its offers) or RICO claims.

Finally, the *Letot* article and complaint [Exs. E and F to the FAC] is unrelated to Plaintiff's claim here and involved events more than 10 years before the events relating to Plaintiff in March 2020. Like the other irrelevant articles and complaints Plaintiff attached to his FAC, the *Letot* case makes no mention of Plaintiff or RICO claims, does not involve USAA CIC and here, unlike the allegations in *Letot*, USAA CIC never reported Plaintiff's vehicle as a total loss to the applicable state motor vehicle department, never took ownership of his vehicle, the vehicle is not subject to a salvage title (certainly not based on USAA CIC's actions), nor could Plaintiff legitimately make these claims.  Plaintiff's car also was not a vintage vehicle that had some special value.  As a result, when viewed in light of Plaintiff's allegations and the parties involved here, these other matters are irrelevant to Plaintiff's RICO claim and cannot be used by Plaintiff to demonstrate a pattern of racketeering activity for purposes of pleading a RICO claim.

Plaintiff also misunderstands what is required to show a closed-ended pattern of racketeering or open-ended continuity. "[A] single alleged fraud with a single victim" does not constitute a closed-ended pattern of racketeering activity.

*Medallion Television Enters. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1363–64 (9th Cir. 1987). And, open-ended continuity requires "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. Referring again to the irrelevant Texas cases, Plaintiff's Opposition cites to these other lawsuits to argue he has shown a closed-ended pattern of racketeering and open-ended continuity.  Yet, Plaintiff cites no authority that supports his use of these entirely dissimilar lawsuits, and Ninth Circuit law supports the opposite conclusion Plaintiff advances.  A single alleged fraudulent scheme with one victim (as is the case here), does not constitute a closed-ended pattern of racketeering for purposes of RICO.  *Medallion,* 833 F.2d at 1363–64.  Likewise, Plaintiff cannot show open-ended continuity because the alleged fraud of declaring Plaintiff's vehicle a total loss occurred in March 2020 and is not capable of occurring a second time in the future. The Court previously concluded that "[t]he few alleged predicate acts – committed over the course of two weeks – constitute the entire scheme and do not form a continuous pattern."  [*See* Dkt. 73, 11:24-26].  Courts in this district have likewise concluded RICO claims are subject to dismissal for failing to properly plead a closed-ended pattern of racketeering or open-ended continuity. *See McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1010–14 (C.D. Cal. 2020).  Accordingly, the Court should similarly conclude that Plaintiff's RICO claim here is subject to dismissal without leave to amend.

## III.   **CONCLUSION**

For the foregoing reasons, USAA CIC respectfully requests this Court grant its Motion and dismiss Plaintiff's case against it with prejudice.

Dated:  February 12, 2024                    MAYNARD NEXSEN LLP

By:  */s/  Vivian I. Orlando*
VIVIAN I. ORLANDO
Attorneys for Defendant
USAA Casualty Insurance Company

## **CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1**

The undersigned, counsel of record for USAA Casualty Insurance Company, certifies that this brief contains 6,403 words (excluding the notice, caption, any table of contents, any table of authorities, the signature block, this certification, and any indices and exhibits), which complies with the 7,000 word limit of Local Rule 11-6.1.

Dated:  February 12, 2024                 MAYNARD NEXSEN LLP

                                          By:   */s/  Vivian I. Orlando*
                                                VIVIAN I. ORLANDO
                                                Attorneys for Defendant
                                                USAA Casualty Insurance Company

# CERTIFICATE OF SERVICE

***John W. Sigler v. Jorge Gonzalez, USAA Casualty Insurance Company, et al.***
***Case No. 8:22-cv-02325-CJC-JDEx***

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am a citizen of the United States and employed in Los Angeles, California, at the office of a member of the bar of this Court at whose direction this service was made.  I am over the age of 18 and not a party to the within actions; my business address is 10100 Santa Monica Blvd., Ste. 550, Los Angeles, CA 90067.

On **February 12, 2024**, I served the document(s) entitled, **DEFENDANT USAA CASUALTY INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO COMPEL APPRAISAL** on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope(s) addressed as stated below:

☒ **(BY MAIL)**:   I deposited such envelope in the mail at Los Angeles, California with postage fully prepaid.  I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be placed for collection and mailing, and deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☒ **(BY ELECTRONIC MAIL)**:    By transmitting a true copy thereof to the electronic mail addresses as indicated below.

and telephone number as stated.

☒ **(BY CM/ECF SERVICE)**: I caused such document(s) to be delivered electronically via CM/ECF as noted herein.

I declare under penalty of perjury under the laws of the United States that the above is true and correct and was executed on **February 12, 2024**, at Los Angeles, California.

*Leanna Borys*

_____
Leanna Borys

1020793\304578071.v1

# SERVICE LIST

**John W. Sigler v. Jorge Gonzalez, USAA Casualty Insurance Company, et al. Case No. 8:22-cv-02325-CJC-JDEx**

**VIA EMAIL AND MAIL**
John W. Sigler
13129 Stern Avenue
La Mirada, California 90638
Telephone: (714) 697-8576
Email: JSIGLER@SWS-LLC.COM
*Plaintiff In Propria Persona*

**VIA CM/ECF**
Jeffrey M. Lenkov, Esq.
jeffrey.lenkov@manningkass.com
tlp@ManningKass.com
MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999
*Attorneys for Imperial Body Shop, Inc.*

**VIA CM/ECF**
Jeet Sen, Esq.
Eran Scott Forster, Esq.
eforster@fwhb.com
 rbaptist@fwhb.com
jsen@fwhb.com
FORD, WALKER, HAGGERTY &
BEHAR, LLP
One World Trade Center, 27th Floor
Long Beach, California 90831-2700
(562) 983-2500 | (562) 983-2555 Fax
*Attorneys for Defendant,*
*Interinsurance Exchange of Automobile*
*Club of Southern California*